# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

_____

G.H., *et al*.,

                    Plaintiffs,

                                             Case No.: 4:19-cv-431-MW/MJF

v.

SIMONE MARSTILLER, *et al*.,

                    Defendants.

_____

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT, AND ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT (ECF 13)

### I.    Introduction

Plaintiffs G.H., R.L., and B.W. have filed a putative class action challenge to statewide policy and practice of Defendants Department of Juvenile Justice (DJJ) and DJJ Secretary Simone Marstiller (Defendants) of repeatedly isolating children for days at a time, with no time limit, in locked cells without meaningful social interaction, environmental stimulation, outdoor recreation, schooling, or access to personal property, for minor misbehavior. ECF 2 ¶¶ 48-57. Plaintiffs allege that this policy and practice causes them, and over 4,000 children a year, to be isolated in solitary confinement in conditions which pose a substantial risk of serious harm

to their psychological and physical health and safety in violation of the Eighth and Fourteenth Amendments to the United States Constitution. *Id.* ¶¶ 47-51, 53-61, 62-77. Plaintiffs, G.H., R.L., and B.W., who have psychiatric disabilities, learning disabilities, and are at risk for suicide, report that solitary confinement made them anxious, afraid, depressed, suicidal, traumatized, panicked, distrustful, and caused them to self-harm. *Id*. ¶¶ 14-20, 23, 25-27, 30, 32-36, 58-61. These are well-known risks from solitary confinement. *Id.* ¶¶ 73-77. Plaintiffs also allege that this same policy and practice discriminates against children with disabilities. *Id*. ¶¶ 96-101.

In their Motion to Dismiss Plaintiffs' Class Action Complaint and, Alternatively, Motion for More Definite Statement (ECF 13) (Motion), Defendants argue that Defendant Marstiller should be dismissed because claims against her are "redundant" and Plaintiffs have failed to adequately plead claims under the Eighth and Fourteenth Amendments, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act. *Id.* They also argue that, if the Court denies their motion, Plaintiffs should be required to provide a more definite statement. *Id.* at 31-34. For the reasons explained below, each of Defendants' arguments fails. This Court should deny Defendants' Motion.

## II.    Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). Facial plausibility is found when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See id.*; *see also Redland Corp., Inc. v. Bank of Amer. Corp.*, 568 F.3d 1232, 1234 (11th Cir. 2009) (factual allegations in the Complaint must be construed in the light most favorable to plaintiff). While "[s]pecific facts are not necessary[,]" the complaint should "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (internal quotation omitted).

## III.   Plaintiffs Have Sufficiently Alleged That Defendants Are Liable Under 42 U.S.C. Section 1983

Defendants assert that Plaintiffs have not identified any DJJ policy which causes the unconstitutional conditions and, therefore, cannot be liable pursuant to 42 U.S.C. § 1983. ECF 13 at 18-20. They also seek dismissal of Defendant Marstiller. *Id.* at 7-8. Defendants are incorrect; both are liable under Section 1983.

Liability under Section 1983 may be established based on a policy, practice, or custom. An "official policy often refers to formal rules or understandings – often but not always committed to writing – that are intended to, and do, establish

fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). A policy can also be an unwritten practice that is so widespread, permanent and well-settled to constitute a custom with the force of law. *See City of St. Louis v. Praprotnik*, 485 U.S. 112,127 (1988); *see also Horn v. Jones*, 2015 WL 3607012, at *8 (S.D. Fla. May 8, 2015) ("An action does not need to be official in nature in order to constitute a ... policy or custom.") (citation omitted).

Here, Plaintiffs allege that DJJ has and enforces a policy or practice (i.e., unwritten policy) that causes unconstitutional conduct and that an official policymaker is responsible for it. This is sufficient to demonstrate liability under 42 U.S.C. § 1983. *See Grech v. Clayton Cnty*, 335 F.3d 1326, 1330-31 (11th Cir. 2003). Plaintiffs clearly allege that DJJ has a statewide policy and practice of using solitary confinement in secure detention to isolate children from others in a locked cell, for any reason, with no meaningful interaction, environmental stimulation, outdoor recreation, schooling, or personal property. ECF 2 ¶¶ 8, 47, 50, 53-57. DJJ's written administrative code authorizes this policy and practice.[1] *Id.* ¶ 47. Pursuant to DJJ's policy and practice, DJJ subjects thousands of children in secure detention to solitary confinement each year, often repeatedly, for extended periods

---

[1] This includes DJJ subjecting children to solitary confinement for hours or days that exceed any legitimate penological goal and not to address behaviors that "imminently threaten their safety or the safety of others" as described in DJJ's written policies. ECF 2 ¶¶ 82-83.

of time. *Id.* ¶ 48-49. Defendants' practice regularly exceeds the 72-hour time limit stated in their written Facility Operating Procedures. *Id.* ¶¶ 48, 51. Further, DJJ's policy and practice is to subject children with mental illness to solitary confinement, including those who have engaged in self-harming behaviors, or who are at risk for suicide, despite their heightened risk for serious harm. ECF 2 ¶¶ 5, 61. DJJ's policy and practice fails to provide a mental health examination prior to solitary confinement, or meaningful mental health treatment during confinement, to prevent the onset or exacerbation of mental illness and the risk of suicide. ECF 2 ¶¶ 5, 61. Plaintiffs allege that the official policymaker, Defendant Marstiller, is responsible for establishing, adopting, and utilizing this policy and practice which is the "moving force" behind the constitutional violations.[2] *Grech*, 335 F.3d at 1330.

The Secretary is liable in her official capacity because she established, adopted, and enforced the policy and practice that resulted in deliberate indifference to Plaintiffs' Eighth Amendment rights.[3] *Williams v. Bennett*, 689

---

[2] Secretary Marstiller is the policymaker for DJJ and is properly sued under Section 1983. *See City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988); *see also* ECF 2 ¶ 39. As DJJ Secretary, Defendant Marstiller is responsible for planning, coordinating, and managing the delivery of all programs and services within the juvenile justice continuum. *Id.* She ensures that all juvenile justice programs and services are implemented according to state and federal laws, rules, and regulations; establishes program policies and rules; and has the final authority to take any necessary corrective action concerning DJJ programs or providers. *Id.*

[3] Defendants are incorrect that the Secretary can only be held liable for deliberate indifference to an unconstitutional policy by showing "actual or constructive notice of a *flagrant, persistent pattern of violations.*" ECF 13 at 19. Plaintiffs can plead alternative theories of Section

F.2d 1370, 1380 (11th Cir.1982); *Gaines*, 2019 WL 1400470, at *12. In her official

capacity as the DJJ Secretary, Defendant Marstiller is liable because she

authorizes, approves, oversees, and enforces the solitary confinement policy and

practice alleged here as the basis for the constitutional violations in this action. *See*,

*e.g.*, *Matthews v. Crosby*, 480 F.3d 1265, 1275 (11th Cir. 2007); *Gaines v. Jones*,

2019 WL 1400470, at *12 (M.D. Fla. March 28, 2019); *Horn*, 2015 WL 3607012,

at *8 (S.D. Fla. May 8, 2015) (citation omitted); ECF 2 ¶¶ 39, 91. Defendants'

argument that Defendant Marstiller has only had these responsibilities since

January 2019 is without merit. *See Hall*, 2017 WL 4764345, at *10 (finding

Department of Corrections Secretary liable under §1983 where policy is

implemented with deliberate indifference to its known or obvious consequences).

She is sued in her official capacity and is therefore responsible for the conduct of

her predecessors. For these reasons, the cases relied on by Defendants fail to

support the dismissal of Defendant Marstiller.[4] Defendant Marstiller is also a

necessary party under Fed. R. Civ. P. 19(a)(1)(A) to provide the injunctive relief

requested by Plaintiffs. ECF 2 ¶ 39.

---

1983 liability. *See Allstate Ins. Co. v. James*, 779 F.2d 1536, 1540-41 (11th Cir. 1985); *see also Hall v. Palmer*, 2017 WL 4764345, at *9-10 (M.D. Fla. Oct. 20, 2017).

    [4] Defendants rely on cases holding there is no *respondeat superior* liability under Section 1983, but do not directly address the liability of prison officials who, as here, are charged with enacting, authorizing, and using a policy which results in deliberate indifference to constitutional rights. ECF 13 at 7-8, 17-19. *Parker v. Williams*, 862 F.2d 1471, 1476 n.4 (11th Cir. 1989), was overruled, and does not apply. ECF 13 at 7.

In addition to policy-based liability under Section 1983, Defendant DJJ is liable because Plaintiffs allege that DJJ's use of solitary confinement in secure detention is a statewide, longstanding, and widespread practice. *See*, *e.g.*, *Praprotnik*, 485 U.S. at 127; *see also Horn v. Jones*, 2015 WL 3607012, at *8. Based on DJJ's administrative code and confinement data, DJJ has used solitary confinement in secure detention since at least 2011, isolates thousands of children each year, and subjects these children to cumulative deprivations of basic human needs. ECF 2 ¶¶ 4, 49, 51, 53-37.

## IV. Plaintiffs Adequately Allege Eighth and Fourteenth Amendment Claims

Defendants' arguments concerning Plaintiffs' Eighth and Fourteenth Amendment claims are legally incorrect or ignore the well-pleaded allegations in the detailed 149-paragraph Complaint.[5] *See* ECF 13 at 10-17. These claims should proceed.

### A. Legal Standard for a Conditions of Confinement Claim Challenging the Solitary Confinement of Children

To state a claim for unconstitutional conditions of confinement in violation of the Eighth Amendment to the United States Constitution, Plaintiffs must allege that prison officials are: (1) subjecting them to a deprivation that is "objectively

---

[5] Plaintiffs' claims under the Fourteenth Amendment (Count I) and Eighth Amendment (Count II) are evaluated under the same decisional law. *See Bozeman v. Orum,* 422 F.3d 1265, 1271 (11th Cir. 2005).

sufficiently serious" that it is causing a substantial risk of serious harm, and (2) acting with a "sufficiently culpable state of mind" by demonstrating deliberate indifference to Plaintiffs' health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation omitted); *see also Thomas v. Bryant*, 614 F.3d 1288, 1303 (11th Cir. 2010).

The objective risk of harm inquiry is contextual and "draws its meaning from the evolving standards of decency that mark the progress of a maturing society." *Thomas*, 614 F.3d at 1304 (quoting *Hudson v. McMillan*, 503 U.S. 1, 8 (1992)). There is "no static test" for determining whether Plaintiffs are suffering from an objective deprivation of sufficient seriousness. *Chandler v. Baird*, 926 F.2d 1057, 1064 (11th Cir. 1991) (internal quotation marks omitted). When conditions of confinement "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need," they may establish an Eighth Amendment violation "in combination" when each would not do so alone. *Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991).

The Supreme Court and Eleventh Circuit have held that harm is "serious" in an Eighth Amendment claim where it poses a "substantial risk of serious harm." *Farmer*, 511 U.S. at 834; *Thomas*, 614 F.3d at 1303. While Defendants argue that only a deprivation of basic human needs that results in an "actual, serious harm that is equivalent to an extreme deprivation" is adequate, that is not the legal

standard. ECF 13 at 12. Rather, it is sufficient to show that Plaintiffs are exposed to conditions that "pose an unreasonable *risk* of serious damage to [their] future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993) (emphasis added).

Defendants are also incorrect that there is no legal distinction made between children and adults for purposes of Eighth Amendment analysis. ECF 13 at 21-22. The case law is clear that children's unique needs, vulnerabilities and continuing development entitle them to different protections under the Eighth Amendment. *See Roper v. Simmons*, 543 U.S. 551, 573-74 (2005) (finding that the vulnerabilities and differences between juveniles and adults means the death penalty cannot be imposed against juveniles under the Eighth Amendment); *see also Graham v. Florida*, 560 U.S. 48, 68-69 (2010) (recognizing broad consensus that juveniles are psychologically more vulnerable than adults and that "developments in psychology and brain science continue to show fundamental differences between juveniles and adult minds" to conclude that Eighth Amendment prohibits juveniles to be sentenced to life without parole for non-homicide offenses); *Miller v. Alabama*, 132 S. Ct. 2455, 2464 (2012) (recognizing "children are constitutionally different from adults for sentencing purposes" when striking down mandatory life without parole sentences in violation of the Eighth Amendment for juveniles convicted of homicide). This analysis applies here.

**B.     Plaintiffs Adequately Allege That Defendants' Use of Solitary Confinement Objectively Poses a Substantial Risk of Serious Harm for Children**

Defendants contend that Plaintiffs' allegations are insufficient to satisfy the first prong of the Eighth Amendment standard. They argue that Plaintiffs cannot rely on experts from multiple disciplines to support that solitary confinement objectively poses a substantial risk of serious harm for children, and that Plaintiffs have not alleged sufficient actual harm. These arguments fail. The authorities Plaintiffs cite are proper and Plaintiffs allege a sufficient risk of serious harm (and actual harm) from the cumulative deprivations they experience in solitary confinement.

**1.     Scientific, Medical, Professional, and Legal Authorities Establish a Substantial Risk of Serious Harm for Children Subject to Solitary Confinement**

Plaintiffs cite multiple medical, psychiatric, correctional, and professional authorities to demonstrate that the deprivations in solitary confinement are "objectively serious" and subject Plaintiffs to a substantial risk of harm because of children's heightened vulnerability and continued physical, psychological, and social development. ECF 2 ¶¶ 62-77; *Farmer*, 511 U.S. at 834, 847. Recognizing children's greater vulnerability to harm, numerous organizations including the American Academy of Child and Adolescent Psychiatry, the American Medical Association, the United States Department of Justice, and other medical and

10

professional organizations oppose the solitary confinement of children. *See* ECF 2 ¶¶ 67, 70, 73-76. The Council of Juvenile Correctional Administrators opposes the use of juvenile solitary confinement based on research showing that it can cause permanent psychological damage. *Id.* ¶ 74.

Defendants are legally incorrect that these sources are "advocacy groups" which this Court should ignore. ECF 13 at 5. In fact, courts routinely consider such sources in an Eighth Amendment analysis, including in decisions finding that solitary confinement violates the Eighth Amendment. *See, e.g.*, *Roper*, 543 U.S. at 569 (finding juvenile death sentences violated the Eighth Amendment while relying on academic studies about juvenile brain science); *Hall v. Florida*, 572 U.S. 71, 709 (2014) (consulting psychiatric and professional studies to decide Eighth Amendment rights of persons with intellectual disabilities sentenced to death); *Harvard v. Inch*, 2019 WL 5587314, at *3 (N.D. Fla. Oct, 24, 2019) (denying motion to dismiss based on finding that medical, scientific, and professional authorities show the substantial psychological and physiological harm caused by isolation). Defendants' other contentions concerning these authorities present factual issues that are irrelevant on a motion to dismiss. ECF 13 at 4-6.

More specifically, as the allegations from these sources and authorities demonstrate, children subject to solitary confinement face a heightened risk of serious harm. Medical research shows that adolescents' brains are still developing,

so trauma can cause permanent changes and expose children to a higher risk of psychiatric conditions like paranoia and anxiety. ECF 2 ¶ 69. Children and adolescents also have a greater need for social stimulation than adults and experience time differently – making time spent in isolation even more tortuous and the damage more lasting. *Id.*

The Complaint shows that the serious psychological harms of solitary confinement are well documented. ECF 2 ¶ 64. These include: exacerbation of mental illness, triggering symptoms of mental illness for persons with no prior diagnosis, anxiety, depression, insomnia, confusion, withdrawal, emotional flatness, hallucinations, paranoia, and suicidality. *Id.* These effects start to manifest within hours or days of isolation and worsen with time. *Id.* Children subject to solitary confinement in DJJ secure detention experience these serious harms. *Id.* ¶¶ 58-60. Research also shows an alarming correlation between juvenile suicide and confinement – half of the youth who committed suicide in juvenile facilities were in isolation at the time of their death and more than 60% had a history of being held in isolation. *Id.* ¶ 67. This risk of harm occurs immediately; 40% of these suicides happened within 72 hours of children being placed in solitary confinement. *Id.* Studies have also shown that solitary confinement exacerbates existing trauma for children in the juvenile justice system – who already have

much higher than average rates of Adverse Childhood Experiences (ACEs) – with serious long-term harmful impacts to their health and well-being. *Id.* ¶ 72.

These authorities also support Plaintiffs' assertion that the deprivations of solitary confinement are sufficiently serious when the conditions are evaluated in light of contemporary standards of decency that mark the progress of a maturing society.[6] *See*, *e.g.*, *Harvard*, 2019 WL 5587314, at *3; *V.W. v. Conway*, 236 F. Supp. 3d 554, 583-84 (N.D.N.Y. Feb. 22, 2017) (granting preliminary injunction to class of 16- and 17-year-old juveniles finding violation of the Eighth Amendment for solitary confinement of children in jail); *Doe v. Hommrich,* 2017 WL 1091864, at *2 (M.D. Tenn. March 22, 2017) (granting preliminary injunction for class of juveniles in solitary confinement for punitive or disciplinary purposes and finding such conditions constitute inhumane treatment under the Eighth Amendment). Defendants are incorrect that these sources and allegations are irrelevant to Plaintiffs' claim. ECF 13 at 6.

Well-established legal authority also supports that the solitary confinement of children, even for very short periods of time, poses a substantial risk of serious harm due to their particular vulnerability, as they are developmentally, psychologically, and physiologically different from adults. *See H.C. v. Jarrard*,

---

[6] Plaintiffs' allegations about reforms in other jurisdictions show that other state juvenile and adult correctional systems have recognized these risks of harm and have taken action to address it. ECF 2 ¶¶ 73-77. Defendants raise a factual dispute about some of these authorities, but the court must accept Plaintiffs' allegations as true. *Iqbal*, 556 U.S. at 678.

786 F.2d 1080, 1088 (11th Cir. 1986) (finding evidence that isolating children for seven days can cause serious harm and that "juveniles are even more susceptible to mental anguish than adult convicts"); *see also Feliciano v. Barcelo*, 494 F. Supp. 14, 35 (D.P.R. 1979) (finding solitary confinement of young adults is unconstitutional under the Eighth Amendment); *Inmates of Boys' Training Sch. v. Affleck*, 346 F. Supp. 1354, 1360, 1366-67 (D. R.I. 1972) (finding Eighth Amendment violation where juveniles isolated three to seven days in dark, stripped confinement cell with inadequate heat and no human contact); *Lollis v. New York State Dep't of Soc. Svcs.*, 322 F. Supp. 473, 481-82 (S.D.N.Y. 1970) (finding isolation of juveniles in barren room for two days violates Eighth Amendment based on evidence that "isolation is psychologically destructive" and impact on mental health "will always be serious"); *Hommrich*, 2017 WL 1091864, at *2 (finding Eighth Amendment violation for youth in solitary confinement five days). Defendants' assertion that only prolonged isolation for years on end may result in a "serious harm" simply ignores these authorities.

This risk of serious harm is compounded for the named Plaintiffs, and the disability subclass, who suffer from mental illness. *See*, *e.g*., *Madrid v. Gomez*, 889 F. Supp. 1146, 1265 (N.D. Cal. 1995) (finding Eighth Amendment violation based on the risk of developing an injury to mental health for all prisoners and the "particularly high risk" for those with existing mental illness); *Braggs v. Dunn*,

257 F. Supp. 3d 1171, 1185 (N.D. Ala. 2017) (finding placement in segregation endangers mentally ill prisoners and risk of harm increases with the length of isolation and severity of mental illness); *Casey v. Lewis*, 834 F. Supp. 1477, 1549-50 (D. Ariz. 1993) (finding Eighth Amendment violation where department routinely assigns or transfers prisoners with serious mental illness to segregation units). A significant percentage of children in the juvenile justice system, including Plaintiffs and the disability subclass, have a mental health disorder. ECF 2 ¶¶ 5, 14, 23, 30, 70-71, 95-100. For these children, the serious psychological harm caused by solitary confinement is even more devastating and can cause a heightened risk of worsening mental health symptoms and risk for suicide when combined with the lack of any meaningful or normal social activity and the stress of isolation. *Id.* When these children, such as G.H., act out as a manifestation of their disabilities by yelling or striking their cell doors, DJJ responds by adding more time to their isolation. *Id.* This further increases the risk of serious harm to their health and safety. *Id.*

Defendants argue that children in DJJ experience "temporary confinement by DJJ to discipline juveniles" and this is different from "prolonged confinement" that is "serious harm" recognized in *Davis v. Ayala*, 135 S. Ct. 2187, 2208 (2015). ECF 13 at 37. This argument fails.

"Serious harm" is not the correct legal standard to prove the objective part of an Eighth Amendment conditions of confinement claim. *See* Section IV.A., *supra*. As the many cases cited herein show, the solitary confinement of children (even for short periods of time), and persons with similar vulnerabilities such as mental illness, poses a substantial *risk* of serious harm under the Eighth Amendment.

### 2. Plaintiffs Adequately Allege a Substantial Risk of Serious Harm From the Cumulative Effects of Deprivations in Solitary Confinement

The time period and number of times that Defendants isolate children have no limits. ECF 2 ¶ 47-49. Defendants' policy and practice is to lock thousands of children in solitary confinement for hours and days each year and to repeat the confinement for many children, which extends children's cumulative time in solitary confinement.[7] ECF 2 ¶¶ 1, 4, 15, 49, 51 (G.H. isolated three times for total of six days), 33 (B.W. isolated 11 times for total of eight days). In one year, Defendants isolated 4,310 children a total of 11,738 times. *Id.* ¶ 51. The cumulative deprivations that Plaintiffs experience in confinement cause trauma, worsening psychiatric symptoms, panic, hopelessness, depression, risk of suicide, and physical harm. Contrary to Defendants' assertion, the facts demonstrate that it does not take "years" or "prolonged confinement" for a risk of harm to occur for

---

[7] When solitary confinement is not "used sparingly…as a measure of last resort," as here, it is not considered to have any effective penological justification. *See Hall v. Palmer*, 2017 WL 4764345, at *13. Defendants use solitary confinement for any reason, including minor misbehavior, not for the purpose identified in their administrative code. ECF 2 ¶ 50-51.

16

children (or adults) from solitary confinement. *See* ECF 13 at 13-14; ECF 2 ¶¶ 32-35, 58-60, 64, 67, 71, 72. The risk begins immediately. Defendants' repeated use of isolation compounds the risk of harm (and actual harm). These are risks that our society chooses not to tolerate, especially for children, under "evolving standards of decency that mark the progress of a maturing society." *Thomas*, 614 F.3d at 1304.

There is a substantial risk of serious harm where conditions "alone or in combination" may deprive incarcerated people of "the minimal civilized measure of life's necessities." *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); s*ee also Quintanilla v. Bryson*, 730 F. App'x 738, 746 (11th Cir. 2018). Courts recognize exercise, social interaction, environmental stimulation, and sanitation as basic human needs meeting this standard under the Eighth Amendment.[8] *See, e.g.*, *Wilson v. Seitler*, 501 U.S. 294, 304 (1991) (exercise); *Quintanilla*, 730 F. App'x at 747 (denial of food, exercise, human contact, sanitation); *Harvard*, 2019 WL 5587314, at *7-8 (normal human contact, environmental stimulation, and exercise, and degrading security measures); *Brooks v. Warden*, 800 F.3d 1295, 1304-05 (11th Cir. 2015) (collecting cases citing proximity to human excrement and lack of cell sanitation). The challenged conditions must be "serious" or "extreme,"

---

[8] Defendants' cite to *Bass v. Perrin*, 170 F.3d 1312, 1317 (11th Cir. 1999), is inapposite. ECF 13 at 12. Plaintiffs allege the *cumulative effects* of the deprivations in isolation causes a substantial risk of serious harm based on Defendants' policy and practice of solitary confinement.

meaning that a prisoner must show that condition of confinement deprive them of basic human needs that result in an unreasonable risk of serious damage to his future health or safety. *Quintanilla*, 730 F. App'x at 747 (citation omitted); *Harvard*, 2019 WL 55871314, at *7.

Plaintiffs allege that the cumulative effects of the deprivations of normal human contact, environmental stimulation, recreation, meaningful social interaction, reading or writing materials, property, education, and sanitation that they experience in solitary confinement subject them to a substantial risk of serious psychological and physiological harm. ECF ¶¶ 2, 47, 54-57, 62-77. *See Quantanilla*, 730 F. App'x at 747; *see also* ECF 2 ¶ 47 (children are isolated from others in a locked room for indefinite period of time with no meaningful social interaction or environmental stimulation); *Id*. ¶¶ 54-55 (deprivations of social interactions and normal human communication with staff or other children); *Id*. ¶ 54 (forced idleness and deprivation of environmental stimulation); *Id*. ¶ 54 (deprivations of school); *Id*. ¶ 54 (deprivations of recreation programming, access to phones, radios, or televisions); *Id*. ¶ 54 (deprivations of personal property or writing materials); *Id*. ¶ 56 (confinement cells are dirty, have peeling paint, graffiti, backed-up toilets smelling of human waste, insects that bite children); *Id*. ¶ 56 (children eat in confinement alone); *Id*. ¶ 57 (confinement cells are small, cramped spaces where fluorescent lights are on 24 hours a day); *Id*. ¶57 (deprivations of

bedding); *Id*. at ¶ 57 (confinement cells have no windows to the outside to see the sun or sky and only a small window in the metal door that is difficult to see through); *Id*. ¶ 61 (deprivations of mental health assessments and services before or during confinement); *Id*. ¶ 61 (no effective monitoring for signs of suicide); *Id.* ¶¶ 17-20, 59 (G.H. deprived of recreation, education, sleeping mat, and personal property; no social or environmental stimulation; forced to eat in dirty cell; experienced worsening psychiatric symptoms and engaged in self-harm); *Id.* ¶¶ 23-26, 59 (R.L. deprived of personal property, recreation, education, sleeping mat; confined in odorous dirty cell soiled with feces; no social or environmental stimulation; experienced worsening psychiatric symptoms); *Id.* ¶¶ 34-35 (B.W. deprived of mat or blanket, normal social interaction and environmental stimulation; confined in cell with flies, bugs, and human feces smeared on wall; forced to lie on a concrete slab while pregnant; no medical evaluation).

Plaintiffs allege ample facts to show an objective substantial risk of serious harm for children subject to solitary confinement that violates contemporary standards of decency. *See Helling*, 509 U.S. 25 at 36; *Harvard*, 2019 WL 5587314, at *3; *V.W.*, 236 F. Supp. 3d at 583-84. This more than satisfies the standard for facial plausibility. *Iqbal*, 556 U.S. at 668.

C.     **Plaintiffs Adequately Allege That Defendant Knew of and Disregarded the Substantial Risk of Harm Inflicted on Children by DJJ's Solitary Confinement Policy and Practice**

Plaintiffs have stated an Eighth Amendment claim because they allege that Defendants acted with deliberate indifference by knowing about and disregarding a risk to children's health and safety by conduct that is more than gross negligence. *See Farmer*, 511 U.S. at 837; *see also Thomas*, 614 F.3d at 1312. To disregard a deprivation or risk means to "fail[] to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. The Complaint pleads Defendants' deliberate indifference in several ways.

Circumstantial evidence and the obviousness of the substantial risk of harm are adequate to demonstrate subjective awareness under the Eighth Amendment – actual notice is not required. *See Farmer*, 511 U.S. at 842-44. Defendants are aware of the substantial risk of serious harm to children from their use of isolation based on previous notice. Prior litigation on behalf of children with mental illness and developmental disabilities challenged Defendants' use of isolation in DJJ's North Florida Youth Development Center residential facility (formerly the Dozier School for Boys) as unconstitutional because of the risk of harm to children's health and safety. ECF 2 ¶¶ 87-88. In a related investigation, the United States Department of Justice Civil Rights Division found that DJJ's use of isolation at this facility, especially for children with mental health needs or at risk for suicide, and

20

denial of required services such as education materials, regular mental health evaluations, or daily exercise were unconstitutional conditions of confinement. *Id.* ¶¶ 87-88, 90. This is also institutional "historical" deliberate indifference to an identified risk of harm. *See Braggs*, 257 F. Supp. 3d at 1252 (citation omitted); *see also Hope v. Pelzer*, 240 F.3d 975, 978-79 (11th Cir. 2001), *overruled in part on other grounds,* 536 U.S. 730 (2002) (corrections agency ignoring DOJ report about constitutional infirmity of using hitching post for discipline supports inference of awareness and disregard of risk of harm).

Plaintiffs also allege that Defendants made deliberate decisions to improve DJJ policies and practices by eliminating the use of solitary confinement in residential programs, but left children in secure detention exposed to this risk of serious harm. This supports the allegation that Defendants have subjective knowledge of the substantial risk of harm from solitary confinement, but disregarded the risk.

In DJJ post-disposition residential programs, Defendants only use two very limited ways to separate children from others for very brief periods of time for short-term crisis intervention or behavior intervention – room restriction and controlled observation. ECF 2 ¶¶ 91-93. During these short periods, Defendants require programming and services, mandate procedural safeguards and behavioral interventions, and do not permit children (including those at risk for suicide) to be

placed in a locked room alone. *Id.* ¶¶ 91-92. In secure detention, however, Defendants' policy and practice is to isolate children in solitary confinement – often the same child repeatedly – with no time limit, in a locked room, with no property, programming, school services, recreation, or environmental stimulation, as a first response to any situation to manage behavior. *Id.* ¶¶ 48-52. These facts show that Defendants have made a deliberate choice to allow the known risk of harm to children in secure detention from the use of solitary confinement to persist. Defendants' decisions constitute deliberate indifference under the Eighth Amendment. *See*, *e.g*., *Thomas*, 614 F.3d at 1288, 1312.

Defendants claim that DJJ residential facilities house "different" children and that children in secure detention are deserving of punishment because they present "different needs for maintaining order." ECF 13 at 16. This assertion is beyond the corners of the Complaint and should be disregarded. It is also wrong. These are the same children with the same needs.[9] ECF 2 ¶ 44. In DJJ's juvenile justice continuum, children move from arrest to secure detention to residential programs following adjudication of their charges. *Id.*

Defendants have actual notice of the substantial risk of serious harm to children subject to solitary confinement through letters and emails since September

---

[9]   Defendants' contention that Plaintiffs must show children are "deliberately and sadistically being singled out from others" makes no sense. ECF 13 at 16. This is not the legal standard to establish deliberate indifference in a conditions of confinement claim.

2018 from Plaintiffs' counsel. ECF 2 ¶ 95. These were written on behalf of youth

subject to solitary confinement who had engaged in self harm and were at risk for

suicide. *Id.* Defendants received grievances from children, including the named

Plaintiffs, who asked not to be put in confinement again because they posed no

imminent physical risk of harm to themselves or others and were, instead, at risk of

harm from being put in confinement. *Id.* ¶ 95. Defendants were also aware of the

risks for children with physical injuries like broken or sprained arms, who

attempted suicide by wrapping sheets around their neck, and who cut themselves

with pencils or other objects, but they still placed these children in, or kept them in,

solitary confinement. *Id.* ¶ 95. Defendants refused to change their solitary

confinement policy and practice in secure detention despite knowledge of these

risks. These facts show deliberate indifference. *See*, *e.g*., *Thomas*, 614 F.3d at

1288, 1315-16 (despite repeated notice of risk of harm from chemical agents

defendants refused to change non-spontaneous use of force policy); *V.W*., 236 F.

Supp. 3d at 584 (finding "significant evidence" demonstrating deliberate

indifference to risks of serious risk harm to juveniles from solitary confinement,

based on, *inter alia*, communications from advocates, prior litigation on this issue,

complaints from parents, their own continued observations, and unabated practices

following case filing).

Defendants are aware of their frequent and repeated use of solitary confinement in secure detention, but are deliberately indifferent to the serious risk by failing to act to eliminate it. *See*, *e.g.*, *Braggs*, 257 F. Supp. 3d at 1252-53 (deliberate indifference shown through review of monthly statistical reports and emails with mental health care managers). Defendants are notified of any use of solitary confinement that extends past 24 or 72 hours. ECF 2 ¶¶ 93-94. In a recent 11-month period, DJJ isolated 4,310 children in confinement a total of 11,738 times; some children spend up to 107 hours (4 days) at a time in isolation; and the statewide average length of time in isolation for a child is 45 hours, with many children spending at least 24 hours in isolation. *Id.* ¶¶ 51, 48-51, 94.

For these reasons, Plaintiffs have alleged sufficient facts to allow "the court to draw the reasonable inference" that the Defendants are liable under the Eighth Amendment. *Twombly*, 550 U.S. at 556.

## V.   The Court May Order Injunctive Relief to Remedy Constitutional Violations

In support of their Motion, Defendants imply that the Court is unable to issue prospective relief because doing so would interfere with the operations of correctional institutions. ECF 13 at 22-25. This argument is premature and misplaced in a motion to dismiss which should only examine the sufficiency of the pleading as to the claims. In prison conditions cases, courts address issues concerning the prospective relief that is appropriate following findings of liability.

24

*See*, *e.g.*, *Thomas*, 614 F.3d at 1317 (addressing injunction issued following district court finding that the repeated use of chemical agents violated the Eighth Amendment); *Ashker v. Governor of California*, 2014 WL 2465191, at *8 (N.D. Cal. June 2, 2014) (finding 18 U.S.C. § 3626(a)(1) "governs the scope of injunctive relief that a federal court may issue in a 'prison conditions' case after liability has been assessed").

Defendants' arguments also misrepresent the deference accorded to officials; courts may fashion relief to remedy a violation within the guidelines of the Prison Litigation Reform Act (PLRA). Courts can address violations of constitutional rights and issue prospective relief to remedy violations in a civil action challenging prison conditions. *See Thomas*, 614 F.3d at 1318 (citation omitted). Any concerns about intrusion into prison operations and security considerations have been codified in the PLRA which requires the court to find that injunctive relief is "narrowly drawn, extends no further than necessary to correct the violation of the federal right, and is the least intrusive means necessary to correct the violation[.]" *Id*. (citing 18 U.S.C. § 3626(a)(1)(A)). If there are violations of federal rights, any court order will be suitably tailored to correct the violation. *Id.*; *Lewis v. Casey*, 518 U.S. 343, 357-60 (1996). Courts routinely order such relief against prison officials. *See*, *e.g.*, *Helling*, 509 U.S. at 35 (prisoner can obtain injunctive relief to prevent unreasonable risk of harm from turning into actual harm).

Defendants mischaracterize Plaintiffs' inclusion of the relief requested in this action as a "demand" that the court enter injunctive relief to oversee all detention center operations. ECF 13 at 23. Plaintiffs have merely satisfied notice pleading standards to clarify the type of relief sought in this case (i.e., declaratory and injunctive relief, not damages). ECF 2 ¶¶ 8, 11, and 57-58 (request for relief).

## VI.    Plaintiffs Adequately Allege Disability Discrimination Claims

Plaintiffs have adequately alleged disability discrimination claims under the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* (ADA) and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*. (Section 504). To state a claim under Title II of the ADA, Plaintiffs must allege: 1) they are qualified individuals with a disability; 2) they were either excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or were otherwise discriminated against by such entity; and 3) the exclusion, denial of a benefit, or discrimination was by reason of their disability. *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007). The test under the Rehabilitation Act is the same. *Id.* at 1088 n.21. Defendants challenge whether Plaintiffs sufficiently allege each element of this claim.

### A.    Plaintiffs Allege They Are Qualified Individuals With Disabilities

Under the ADA, a "disability" is a physical or mental impairment that substantially limits one or more of an individual's major life activities. 42 U.S.C. §

12102(1). "Major life activities" include caring for oneself, seeing, hearing, eating, sleeping, walking, speaking, communicating, breathing, learning, reading, concentration, thinking, and the operation of neurological and brain functions. 42 U.S.C. § 12102(2). "In virtually all cases," certain impairments, including post-traumatic stress disorder and bipolar disorder, constitute a "disability" under the ADA because they inherently impose substantial limitations on major life activities. *See* 28 C.F.R. § 35.108(d)(2)(ii)-(iii);[10] *see also Coker v. Enhanced Senior Living, Inc.*, 897 F. Supp. 2d 1366, 1375 (N.D. Ga. 2012). The term "'substantially limits' shall be construed broadly in favor of expansive coverage." 28 C.F.R. § 35.108(d)(1)(i). "[T]he threshold issue of whether an impairment substantially limits a major life activity should not demand extensive analysis." 28 C.F.R. § 35.108(d)(1)(ii).

Plaintiffs each allege impairments that substantially limit major life activities. Plaintiff G.H. has an emotional behavioral disorder, depression, a learning disorder, and anxiety, all of which substantially limit his ability to think, learn, and breathe. ECF 2 ¶ 14.; *see* 28 C.F.R. §§ 35.108(b)(1), (2) & (c)(1); *see also Wilf v. Board of Regents of Univ. System of Ga.*, 2012 WL 12888680, at *18 (N.D. Ga. Oct. 15, 2012) (recognizing individual with depression, learning disability, and Attention Deficit Hyperactivity Disorder as a qualified individual

---

[10] These regulations must be given legislative and controlling weight. *See Shotz v Cates*, 256 F.3d 1077, 1079 n.2 (11th Cir. 2001).

with a disability). Plaintiff G.H. also engaged in self-harm twice while in isolation by wrapping his pants around his neck to choke himself. ECF 2 ¶¶ 18-19. This illustrates how his psychiatric disabilities substantially limit his ability to care for himself. *See Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 168 (2d Cir. 2003) ("A mental illness that impels one to suicide can be viewed as a paradigmatic instance of inability to care for oneself.").

Plaintiff R.L. has been diagnosed with bipolar disorder, post-traumatic stress disorder, major depressive disorder, conduct disorder, intermittent explosive disorder, emotional behavioral disorder, and a learning disability. ECF 2 ¶ 23; 28 C.F.R. § 35.108(b)(1) & (2). These impairments substantially limit her ability to concentrate, learn, interact with others, think, and her brain functions (i.e., regulate impulsive behaviors, maintain self-control, and respond appropriately to conflict with others). ECF 2 ¶ 23; *see* 28 C.F.R. § 35.108(c)(1) & (d)(iii)(K); *see also Harvard*, 2019 WL 5587314, at *8-9 (individuals with bipolar disorder and depression are qualified individuals with disabilities).

Plaintiff B.W. suffers from Attention Deficit Hyperactivity Disorder (ADHD) and impaired vision, which substantially limit her thinking, concentration, and ability to see. ECF 2 ¶ 30; *see* 28 C.F.R. § 28 C.F.R. § 35.108(b)(1), (2) & (c)(1); *see also Wilf*, 2012 WL 12888680, at *18.

Each of the Plaintiffs' diagnoses and disabilities demonstrates that they are individuals with impairments that substantially limit one or more of their major life activities. Defendants are incorrect that the named Plaintiffs only allege "they do not have the effective coping skills to manage conditions of confinement." ECF 13 at 28.

### B.   Plaintiffs' Sufficiently Allege Disability Discrimination

Defendants argue that Plaintiffs were not discriminated against because of their disabilities. Specifically, they argue that Plaintiffs do not claim they were placed in or remained in confinement because of their disability, or that Defendants "decided to exclude or discriminate against" them because of their disability, but as punishment for breaking detention rules. ECF 13 at 28-29. The Complaint belies this assertion.

Plaintiffs allege that Defendants discriminate against them by reason of their respective disabilities in three ways. DJJ fails to reasonably modify its solitary confinement policies and procedures when needed to avoid discrimination on the basis of disability. For example, Plaintiffs R.L. and G.H. have psychiatric disabilities that make it difficult to regulate their behaviors, cause them to respond erratically or inappropriately to stress, trauma, staff, or other youth, react to stressful situations with emotional outbursts and impulsive behaviors, and have difficulty understanding facility rules or directions. ECF 2 ¶ 97. DJJ fails to

identify or recognize this behavior as disability related and provide the

accommodations, supports, and services that R.L. and G.H. need, and, instead,

responds by labeling this "misbehavior" and sends Plaintiffs to, or extends their

time in, solitary confinement. *Id.* ¶ 97.[11] Each of these constitutes an independent

basis for disability discrimination. Each named Plaintiff alleges one or more of

these theories of liability for Defendants' discrimination under Title II of the ADA

and Section 504.

DJJ fails to modify its policies and procedures so that children with

disabilities have access to and can participate in the benefits, programs, and

services available to those in the general population while in solitary confinement.

*Id*. ¶ 98. Plaintiffs G.H., R.L., and B.W. were denied access to adequate out-of-cell

time, mental health treatment, social interaction, environmental stimulation,

recreation, and school services that are available to children in the general

population. *Id.* ¶ 98. This is discrimination by reason of disability. *See Furgess v.*

*Pa. Dep't of Corr.*, 933 F.3d 285, 291 (3d Cir. 2019) (why prisoner is put in

segregated housing is irrelevant and does not excuse obligation to provide

reasonable accommodation).

---

[11] Accepting Plaintiffs' facts as true, the court should disregard Defendants' assertion that Plaintiffs were only put in confinement because their behavior violated rules. ECF 13 at 30. Defendants' argument also raises a question of fact to be resolved though discovery, experts, and by the factfinder that is not appropriate on a 12(b)(6) motion.

DJJ has also engaged in disability discrimination by failing to adopt policies and procedures to ensure that children with disabilities are housed in the most integrated setting appropriate to their needs. ECF 2 ¶ 99. DJJ subjects Plaintiffs R.L., G.H., and B.W., who have psychiatric disabilities, to solitary confinement when they engage in nonconforming behaviors due to their disabilities, instead of housing them in settings where they can receive needed treatment and services to live safely with others. *Id.* ¶ 99. For example, children like B.W., who has ADHD, may exhibit impulsive behavior like fighting with peers or being unable to focus on staff directions. Children like B.W. do not receive supportive mental health services, behavior interventions, and de-escalation assistance. Instead, they are housed in the most restrictive setting: solitary confinement. *Id.*

Defendants contend, without any legal authority, that it is "fatal" that none of the Plaintiffs "identify an available reasonable accommodation[.]" ECF 13 at 30. Plaintiffs have no such pleading requirement or evidentiary burden to meet. *See Nattiel v. Fla. Dep't of Corr.*, 2017 WL 5774143, at *1 (N.D. Fla. Nov. 28, 2017) (finding that a specific demand for an accommodation is unnecessary when FDC knows about the person's disabilities); *see also Pierce v. D.C.*, 128 F. Supp. 3d 250, 269 (D.D.C. 2015) (concluding that the defendant's "insistence here that prison officials have no legal obligation to provide accommodations for disabled

inmates unless the inmate specifically requests such aid . . . is untenable and cannot be countenanced").

**VII.   Defendants' Motion in the Alternative for a More Definite Statement Should be Denied**

If the Court declines to grant their Motion to Dismiss, Defendants seek a more definite statement. A party may only obtain a more definite statement if the pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). This is a high standard because Fed. R. Civ. P. 8(a)(2) merely requires "a short and plain statement of the claim" that is "plausible on its face" that "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of alleged violations. *Twombly*, 550 U.S. at 555-59. Defendants' motion fails to meet this standard.

Plaintiffs allege facts that show they state claims under the Eighth and Fourteenth Amendments, Title II of the ADA, and Section 504. Defendants clearly understood and responded to these allegations in the Complaint with a 30-page Motion to Dismiss with numerous detailed substantive arguments. ECF 13. Defendants' Motion to Dismiss seriously undermines any argument that the Complaint is unintelligible or so vague that they could not prepare a response.

In light of liberal discovery practices, motions for more definite statement should be denied where the type of information the defendant claims is missing would be more properly obtained via discovery. *Zolin v. Caruth*, 2009 WL

2982907, at *5 (N.D. Fla. Sept. 14, 2009). Defendants list numerous questions they have about this case which do not address any "unintelligibility" of the Complaint, but simply seek additional details about the nature of the claims and the relief sought. *See* ECF 13 at 31 (e.g., length of time in confinement that violates Constitution, method of calculating confinement time, difference between confinement rooms and being confined to one's own room). These are precisely the kinds of questions that are inappropriate for a motion for a more definite statement and can be asked in discovery. *See Foster v. Dead River Causeway, LLC*, 2014 WL 4049899, at *2 n.2 (M.D. Fla. Aug. 14, 2014). Defendants have failed to meet their burden to establish that a more definite statement is warranted.

## VIII. Conclusion

For the foregoing reasons, Defendants have failed to establish that dismissal of this case is warranted or that the court should require a more definite statement. Plaintiffs respectfully request that the court deny Defendants' Motion to Dismiss Plaintiffs' Class Action Complaint, and, Alternatively, Motion for a More Definite Statement. ECF 13.

## <u>Certificate of Word Limit</u>

Pursuant to N.D. Loc. R. 7.1(F), the undersigned counsel hereby certifies compliance with the word limits and that this motion contains 7,696 words.

Dated: November 18, 2019                    Respectfully submitted,

                                      By:    s/ Andrea Costello
                                                  Andrea Costello
                                                      Fla. Bar No. 0532991
                                                    Christopher M. Jones
                                                      Fla. Bar No. 994642

By:   s/ Andrea Costello
      Andrea Costello
      Fla. Bar No. 0532991
      Christopher M. Jones
      Fla. Bar No. 994642
      Jennifer Painter
      Fla. Bar No. 110966
      Florida Legal Services
      122 E. Colonial Drive, Suite 100
      Orlando, FL 32801
      Telephone: (407) 801-0332 (direct)
      andrea@floridalegal.org
      christopher@floridalegal.org
      jennifer.painter@floridalegal.org

      Kelly Knapp
      Fla. Bar No. 1011018
      Leonard J. Laurenceau
      Fla. Bar No. 106987
      Southern Poverty Law Center
      4770 Biscayne Blvd., Suite 760
      Miami, FL 33137
      Telephone: (786) 347-2056
      kelly.knapp@splcenter.org
      leo.laurenceau@splcenter.org

      Shalini Goel Agarwal
      Fla. Bar No. 90843
      Southern Poverty Law Center
      106 East College Ave., #1010
      Tallahassee, FL 32302
      Telephone: (850) 521-3024
      shalini.agarwal@splcenter.org

      Lisa Graybill*
      Texas Bar No. 24054454
      Southern Poverty Law Center
      201 St. Charles Avenue, Suite 2000

34

New Orleans, LA 70170
Telephone: (334) 549-0498
lisa.graybill@splcenter.org

Dante P. Trevisani
Fla. Bar No. 72912
Laura A. Ferro
Fla. Bar No. 1015841
Florida Justice Institute, Inc.
100 S.E. 2nd St., Ste 3750
Miami, FL 33131
Telephone: (305) 358-2081
dtrevisani@floridajusticeinstitute.org
lferro@floridajusticeinstitute.org

*Admitted pro hac vice*

**Attorneys for Plaintiffs**