## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**G.H., a minor, by and through**
**his parent and legal guardian,**
**Gregory Henry, ET AL.,**

      *Plaintiffs*,

**v.**                            **CASE NO.:  4:19cv431-MW/CAS**

**SIMONE MARSTILLER**, **in her**
**official capacity as Secretary of**
**the Florida Department of**
**Juvenile Justice, ET AL.,**

      *Defendants*.
_____/

## ORDER DENYING DEFENDANTS' MOTION TO
## DISMISS, AND ALTERNATIVELY, MOTION FOR A
## MORE DEFINITE STATEMENT

This Court has considered, without hearing, Defendant Florida Department of Juvenile Justice ("DJJ") and Defendant Simone Marstiller's (collectively, "Defendants") motion to dismiss. ECF No. 13. Defendants move to dismiss Plaintiffs' complaint in toto, and alternatively, requests this Court to require Plaintiffs to make a more definite statement of their claims. ECF No. 13, at 35. Additionally, Defendants' move to dismiss the complaint as to Defendant Marstiller. ECF No. 13, at 7.

Plaintiffs have alleged four counts in their complaint seeking relief for violation of their rights protected by the Fourteenth and Eighth Amendment of the United States Constitution, ECF No. 2, at 50–53, and their rights protected by the Americans with Disability Act ("ADA") and Section 504 of the Rehabilitation Act ("RA"), ECF No. 2, at 53–55. For the reasons provided below, Defendants' motion is **DENIED**.

## I.      Standard for Motion to Dismiss

This Court accepts the allegations in the amended complaint as true and construes them in the light most favorable to Plaintiff. *See Hunt v. Amico Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). "To withstand a motion to dismiss under Rule 12(b)(6), a complaint must include 'enough facts to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A 'claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Plaintiff's allegations must amount to 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555).

## II.      Factual Background

This is a civil rights case arising from statewide policies and practices of isolating children in solitary confinement. Plaintiffs allege that Defendants

repeatedly isolate children for days at a time, with no time limit, in locked cells. ECF No. 2, ¶¶ 48, 51. The isolation imposes certain conditions such as lack of meaningful social interaction, environmental stimulation, outdoor recreation, education, sanitation, or access to personal property. ECF No. 2, ¶¶ 53–57. The isolation, along with the conditions imposed, subject them, and over 4,000 children placed in isolation every year, to a substantial risk of serious harm to their psychological and physical health and safety in violation of the Eighth and Fourteenth Amendment and that policymakers have exhibited deliberate indifference towards these risks. ECF No. 2, ¶¶ 47–51, 53–77, 87–95, 117–30. Finally, Plaintiffs allege that Defendants discriminate against children with disabilities through the same policies and practices and, therefore, violate the rights protected by ADA and RA. ECF No. 2, ¶¶ 96–101, 131–49

### III.   Defendant Marstiller

Before getting into the meat of Defendants' motion—failure to state a claim for each cause of action—this Court will tackle Defendants' request that this Court dismiss the complaint against Defendant Marstiller. Defendants argue that the complaint should be dismissed as to Defendant Marstiller, sued in her official capacity, because such claims are redundant. ECF No. 13, at 7. This Court disagrees.

Plaintiffs sue Defendant Marstiller in her official capacity under 42 U.S.C. § 1983 for violation of their Eighth and Fourteenth Amendment rights. ECF No. 2, at

3

50, 52. On the other hand, Plaintiffs sue Defendant DJJ for violations of their rights protected by the ADA and RA. ECF No. 2, at 53, 55. There is no redundancy here. While it would be redundant for Plaintiffs to sue both the Secretary in her official capacity and the state agency for the same claims, *see, e.g.*, *Taylor v. Fla. Dep't of Corr.*, Case No. 2:10-cv-641-ftm-38UAM, 2013 WL 12213191, at *7 (M.D. Fla. Aug. 14, 2013), that is not the case here.

Additionally, if this Court were to dismiss claims against Defendant Marstiller, Plaintiffs would be barred from seeking relief under 42 U.S.C. § 1983. Generally, "[a] state, a state agency, and a state official sued in [her] official capacity are not 'persons' within the meaning of § 1983 . . . ." *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (citation omitted). But, when prospective relief, including injunctive relief, is sought, "a state official sued in [her] official capacity is person for purposes of § 1983." *Id.* Here, Plaintiffs seek injunctive relief and have, therefore, properly sued Defendant Marstiller in her official capacity under § 1983.

For these reasons, this Court will not dismiss Plaintiffs' claims against Defendant Marstiller.

### IV.   First and Second Cause of Action
### (42 U.S.C. § 1983; Eighth and Fourteenth Amendment)

Plaintiffs' claims under the Fourteenth and Eighth Amendment are evaluated under the same standard. *See Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir.

2015), *abrogated on other grounds by Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015). "The Eighth Amendment 'set[s] limits on the treatment and conditions states may impose on prisoners.' " *Quintanilla v. Bryson*, 730 F. App'x 738, 746 (11th Cir. 2018) (citation omitted). "[U]nder the Eighth Amendment, the State must respect the human attributes even of those who have committed serious crimes." *Id.* (citation omitted). The Eighth Amendment also prohibits 'inflictions of pain . . . that are totally without penological justification.' " *Id.* (citation omitted).

A two-part analysis governs Eighth Amendment challenges to conditions of confinement. *Id.* "First, the conditions of confinement must be objectively 'serious' or 'extreme,' " i.e., "the prisoner 'must show that a condition of his confinement pose[s] an unreasonable risk of serious damage to his future health or safety.' " *Id.* (citation omitted). "Second, the prisoner must show that the defendant prison officials subjectively acted with 'deliberate indifference' with regard to the conditions at issue." *Id.* (citation omitted). And while solitary confinement does not, in and of itself, constitute cruel and unusual punishment, "[c]onfinement . . . in an isolation cell is a form of punishment subject to scrutiny under Eighth Amendment standards." *Id.* (citation omitted).

Defendants argue that Plaintiffs have failed to allege sufficient facts to satisfy either prong of the test. This Court disagrees. This Court finds that Plaintiffs have "nudged [their] claim across the line from conceivable to plausible." *Twombly*, 550

U.S. at 570. That is to say, Plaintiffs have sufficiently alleged that the isolation along with the conditions they have been subjected to deprived them of basic human needs that resulted in a substantial risk of serious harm and that Defendant Marstiller was deliberately indifferent with regards to the conditions at issue. But before this Court goes into the detailed analysis with respect to the two prongs of the test, this Court will tackle certain arguments raised by Defendants.

First, Defendants argue that there is no different constitutional standard for juveniles. ECF No. 13, at 21. That is, Defendants argue, the Constitution does not require detention center to treat adults and juveniles different in order to maintain security and order. ECF No. 13, at 21. Pure malarkey. There can be no doubt that the Constitution requires different treatment between adults and juveniles in the context of the Eighth Amendment. The Supreme Court has repeatedly emphasized that fundamental differences between adults and children are consequential in the Eighth Amendment context. *See, e.g.*, *Roper v. Simmons*, 543 U.S. 551, 569, 573–74 (2005) (recognizing the "comparative immaturity and irresponsibility of juveniles" and finding that "differences between juvenile and adult offenders are too marked and well understood" such that the death penalty cannot be imposed against juveniles under the Eighth Amendment); *Graham v. Florida*, 560 U.S. 48, 68 (2010) ("[D]evelopments in psychology and brain science continue to show fundamental differences between juvenile and adult minds."); *Miller v. Alabama*, 567 U.S. 460,

471, 476 (2012) (observing that "[youth] is a moment and condition of life when a person may be most susceptible to influence and to psychological damage" and recognizing "children are constitutionally different from adults for sentencing purposes").

Why, then, should the case be different in the conditions of confinement context? Defendants' answer is simple—because none of these cases are about conditions of confinement—but unpersuasive. *See* ECF No. 13, at 21–22. The standard for conditions of confinement in the Eighth Amendment context most certainly requires juveniles to be treated differently from adults. It is, partly, an objective test from the point of view of the prisoner. When that prisoner is a juvenile, the standard requires this Court to analyze whether the conditions pose an unreasonable risk of serious damage to future health or safety of a child. Given the fact that the Supreme Court has recognized that juveniles suffer from certain psychological vulnerabilities when compared to adults, it would be disingenuous to suggest that the same conditions imposed on adults and children would have similar effects on them.

Second, Defendants take issue with the relief sought in this case. ECF No. 13, at 22–25. Specifically, Defendants argue that the injunction sought would impermissibly insert this Court into the business of the legislative and executive branches. ECF No. 13, at 23. Defendants appear to argue that this Court does not

have the power to grant the prospective relief sought. But courts can, and routinely do, address violations of constitutional rights and issue prospective relief to remedy violations in a civil action challenging prison conditions. *See, e.g.*, *Thomas v. Bryant*, 614 F.3d 1288, 1318 (11th Cir. 2010); *V.W. v. Conway*, 236 F. Supp. 3d 554, 590 (N.D.N.Y. 2017) (granting a preliminary injunction and enjoining defendants from imposing 23-hour disciplinary isolation on juveniles at the Justice Center); *A.T. v. Harder*, 298 F. Supp. 3d 391, 418 (N.D.N.Y. 2018) (same). To the extent Defendants are worried about the scope of Plaintiffs' requested injunction, their arguments are premature. This Court is aware of the Prison Litigation Reform Act and its requirement that prospective relief must be "narrowly drawn, extend[] no further than necessary to correct the violation of the Federal right, and [be] the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. 3626(a)(1)(A). At this stage, this Court has found no violation of Plaintiffs' rights and is not granting any prospective relief.

Finally, Defendants argue that Plaintiffs have failed to allege any policies, practices, or customs of DJJ that resulted in unconstitutional conditions of confinement and have, therefore, failed to state a claim under § 1983. ECF No. 2, at 20–21. This Court disagrees. Plaintiffs sufficiently allege a statewide policy, practice, or custom of solitary confinement, including the cumulative effects of deprivation of basic human needs that are a consequence of the isolation. *See* ECF

No. 2, ¶¶ 47–57. Rule 8 merely requires "a short and plain statement of the claim" that is "plausible on its face"—one that "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of an alleged violation. *Twombly*, 550 U.S. at 555–56. Plaintiffs satisfy this requirement. Plaintiffs make general allegations about the policies, practices, and customs that reflect when and for how long a juvenile is placed in solitary confinement. ECF No. 2, ¶¶ 47–51. Additionally, Plaintiffs provide specific examples of deprivation of basic human needs that accompany isolation. ECF No. 2, ¶¶ 52–57. The specific policies, practices, or customs underlying the isolation and the conditions imposed during isolation will likely be revealed during discovery. *See Harvard v. Inch*, Case No. 4:19-cv-212-MW-CAS, 2019 WL 5587314, at *3 (N.D. Fla. Oct. 24, 2019). For the purpose of this motion, Plaintiffs have alleged sufficient facts to bring a suit under § 1983.

A. <u>Objective Prong: Conditions of Confinement Poses an Unreasonable Risk of Serious Harm</u>

"Whether conditions of confinement are cruel and unusual is judged under a 'contemporary standard of decency'—that is, 'the evolving standards of decency mark the progress of maturing society.' " *Quintanilla*, 730 F. App'x at 746; *see also Thomas*, 614 F.3d at 1304. "As such, Plaintiffs, to properly state a claim for relief under the Eighth Amendment, must show that the conditions of confinement violate contemporary standards of decency." *Harvard*, 2019 WL 5587314, at *3.

Plaintiffs cite multiple authorities to show that isolating children violates contemporary standards of decency because of children's heightened vulnerability and continued physical, psychological, and social development. *See* ECF No. 2, ¶¶ 62–79. In addition to providing psychological, medical, and professional authorities, Plaintiffs allege, citing various authorities, that some states and the federal government have recognized the harm of solitary confinement on children and have banned or limited the use of solitary confinement. *See* ECF No. 2, ¶¶ 75, 77. "Taken together, these authorities help this Court to determine whether Defendants use of isolation and their policies and practices relating isolation violate contemporary standards of decency." *Harvard*, 2019 WL 5587314, at *3. At this stage in the litigation, Plaintiffs have alleged sufficient facts to show that isolation of children violates contemporary standards of decency.

Additionally, Plaintiffs have adequately alleged that the cumulative effects of various forms of deprivation subject juveniles to unreasonable risk of serious psychological and physiological harm. Specifically, Plaintiffs allege that deprivation of normal human contact, environmental stimulation, exercise, property, education, and sanitation subject them to an unreasonable risk of serious psychological and physiological harm. *See, e.g.,* ECF No 2, ¶¶ 47 (alleging deprivation of social interaction and environmental stimulation); 54–55 (alleging deprivation of normal human contact, education and environmental stimulation); 56–57 (alleging

deprivation of sanitation). Courts have recognized exercise, social interaction, environmental stimulation, and sanitation as basic human needs. *See Harvard*, 2019 WL 5587314, at *8 (collecting cases recognizing exercise, human contact, social interaction, and environmental stimulation as basic human needs); *Brooks v. Warden*, 800 F.3d 1295, 1304–05 (11th Cir. 2015) (citing cases that recognize deprivation of basic sanitary conditions can constitute an Eighth Amendment violation).

For each of these broad allegations of deprivation of basic human needs, Plaintiffs list specific conditions of confinement. For example, Plaintiffs allege that Defendants deprive them of sanitation because, among other things, 1) Defendants have failed to maintain plumbing which has resulted in toilets to back-up and flood the cells, 2) toilets reek of human waste and children are required to eat in the cells where the toilets are located, and 3) cells contain gnats, ants, or bugs that bite children. ECF No. 2, ¶ 56. "While some of these allegations in isolation may not result in violation of the Eighth Amendment, Plaintiffs have alleged sufficient facts to show that conditions of confinement, in combination, have a 'mutually enforcing effect that produces the deprivation of a single identifiable human need' such as human contact, environmental stimulation," recreation, and sanitation. *See Harvard*, 2019 WL 5587314, at *8 (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

For these reasons, Plaintiffs have alleged sufficient facts to show an objective risk of serious harm for children subject to solitary confinement.

B. Subjective Prong: Defendant Marstiller's Deliberate Indifference to Substantial Risk of Harm

"In conditions-of-confinement cases . . . to find deliberate indifference on part of a prison official, a plaintiff inmate must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; [and] (3) by conduct that is more than gross negligence." *Thomas*, 614 F.3d at 1312 (citation omitted). "That is, the evidence must demonstrate that "with knowledge of the infirm conditions, [the official] knowingly or recklessly declined to take actions that would have improved the conditions." *Id.* (citation omitted). And "[w]hether a prison official had the requisite knowledge of a substantial risk is subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 1313. Plaintiffs have sufficiently alleged that Defendant Marstiller was deliberately indifferent to the serious risk of harm caused by isolation and the conditions imposed during isolation.

Plaintiffs allege Defendant Marstiller's subjective knowledge of the risk of harm and her disregard of that risk in at least four ways. First, Plaintiffs point to a lawsuit filed against the DJJ Secretary where plaintiffs challenged defendants use of isolation in DJJ's North Florida Youth Development residential facility. ECF No. 2,

¶¶ 88–89. In that case, DJJ Secretary was informed that "[i]solation is contraindicated for adolescents with developmental disabilities, mental illness, and self-harming behavior." ECF No. 2, ¶ 89. From this, it can be inferred that Defendants knew the harm isolation caused to adolescents with developmental disabilities, mental illness, and self-harming behavior. Each of the named Plaintiffs suffers from developmental disability or mental illness, and at least one has engaged in self-harm. *See infra* Section V. In response to the lawsuit, DJJ Secretary and the agency amended DJJ's rules to eliminate the use of solitary confinement in residential programs. ECF No. 2, ¶ 89. However, they chose not to eliminate the use of solitary confinement in secure detention, where the named Plaintiffs are placed. Based on these allegations, it can be inferred that Defendants knew the risk of isolation and deliberately chose not to eliminate it in secure detention, thereby disregarding the risk associated with isolation.

Second, Defendants' knowledge can be inferred from the findings letter that DJJ Secretary received from the U.S. Department of Justice Civil Rights Division (DOJ).[1] ECF No. 2, ¶ 90. The DOJ found that DJJ's use of isolation at the Florida Youth Development Center, along with the denial of required services such as

---

[1] *See* U.S. Dep't of Justice, Civil Rights Division, *Investigation of the Arthur G. Dozier School for Boys and the Jackson Juvenile Offender Center, Marianna, Fla.*, (Dec. 1, 2011), https://www.justice.gov/sites/default/files/crt/legacy/2011/12/02/dozier_findltr_12-1-11.pdf (last visited December 4, 2019) (hereinafter, "Findings Letter").

educational materials, regular mental health evaluation, or daily exercise were unconstitutional conditions of confinement, especially for children with mental health needs or children at risk for suicide. *See* Findings Letter, at 17–18. This notice by the DOJ demonstrates that Defendants were aware of the substantial risk of harm created by the use of isolation, along with the conditions imposed during isolation, and deliberately disregarded the risk by continuing to impose isolation in secure detention. *See Hope v. Pelzer*, 240 F.3d 975, 979 (11th Cir. 2001), *overruled in part on other grounds*, 536 U.S. 730 (2002) (finding that plaintiff had satisfied the subjective requirement of Eighth Amendment test because the "exchange between the DOJ and the DOC demonstrate[d] that the DOC was aware of the substantial risk of harm created").

Third, Plaintiffs allege Defendants deliberately indifferent by comparing the practices and policies of isolation in residential post-adjudication programs and secure detention. ECF No. 2, ¶¶ 91–93. The differences highlighted by Plaintiffs demonstrate that Defendants know the risk of harm to children due to solitary confinement and have implemented policies in residential programs to offset the harm. However, Defendants have deliberately disregarded the risks posed by isolation for children in secure detention.

Finally, Plaintiffs have sufficiently alleged that Defendants had actual notice of the substantial risk of serious harm to the children subjected to solitary

confinement. First, Plaintiffs' counsel notified Defendants of the risk of harm to children subject to solitary confinement on behalf of youth who had engaged in self-harm behavior and were at a risk for suicide. ECF No. 2, ¶ 95. Second, Defendants received grievances from children, including Plaintiffs, asking to be removed from solitary confinement or not be placed in solitary again because they posed no imminent physical risk of harm to themselves or others, but were at risk of harm from being put in confinement. ECF No. 2, ¶ 95. Third, Defendants were aware of the risks for children with physical injuries like broken or sprained arms, who attempted suicide by wrapping sheets around their neck, and who cut themselves with pencils or other objects. ECF No. 2, ¶ 95. And despite this knowledge, Defendants placed these children, or retained them, in solitary confinement. ECF No., ¶ 95. Even after having actual notice of the substantial risk of harm through letters, grievances, and direct knowledge of harm, Defendants refused to change their solitary confinement policy and practice in secure detention. Plaintiffs have, therefore, adequately alleged Defendants' deliberate indifference. *See V.W.*, 236 F. Supp. 3d at 584 (finding significant evidence that defendants had been on notice of specific risks of serious risk of harm from solitary confinement through communication with juvenile advocacy group, prior litigation on the issue, complaints from parents, and defendants' continued observations); *A.T.*, 298 F. Supp. 3d at 414 (finding significant evidence that defendants had been on notice of

the specific risk of serious risk of harm from solitary confinement through complaints from the juveniles themselves, defendants' own continued observations, and the fact that the practices had continued unabated despite the pending litigation).

While each one of the instances of knowledge, standing alone, may not be enough to show that Defendants were deliberately indifferent to a substantial risk of harm, taken together, they nudge Plaintiffs' claims across the line from conceivable to plausible. For these reasons, Plaintiffs have sufficiently alleged facts to preserve their first and second causes of action.

## V.   Second and Third Cause of Action
### (Americans with Disability Act; Section 504 of the Rehabilitation Act)

To state a claim under the ADA and RA, a plaintiff must allege: "(1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Owens v. Sec'y, Fla. Dep't of Corr.*, 602 F. App'x 475, 477 (11th Cir. 2015) (unpublished) (quoting *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007)). "With the exception of its federal funding requirement, the RA uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable." *Badillo v. Thorpe*, 158 F. App'x 208, 214 (11th

Cir. 2005) (unpublished).  Defendants appear to challenge only the first and the third factor of this test.

The term "disability" under the ADA is a "physical or mental impairment that substantially limits one or more" of an individual's "major life activities." 42 U.S.C. § 12102(1). "Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentration, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Major life activities also "includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2)(B). Additionally, "the term 'substantially limits' shall be construed broadly in favor of expansive coverage." 28 C.F.R. § 35.108(d)(1)(i). "[T]he threshold issue of whether an impairment substantially limits a major life activity should not demand extensive analysis." 28 C.F.R. 35.108(d)(1)(ii).

Each Plaintiff has sufficiently alleged impairments that substantially limit major life activities. Plaintiff G.H. has an emotional behavioral disorder, depression, learning disorder, and anxiety which substantially limits his brain function, ability to learn, and ability to think. ECF No. 2, ¶ 14; *see* 28 C.F.R. §§ 35.108(b)(2), (c)(1) & (d)(2)(iii)(C). Additionally, Plaintiff G.H. wrapped his pants around his neck to

choke himself. ECF No. 2, at ¶¶ 18-19. This shows that his mental illness substantially limits his ability to take care of himself. *See Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 168 (2d Cir. 2003) ("A mental illness that impels one to suicide can be viewed as a paradigmatic instance of inability to care for oneself."). Plaintiff R.L. has been diagnosed with bipolar disorder, post-traumatic stress disorder, major depressive disorder, conduct disorder, and intermittent explosive disorder which substantially limits her brain function. ECF No. 2, ¶ 23; *see* 28 C.F.R. § 35.108(d)(2)(iii)(K) ("Major depressive disorder, bipolar disorder . . . substantially limits brain function). Finally, Plaintiff B.W. suffers from Attention Deficit Hyperactivity Disorder and impaired vision which substantially limits her thinking, concentration, and ability to see. ECF No. 2, ¶ 30; *see* 28 C.F.R. §§ 35.108(b)(1), (c)(1) & (d)(2)(iii)(B).

Next, Defendants argue that Plaintiffs were not discriminated against because of their disability. Specifically, Defendants claim that none of the Plaintiffs were placed in isolation or have remained in isolation because of their disability. ECF No. 13, at 28. This is not the  case. At least one of the named Plaintiff alleges that he remained in isolation because of his disability. ECF No. 2, ¶ 15 (Plaintiff G.H. retained in isolation for behaviors related to his disability). Further, "[a]n ADA claim may proceed on the theory that the Defendant failed to reasonably accommodate the

Plaintiffs' disability." *Lonergan v. Fla. Dep't of Corr.*, 623 F. App'x 990, 992 (11th Cir. 2015) (citations omitted).

Here, Plaintiffs have sufficiently alleged that they were discriminated against because of their disability due to Defendants' failure to provide reasonable accommodation. *See, e.g.*, ECF No. 2, ¶¶ 97 (alleging DJJ's failure to 1) modify disciplinary rules to accommodate for erratic behaviors of psychiatric or developmentally disabled children, and 2) accommodate children that have a hard time understanding facility rules or directions); 98 (alleging failure to modify DJJ's isolation policies and procedures to provide for adequate out-of-cell time, social interaction, environmental stimulation, mental health treatment, recreation, and school services, which results in self-harm behavior such as banging or punching the doors or concrete walls or attempting suicide); 99 (alleging failure to provide psychiatric or developmentally disabled children with mental health services to intervene, re-direct, and de-escalate situation caused by their disability-related behavior rather than punishing them with solitary confinement). Each of these failures to modify DJJ's policies and procedures to accommodate children with disabilities affects one or more named Plaintiffs. *See, e.g.*, ECF No. 2, ¶¶ 97 (Plaintiffs R.L. and G.H.); 98 (Plaintiff G.H.); 99 (Plaintiff B.W.). Additionally, the named Plaintiffs asked for accommodation through grievances. Specifically, Plaintiffs asked to be removed from solitary confinement or not placed in

confinement again because they posed no imminent risk of harm to themselves or others, but were instead at risk of harm in confinement. ECF No. 2, at ¶ 95.

For these reasons, Plaintiffs have sufficiently pled their claims for relief under the ADA and RA.

## VI.    Motion for a More Definite Statement

As an alternative to dismissing Plaintiffs' complaint, Defendants move for a more definite statement under Federal Rule of Civil Procedure 12(e). "Rule 12(e) motions are only permitted where the pleading at issue 'is so vague or ambiguous that the [responding] party cannot reasonably prepare a response.' " *Amerisure Ins. Co. v. Old Dominion Ins. Co.*, Case No. 1:16-cv-355-MW/GRJ, 2017 WL 5957773, at *4 (N.D. Fla. July 24, 2017). They are neither a vehicle to obtain greater detail nor are they to be used as a substitute for discovery. *Id.* (citations omitted). Defendants proffer seven issues that need to be clarified. ECF No. 13, at 31–34. These questions do not necessarily raise ambiguity in the complaint, but rather seek additional information about the nature of the claims and the relief sought.  The information sought by Defendants is more properly obtained via discovery than through a motion for a more definite statement. Plaintiffs' complaint is neither vague nor ambiguous.

The complaint has enabled this Court, and Defendants, to understand the nature of Plaintiffs' claims. The complaint describes, in detail, 1) the nature of

confinement juveniles are subjected to at DJJ facilities, 2) the conditions and deprivations that are imposed during solitary confinement, 3) the effects isolation has on juveniles, 4) the lack of penological justification supporting the use of solitary confinement, 5) the deliberate indifference of Defendant Marstiller to the effects of isolation and the conditions it imposes, and 6) the nature of discrimination children with disabilities face in DJJ's facilities.

For these reasons, Defendants' motion for a more definite statement is denied.

## VII.   Conclusion

Defendants have not convinced this Court that dismissal or a more definite statement is warranted. Therefore, Defendant's motion, ECF No. 13, is **DENIED**.

**SO ORDERED on December 6, 2019.**

s/Mark E. Walker_____
**Chief United States District Judge**

21