## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

_____

G.H., *et al*.,

          Plaintiffs,

                               Case No.: 4:19-cv-431-MW/MJF

v.

SIMONE MARSTILLER, *et al*.,

          Defendants.

_____

## PLAINTIFFS' MOTION TO COMPEL CONDITIONS FOR PLAINTIFFS' REQUEST FOR ENTRY ONTO LAND FOR RULE 34 INSPECTION WITH INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 37 of the Federal Rules of Civil Procedure and N.D. Loc. Rule 26.1, Plaintiffs, G.H., R.L., and B.W., by and through their undersigned counsel, hereby respectfully move this Court for an Order compelling the terms of Plaintiffs' Request for Entry Onto Land for Rule 34 Inspection (Rule 34 Inspection Notice) that: (1) permits Plaintiffs' experts to conduct confidential interviews of putative class members in any secure juvenile detention center based on a youth's consent; (2) provides that youth consent for interviews will be obtained through a signed authorization for this purpose during brief confidential conversations between putative class members, Plaintiffs' experts, and Plaintiffs' counsel while

Defendants' counsel and representatives stand a reasonable distance away;[1] and (3) prohibits Defendants Simone Marstiller and DJJ (Defendants) and their representatives from attending or recording these interviews.[2]

Defendants seek to impose limits on Plaintiffs' discovery that lack factual or legal support. It is commonplace for facility inspections in institutional reform cases to include confidential interviews with persons in custody, including putative class members. DJJ policy and practice does not require parental or guardian permission to conduct confidential interviews, visits, or legal calls with youth in DJJ custody, nor have Defendants required that permission to disclose records for the putative class members under the protective orders entered in this case. The interviews by Plaintiffs' experts should be no different. To preserve the fair litigation of this case, protect against any chilling effect on children's disclosures, and prevent any undue prejudice or burden to Plaintiffs and putative class members, the Court should grant this motion.

As grounds for this motion, Plaintiffs state as follows:

## FACTUAL BACKGROUND

1.     This is a civil rights case arising from Defendants' statewide policies and practices of isolating children in solitary confinement. ECF 22 at 2.

---

[1]  Plaintiffs understand that Department of Juvenile Justice (DJJ) facility staff need to observe the youth for security purposes.

[2]  The parties agree that the interviews of youth at any secure detention facility inspected by Plaintiffs' experts can take place. They disagree as to the conditions of the interviews.

Defendants repeatedly isolate children in solitary confinement for days on end, with no time limit, in locked cells. *Id.* at 3. In isolation, children suffer from deprivations including a lack of meaningful social interaction, environmental stimulation, outdoor recreation, education, sanitation, and access to personal property. *Id.* Defendants, through the use of isolation, subject the named Plaintiffs, and over 4,000 children placed in isolation every year, to a substantial risk of serious harm to their psychological and physical health and safety in violation of the Eighth Amendment. *Id.* DJJ policymakers have exhibited deliberate indifference towards these risks. *Id.* Plaintiffs also challenge Defendants' solitary confinement policy and practice as discriminatory against children with disabilities. *Id.*

2.      On May 14, 2020, Plaintiffs served a Notice of Request for Entry Onto Land for Rule 34 Inspection with attached proposed Stipulation (Rule 34 Notice and Stipulation). Plaintiffs seek this discovery in support of their motion for class certification and the merits in this action. Defendants served their objections on May 14, 2020.

3.      Plaintiffs' Rule 34 Inspection Notice and proposed Stipulation provided:

> Plaintiffs' team will be permitted to speak with putative class members who consent to such brief conversations. Defendants, including their experts will stand a reasonable distance away when these

3

conversations take place to allow Plaintiffs' team to speak confidentially with the putative class members.

After and separate from the inspections of operations, either the same or following day, Defendants will reserve and provide sufficient space for Plaintiffs' team to conduct confidential interviews with Plaintiffs and putative class members. Defendants will provide sufficient staff to escort youth to this space after receiving a list of people Plaintiffs' team would like to interview. Defendants will allow Plaintiffs' team to interview more than one person, but no more than three, at the same time in confidential locations. Defendants (including Defendants' experts) will not be allowed to participate in or listen to these interviews. Such time for privileged communications must be between the hours of 8:00 a.m. and 6:00 p.m.

   4.   Defendants' objections to the confidential interviews were:

Defendants object to numbered paragraph 9 of the proposed stipulation allowing Plaintiffs' representatives to speak to juveniles in the facility on the grounds the same is outside the scope of a Rule 34(a)(2) inspection. Juvenile interviews require parental, guardian and/or legal custodian consent, attorney representation and/or a duly noticed deposition in accordance with the Federal Rules of Civil Procedure. Furthermore, an Entry Onto Land under Rule 34 cannot be used as a method to obtain interviews or speak to persons on the land.

Defendants object to numbered paragraph 16 of the proposed stipulation for Plaintiffs to conduct confidential interviews during the inspection of juveniles in the facility. The request for interviews is outside the scope of a Rule 34(a)(2) inspection and juvenile interviews require parental consent, attorney representation and/or a duly noticed deposition in accordance with the Federal Rules of Civil Procedure. The request for unspecified juvenile interviews is also oppressive and burdensome in light of Defendants' security obligations and resources. Should any interview be conducted, after obtaining appropriate consent, Defendants reserve the right to attend and record the interviews and question the youth.

5.      The parties met and conferred about the Rule 34 Notice and Stipulation several times by phone and correspondence on August 14, 2020, August 25, 2020, August 27, 2020, September 8, 2020, September 11, 2020, September 16, 2020, and September 23, 2020.

6.      The parties have scheduled the first and second secure detention facility inspections to take place from November 9, through 12, 2020.

7.      During the parties' discussions about these issues, Defendants modified their objections to the following: the consent of a parent or guardian is required for any youth interview by Plaintiffs' experts and the interviews must be recorded, or attended by Defendants' representatives. Plaintiffs requested legal support for Defendants' positions. None was provided.

8.      Pursuant to DJJ policy and practice, Plaintiffs' counsel (and their representatives) have previously been permitted to interview any child in DJJ custody who consents. *See* Exs. A  at  ¶¶ 2-4 (Declaration of Andrea Costello) and B (Examples of authorizations that youth signed and DJJ facility approvals of visits/interviews). These interviews have been permitted with an authorization signed only by the youth. *Id.* The interviews were conducted in a confidential setting outside the presence of any DJJ representative. *See* Ex. A at ¶ 8.

9.      **Certificate of Attorney Conference:** Pursuant to N.D. Fla. Local Rule 7.1(B) and (C), Plaintiffs' counsel has conferred with counsel for Defendants

several times since August 14, 2020, by phone and correspondence about this matter. The parties were unable to reach agreement as to the issues in this motion.

10.   **Certificate of Word Limit**: Pursuant to N.D. Local Rule 7.1(F), the undersigned counsel hereby certify that this motion contains 3,692 words.

WHEREFORE, Plaintiffs respectfully request that the Court grant their Motion to Compel and enter an Order: (1) permitting Plaintiffs' experts to conduct confidential interviews of putative class members in any secure juvenile detention center based on a youth's consent; (2) providing that youth consent for interviews will be obtained through a signed authorization for this purpose during brief confidential conversations between putative class members, Plaintiffs' experts, and Plaintiffs' counsel while Defendants' counsel and representatives stand a reasonable distance away; and (3) prohibiting Defendants and their representatives from attending or recording these interviews.

## MEMORANDUM OF LAW

### I.   Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...". Fed. R. Civ. P. 26(b)(1). The scope of discovery in federal court is broad; the rules are liberally construed. *Adkins v. Christie*, 488 F.3d 1324, 1331 (11th Cir. 2007). A court may only limit the extent of discovery if it determines that the

discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. *See* Fed. R. Civ. P. 26(b)(2)(C)(i); *see also Quiterio v. QBE Speciality Ins. Co.*, No. 16-cv-895-T-35JSS, 2019 WL 5390865, at \*1 (M.D. Fla. Apr. 18, 2019) (granting motion to compel Rule 34 inspection to assist expert in finalizing opinions about claim).

A party may serve a request "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2). A court evaluating such a request considers the relevance of the inspection and balances the value of the information sought with the burden of the proposed intrusion. *See Dang ex rel. Dang v. Eslinger*, No. 6:14-CV-37-ORL-31TBS, 2015 WL 13655675, at \*2 (M.D. Fla. Jan. 20, 2015); *see also N.Y. State Ass'n of Retarded Children, Inc. v. Carey*, 706 F.2d 956, 961 (2d Cir. 1983).

## II.   Plaintiffs' Experts Should be Permitted to Conduct Confidential Interviews with Youth Who Consent

As part of Rule 34 facility inspections, Plaintiffs seek to have their experts conduct confidential interviews with children who consent to an initial brief discussion and a longer interview. Defendants object to these terms and assert that these interviews can only happen with a parent or guardian's consent. They also

assert that the interviews should be recorded. As explained below, the Court should reject these unsupported arguments.

None of the Rule 26 limitations on discovery apply here. The parties have no dispute about the relevance of youth interviews to the claims in this litigation. This discovery is not cumulative or duplicative: the direct experience of children in secure detention, their explanation about the impacts of Defendants' use of solitary confinement, and the youth's firsthand perspectives can only be obtained directly from youth. There is no burden to Defendants. They have agreed the interviews can take place, but disagree about how to obtain permission and want to record the interviews. Their objections lack merit.

### A.   Brief Discussions and Confidential Interviews With Detained Youth Who Consent Are Commonplace in Rule 34 Facility Inspections

Courts routinely permit confidential interviews by experts with consenting minors in state custody as part of Rule 34 inspections. *See Kenny A. v. Perdue*, No. 1:02-cv-1686-MHS, 2004 WL 7335091, at *2 (N.D. Ga. Dec. 3, 2004) (permitting plaintiffs' expert to conduct private interviews of willing foster children residents in state-run facilities in conditions case); *Morales v. Turman*, 59 F.R.D. 157, 159 (E.D. Tex. 1972) (plaintiffs' experts permitted to live with juveniles to determine the quality of life under confinement conditions in systemic challenge to unconstitutional conditions of confinement for juveniles); *Wyatt v. Hanan*, No.

Civ. A. No. 3195–N, 1995 WL 699616, at *1 (M.D. Ala. 1995) (expert permitted

to tour a secure adolescent center and observe classes outside the presence of

defendant's counsel without staff escort and to interview classroom teachers and

students).[3]

     Defendants' objection is also contrary to long-standing DJJ policy and

practice. For years, Plaintiffs' counsel, and their representatives, have interviewed

hundreds of youth in DJJ secure detention centers throughout the State based on

DJJ's policy and practice of a youth (<u>not</u> their parent or guardian) providing

consent for legal assistance. Prior to and during this litigation, Plaintiffs' counsel

obtained only the consent of the minors to conduct confidential interviews. *See*

Exs. A at ¶¶ 3-4, and 7; and B. These were not recorded and no DJJ representative

was present in the room. *See* Ex. A at ¶ 8; *see also* Fla. Admin. R. 63E-7.100(6).[4]

Defendants now seek to impose a baseless obstacle which is only connected to the

_____

[3] Many other courts have found plaintiffs' experts can conduct interviews with detained persons who consent. *See e.g.*, *N.Y. State Ass'n of Retarded Children, Inc. v.Carey*, 706 F.2d 956, 960 (2d Cir. 1983) (plaintiffs and their experts permitted to conduct inspection, including interviews of class members and staff members outside the presence of defendants' counsel and representatives); *Jones'El v. Berge*, 164 F. Supp. 2d 1096, 1102-03 (W.D. Wis. 2001) (expert toured super-maximum prison and conducted interviews with prisoners in a lawyer's interview room); *Madrid v. Gomez*, 889 F. Supp. 1146, 1160 (N.D. Cal. 1995) (expert inspection included conducting prisoner interviews); *K.L. v. Edgar*, 945 F. Supp. 167, 168-69 (N.D. Ill. 1996) (plaintiffs' experts granted wide access to institution for persons with mental illness, including resident interviews). Defendants have not provided any legal authority to support their position because these interviews are commonly permitted.

[4] Defendants' now claim that this rule only relates to residential programs, but, during conferral, their counsel confirmed that DJJ has always allowed attorneys to contact juveniles in custody that they represent and that all that is required to demonstrate an attorney-client relationship is confirmation from counsel. This practice is consistent with written DJJ policy which authorizes "[a] licensed attorney who represents the youth on a previous or pending case, **or an attorney who has written authorization from the youth** or the youth's parent or legal guardian **to provide legal consultation or representation for the youth**." Fla. Admin. Code R. 63E-7.100(6) (emphases added).

inspections of their facilities by Plaintiffs' experts. The Court should reject this position.

Defendants' claim that consent is needed here is erroneous. There are other similar legal contexts where the child, not parents or guardians, provide consent. For example, DJJ's policy and practice allows a child the right to consent to counsel in all stages of delinquency proceedings. *See* § 985.033, Fla. Stat. (2019). Children in dependent proceedings also have the right to consent to an attorney ad litem to represent their interests. *See* Fla. R. Juv. P. 8.217 and § 39.4085(20), Fla. Stat. Defendants should not be permitted to impose invalid barriers that interfere with a child's right to access the courts. The putative class members in DJJ custody should be permitted to speak with Plaintiffs' counsel (and their expert representatives) to challenge the unconstitutional conditions of their confinement.[5] *See*, *e.g.*, *John L. v. Adams*, 969 F.2d 228, 233-34 (6th Cir. 1992); *Morgan v. Sproat*, 432 F.Supp. 1130, 1158 (S.D. Miss. 1977).

Defendants' position is also undermined by the extensive discovery about putative class members that they have already produced in this action without parental or guardian consent. Defendants produced thousands of unredacted Incident Reports and Confinement Reports involving youth in custody at detention centers from January 1, 2015, to the present. These reports contain, *inter alia*, the

---

[5] Any limits on plaintiff contacts with putative class members must be based on a clear specific record with findings about particular abuses to establish good cause to burden First Amendment rights. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 (1981). Defendants cannot establish this here.

minor's name, their Juvenile Justice Identification Number, staff narratives about the child, whether the child received any mental health services, and detailed staff descriptions about the incident. Some reports include information about children's hospitalizations and medical conditions.[6] Defendants also agreed that Plaintiffs could request (and they would provide) the DJJ, medical, and mental health records of any child in secure detention, without parental or guardian consent, following an inspection. Defendants acknowledged that parental or guardian consent is not required to disclose these youth records because this information is subject to disclosure and protected under the Confidentiality Order (ECF 36) and HIPAA Qualified Protective Order (ECF 29) in this case.

Defendants' position about the consent required for Plaintiffs' expert interviews is unsubstantiated. It unduly burdens and obstructs the truth seeking purpose of discovery. *See*, *e.g*., *Malautea v. Suzuki Motor Co.,* 987 F.2d 1536, 1546 (11th Cir. 1993). Defendants should not be permitted to maintain the position that no parental or guardian consent is necessary when the information represents their version about the confinement of children, but is required when Plaintiffs' experts want to talk to these same children about their version of events in detention (rather than staff's).

---

[6] As stated in the HIPAA Qualified Protective Order, "The parties may not assert a discovery objection based on the fact that the documents or information sought contain PHI protected by HIPAA, unless the PHI falls outside the scope of this Order." ECF 29 at ¶ 4. Any protected health information obtained by Plaintiffs' experts through youth interviews falls within the scope of the Order. Any reliance on HIPAA by Defendants to object to the interviews of youth should, therefore, be disregarded.

**B.     Recording the Interviews Will Have a Chilling Effect on Youth and Prevent the Full and Fair Litigation of Plaintiffs' Claims**

Children must feel comfortable talking openly about their experiences so that Plaintiffs' experts can form full and accurate opinions about how DJJ's challenged policy and practice subjects children to a risk of harm. *See* Ex. C at ¶¶ 4-7 (Declaration of Dr. Louis Kraus). This includes childrens' experiences in solitary confinement, mental health histories, medical histories, and other sensitive issues that concern conditions in secure detention. *Id.* at ¶¶ 5-6. If children know that the interviews are recorded, they may be afraid to openly discuss these matters or to say things that may be viewed as critical of DJJ staff based on fear of reprisal. *See* Ex. C at ¶¶ 4-7; *see also United States v. Erie Cnty.*, No. 09-cv-849S, 2010 WL 986505, at *3 (W.D.N.Y. Mar. 17, 2010) (finding that involving defendants' employees and their attorneys in expert interviews of incarcerated adults "would likely chill willingness to speak to investigators or speak candidly. This, of course, defeats the whole purpose of speaking to inmates in the first place.").

Children have unique vulnerabilities and are still developing socially, cognitively, and psychologically. ECF 22 at 6-7. They are sensitive to actual or perceived pressure or intimidation. *See* Ex. C at ¶ 4. Any chilling effect on children's disclosures will inhibit Plaintiffs' experts from reaching accurate and complete opinions. *Id.* at ¶¶ 4-8. Defendants' counsel unsuccessfully attempted to impose similar conditions for facility inspections in past litigation challenging the

conditions of confinement for detained youth in Polk County. *See* Ex. D. For these

reasons, the Court should also reject Defendants' objections here.

**C.    The Balance of Interests Weighs in Plaintiffs' Favor Because Defendants Can Obtain Discoverable Information Through Less Intrusive and Unduly Burdensome Means**

Rule 26(a)(2) of the Federal Rules of Civil Procedure does not permit

Defendants unfettered access to Plaintiffs' expert interviews with putative class

members. Plaintiffs' experts have an obligation to disclose "the facts or data" which

they consider in forming their opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii). This is

usually done by disclosing the discoverable aspects of an expert's notes. *See*, *e.g*.,

*CSX Transp., Inc. v. Kirkland*, No. CV416-117, 2017 WL 2271120, at *4 (S.D. Ga.

May 24, 2017) (distinguishing between notes containing "facts or data" subject to

disclosure and "working notes" not subject to discovery). The Federal Rules of

Civil Procedure do not allow Defendants to discover other facts that may surface

during an interview which the expert does not rely on such as where the facts are

immaterial or should be limited on another basis. *See Weaver v. Lexington Ins. Co.*,

No. 8:05-CV-1913-T-27, 2006 WL 3147655, at *1 (M.D. Fla. Nov. 1, 2006);

*Pendlebury v. Starbucks Coffee Co.*, No. 04-CIV-80521, 2007 WL 9702482, at *1

(S.D. Fla. Aug. 27, 2007). The expert disclosure rules are intended to allow both

sides to prepare their case. *See Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir.

2008). Defendants have ample ability to do so without recording or attending

interviews. They should not be allowed to obtain more than they are permitted to discover.

Defendants assert that their recording of children's interviews is needed to verify the accuracy of what was said and understood by Plaintiffs' experts. This reasoning is based on an unsubstantiated assumption that Plaintiffs' experts will act in an unethical or negligent manner and misrepresent what was said by a child. This is absurd. Plaintiffs' experts are well established and respected professionals in their fields. They have conducted similar correctional facility inspections. Defendants have offered no proof to the contrary. This type of faulty argument is routinely rejected in the context of other expert interviews. *See Osgood v. Discount Auto Parts, LLC*, No. 3:13-CV-1364, 2014 WL 212323, at *6-7 (M.D. Fla. Jan. 21, 2014) (rejecting recording of interview for purpose of "preserving an accurate record of the dialogue" during Rule 35 examination); *see also Mantel v. Carnival Corp.*, No. 09-CV-20042, 2009 WL 3247225, at *1 (S.D. Fla. Oct. 9, 2009) (noting majority view that third-party presence will "contaminate" the exam); *Tomlin v. Holecek*, 150 F.R.D. 628, 631-32 (D. Minn. 1993) (rejecting recording and third-party presence because of potential risk to Rule 35 evaluation integrity).

Defendants assert they also want to record interviews because it may be difficult to locate the children interviewed. They have other available, far less intrusive remedies. Defendants and their experts can review any discoverable

interview notes of Plaintiffs' experts. They can review a child's records requested by Plaintiffs following an inspection and interviews. They can depose Plaintiffs' experts, inquire, and cross-examine about the interviews. Rule 26 does not require more.

Plaintiffs' request for confidential interviews of putative class members outside the presence of Defendants and their agents comports with common practice. *See*, *e.g.*, *Kenny A.*, 2004 WL 7335091, at *2; *see also Wyatt*, 1995 WL 699616; *Gumm v. Sellers*, No. 5:15-CV-00041, 2017 WL 5885315, at *1 (M.D. Ga. Oct. 20, 2017) (authorizing plaintiffs' expert to conduct confidential interviews of inmates during prison inspection). The Court should reject Defendants' assertions that recording Plaintiffs' expert interviews is necessary or legally supported.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion to Compel and issue an Order: (1) permitting Plaintiffs' experts to conduct confidential interviews of putative class members in any secure juvenile detention center based on a youth's consent; (2) providing that youth consent will be obtained through a signed authorization for this purpose during brief confidential conversations between putative class members, Plaintiffs' experts, and Plaintiffs' counsel while Defendants' counsel and representatives stand a

reasonable distance away; and (3) prohibiting Defendants Simone Marstiller and

DJJ (Defendants) from attending or recording these interviews.

Dated: October 9, 2020            Respectfully submitted,

By:  ____ s/ Andrea Costello ____
Andrea Costello
Fla. Bar No. 0532991
Christopher M. Jones
Fla. Bar No. 994642
Jennifer Painter
Fla. Bar No. 110966
Aimee Lim
Fla Bar No. 116209
Rachel Ortiz
Fla. Bar No. 0083842
Florida Legal Services
122 E. Colonial Drive, Suite 100
Orlando, FL 32801
Telephone: (407) 801-0332 (direct)
andrea@floridalegal.org
christopher@floridalegal.org
jennifer.painter@floridalegal.org
aimee.lim@floridalegal.org
rachel.ortiz@floridalegal.org

Kelly Knapp
Fla. Bar No. 1011018
Leonard J. Laurenceau
Fla. Bar No. 106987
Southern Poverty Law Center
4770 Biscayne Blvd., Suite 760
Miami, FL 33137
Telephone: (786) 347-2056
kelly.knapp@splcenter.org
leo.laurenceau@splcenter.org

Dante P. Trevisani
Fla. Bar No. 72912

Laura A. Ferro
Fla. Bar No. 1015841
Sam Thypin-Bermeo
Fla. Bar No. 1019777
Marcel A. Lilavois, Jr.
Fla. Bar No. 1016175
Florida Justice Institute, Inc.
100 S.E. 2nd St., Ste 3750
Miami, FL 33131
Telephone: (305) 358-2081
dtrevisani@floridajusticeinstitute.org
lferro@floridajusticeinstitute.org
sthypin-bermeo@floridajusticeinstitute.org
Mlilavois@floridajusticeinstitute.org

**Attorneys for Plaintiffs**