## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

_____

G.H., *et al*.,

               Plaintiffs,

                                Case No.: 4:19-cv-431-MW/MJF

v.

JOSEFINA TAMAYO,[1] *et al*.,

               Defendants.

_____

### PLAINTIFFS' MOTION TO COMPEL RESPONSES TO FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS SIMONE MARSTILLER AND FLORIDA DEPARTMENT OF JUVENILE JUSTICE WITH INCORPORATED MEMORANDUM OF LAW

      Pursuant to Rule 37 of the Federal Rules of Civil Procedure and N.D. Loc. Rule 26.1, Plaintiffs, G.H., R.L., and B.W., by and through their undersigned counsel, hereby respectfully move this Court for an Order compelling Defendants, in response to Plaintiffs' First Requests for Production to each Defendant, to: (1) search all available repositories and custodians for relevant and responsive documents and Electronically Stored Information (ESI), including emails; (2) search for and produce all responsive documents that are defined as "policies" in

---

[1] On February 5, 2021, Governor DeSantis appointed Simone Marstiller to be Secretary of the Florida Agency for Health Care Administration. Josefina Tamayo is Acting Secretary of the Department of Juvenile Justice (DJJ) and is automatically substituted in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Plaintiffs' First Requests for Production; (3) search for and produce all relevant and responsive documents and ESI from January 1, 2016, to the present, and (at a minimum) using Plaintiffs' proposed search terms to do so; and (4) supplement discovery responses. Plaintiffs also seek an Order overruling Defendants' waived objections, setting a deadline for production within 30 days, and awarding reasonable attorney's fees and costs because Defendants' discovery objections, shifting positions, and delays are not substantially justified.

## **INTRODUCTION**

Plaintiffs served their First RFPs to each Defendant on December 27, 2019. Despite many efforts to address various deficiencies in Defendants' responses (or lack thereof), discovery critical to the claims and defenses in this action, including related to class certification, remains either in dispute or not produced. Defendants refuse to perform reasonable searches for requested information based on their position that a "policy" can only come from the DJJ Secretary. Defendants refuse to produce relevant documents and ESI (including email) based on unsubstantiated and meritless objections "burden" and "expense" objections, but they have never, despite Plaintiffs' requests, substantiated these objections with required specifics such as the actual number of documents at issue, or the staff time or cost involved.

Plaintiffs have made every effort to resolve these matters but the parties have reached an impasse. Now, Plaintiffs do not have the documents and ESI

(including email) that is needed to move for class certification before the March 30, 2021, deadline. Court intervention is needed for the full and fair adjudication of the claims brought by Plaintiffs and the putative class of over 4,000 children who are, or will be, subject to a substantial risk of serious harm in solitary confinement each year in DJJ's 21 secure juvenile detention centers throughout the state.

## FACTUAL BACKGROUND

1.      This is a civil rights case arising from Defendants' statewide policies and practices of isolating children in solitary confinement, repeatedly, for days on end, with no time limit, in locked cells. ECF No. 22 at 2-3. In isolation, children suffer from deprivations including a lack of meaningful social interaction, environmental stimulation, outdoor recreation, education, sanitation, and access to personal property. *Id.* Defendants, through the use of isolation, subject the named Plaintiffs, and over 4,000 children placed in solitary confinement every year, to a substantial risk of serious harm to their psychological and physical health and safety in violation of the Eighth Amendment. *Id.* DJJ policymakers have exhibited deliberate indifference towards these risks. *Id.* Plaintiffs also challenge Defendants' solitary confinement policy and practice as discriminatory against children with disabilities. *Id.*

2.      On December 27, 2019, Plaintiffs served their First Requests for Production of Documents (First RFPs) on Defendants Marstiller and DJJ. *See*

Exhibit (Ex.) 1, (Declaration of Andrea Costello) ¶ 2. Plaintiffs' First RFPs requested information from January 1, 2014, through the present, unless otherwise indicated. *Id.*

3.      Plaintiffs' RFPs seek documents concerning policies and practices related to the claims and defenses in this action concerning solitary confinement: use and conditions of confinement; behavior management systems; positive behavior interventions; children with disabilities, who are pregnant, at risk for suicide, or have a mental illness that may be subject to confinement; available programming and services; medical confinement; facility operations; staffing; staff training; youth grievances; management reviews of incidents in detention. *See* Ex. 2, RFP Nos. 17-26, 28-29, 48, 50-52, 63-64, 73-76, 115-120, 122-24, 127-36, 139-41, 148-50 to Marstiller.[2]

4.      Plaintiffs requested that Defendant DJJ produce policies related to youth with disabilities who are, or may be, subject to confinement including about: reasonable modifications, reasonable accommodations, and data or grievances concerning youth with disabilities. *See* Ex. 2, RFP Nos. 1-4 to DJJ. Defendants have never adequately searched for these documents, including Electronically

---

[2] As required by N.D. Local Rule 26.1, the Requests for Production and responses at issue are included in Exhibit 1 with this motion. For efficiency, Plaintiffs address the categories or types of information requested, the overarching issues that form the bases of Defendants' objections, and explain the reasons to compel this discovery. A Declaration from Plaintiffs' counsel contains additional factual details.

Stored Information (ESI) because of Defendants' objections about Plaintiffs' definition of "policies." Ex. 1, ¶¶ 4-6, 10.

5.      Plaintiffs' First RFPs to each Defendant defined a "policy" or "policy" as:

written or formal policies, facility operating procedures, interim policy documents, procedures, rules, regulations, protocols, technical manuals, guidelines, directives, orders, instructions, bulletins, training materials, memoranda, practices, customs, and usages, including those that may not have been officially approved, reduced to writing, or otherwise formalized. It includes policies that are in effect throughout DJJ or at one or more facilities.

6.      Plaintiffs requested other types of information (including ESI) from Defendant Marstiller about confinement such as: audits, work with consultants, efforts to reduce confinement, staffing, rule changes, studies or reports about the harm or impacts of confinement, authorizations to exceed statutory time periods for confinement, investigations, training, reports of serious incidents, complaints and grievances, services and activities, corrective action, medical confinement, *See* Ex. 2, RFP Nos. 27, 30-37, 39, 40-47, 49, 51, 53-63, 73-75, 77, 79, 80-84, 89-92, 95-98, 100, 104-105, 109, 114, 137-38, 142, 151-156, 158,173, 176. Some of this information has been produced, but most is incomplete or references other discoverable information that was not produced.

7.      Plaintiffs also requested reports about the number of youth subject to confinement relating to those who suffer from self-harm, suicide risk, pregnancy,

disability, use of force, or mental illness. *See* Ex. 2, RFP Nos. 101-102, 104-108, 110-113, 143, 146 to Marstiller and No. 5 to DJJ. Some, but not all, of this information has been produced through reports to the DJJ Central Communications Center and Office of the Inspector General.[3] *See* Ex. 2, RFP Nos. 77-81, 99, 102, 106-108, 110-112, 113, 145, and 147 to Marstiller. Defendants agreed to attempt to search for and produce data about children with disabilities subject to isolation; they have never done so. Ex. 1, ¶ 18. Plaintiffs' requests for similar data about youth who are pregnant, have a mental illness, or have been subject to isolation in controlled observation[4] are unanswered. Defendants also refuse to adequately search for emails related to these requests.

8.     Defendants served their initial responses to Plaintiffs' First Requests for Production on March 6, 2020. Ex. 1, ¶ 4. Although Defendants have amended, "corrected," or supplemented their responses since then, their responses remain deficient in key respects. Id. ¶¶ 4-7, 9, 12, 23-25. These deficiencies include unsupported or waived objections and inadequate searches.

9.     For example, in June 2020, Defendants served amended responses to the First RFPs in which they made new objections to producing any "policies," as

----

[3] These offices are charged with investigations about incidents that involve the safety of youth in detention. *See* Fla. Admin. Code R. 63F-11. The parties are attempting to resolve issues based on Defendants' objections to relevance and burden as to the remaining CCC report categories, but this issue may also require judicial intervention once ripe.

[4] Controlled observation is isolation for youth identified as at risk for suicide can also be used when a youth is in solitary confinement "due to misbehavior[.]" *See* Fla. Admin. Code R. 63N-1,00952(3).

defined by Plaintiffs. Based on this objection, Defendants agreed only to: (a) produce "policies" that were officially enacted by the Secretary's office (e.g., the administrative code or Facility Operating Procedures);[5] (b) search for documents that indicate a custom, policy, or practice of Defendant from only the Duval and Volusia Regional Detention Centers; and (c) search emails from January 1, 2016, to present for the Regional Director of the North Region, and the Duval and Volusia Superintendents using the term "confinement." Defendants' offer was subject to further objections that they would not produce all information based on disproportionality and undue burden. *See* Ex. 2, RFP Nos. 17-26, 28-29, 48, 50-52, 63-64, 73-76, 115-120, 122, 123 to Marstiller and RFP Nos. 1-4 to DJJ.

10.     Defendant DJJ refuses to produce most of the information about Plaintiffs' disability claims other than the named Plaintiffs' grievances. These RFPs address: requests for reasonable accommodations or modifications made by youth in confinement, data summaries or emails about the number of youth with disabilities in confinement, grievances related to youth with disabilities in confinement, and documents (and email) related to the audit of any detention center. DJJ's response only referred to sections of the DJJ administrative code. *See* Ex. 2, RFP Nos. 1-4, 6-7, 21 to DJJ.

---

[5] It remains unclear if all FOP drafts have been produced.

11.     Defendants also refuse to search for or produce information relevant to Plaintiffs' allegations about Defendants' deliberate indifference. For example, after months of discussions, Defendants agreed to produce comprehensive data about the confinements that occurred in secure detention from January 1, 2014, onward, but refused to search for or produce similar data for DJJ post-adjudication programs. *See* Ex. 2, RFPs Nos. 99, 103, and 105 to Marstiller. Plaintiffs explained to Defendants that this information is relevant to proof of deliberate indifference concerning DJJ's decisions to take, or not take, certain actions to change or reform their confinement policies and practices in post-adjudication programs but not secure detention. *See* Ex. 2, RFPs No. 101 to Marstiller; *see also* ECF No. 2 at ¶¶ 91-93. Defendants have produced limited information concerning their efforts to study and reform the use of solitary confinement in secure detention. The document production is incomplete and references other relevant discoverable information which was not produced.

12.     From May 2020 to February 2021, the parties engaged in many discovery conferences, by telephone and correspondence, concerning the RFPs at issue. *See*, *generally*, Ex. 1. Plaintiffs repeatedly raised the fundamental issue of whether Defendants had identified and searched all available information repositories and the search functionalities of their systems. *Id.* In response to Defendants' confusion about what was requested, Plaintiffs provided specific

examples of the type of documents sought and where they might search to find them. *Id.*

13.     For several weeks, Defendants advised that they were still working to identify available databases and repositories, what data they contained, and their search functionalities and would update Plaintiffs following further internal discussions with their clients. Ex. 1, ¶ 11. It became clear to Plaintiffs during a meet and confer in November 2020 that Defendants' counsel had not considered repositories of information such as DJJ's Juvenile Justice Information System (JJIS), related Facility Management Information System (FMS), an online SharePoint document storage system, and DJJ's facility and headquarters' level K-drives for most RFPs. *Id.* ¶ 18. Following that meeting about ESI discussed and apparently available to Defendants, they still have not produced it.

14.     With regard to the time period of information requested, from January 1, 2014, to the present, Defendants have produced certain information, such as facility Incident Reports or the statewide detention confinement data, but refuse to adequately search for or produce other ESI such as emails and facility-level documents responsive to other RFPs for the same time period.

15.     Since March 2020, Defendants persistently objected to numerous RFPs to search for and produce all responsive information if it relates to a detention facility other than the Duval or Volusia Regional Juvenile Detention

9

Centers. Ex. 1, ¶¶ 10, 13. Defendants state that this is because the named Plaintiffs were at only these two centers at the time of filing the Complaint. *Id.* Defendants' objection improperly disregards that this is a statewide case brought on behalf of a putative class at all 21 DJJ detention centers. It also disregards that they have produced certain information as to all detention centers.

16.   Although Plaintiffs never consented to Defendants' amending or supplementing their objections following their initial responses, they did so on June 11, 2020. Ex. 1, ¶ 9. Plaintiffs informed Defendants that these were untimely and waived objections. *Id.* Defendants disagreed and continued to advance their objections. *Id.*

17.   The parties' conferences about email searches have been similarly unproductive for related reasons. Ex. 1, ¶¶ 14-17, 20-22. To date, Defendants have only produced emails about the named Plaintiffs and a handful of emails about changes to their behavior management system and updated FOPs. Plaintiffs have requested more; Defendants will not agree to produce it.

18.   The parties' discussions about email searches in this case began in May 2020 and ended in late February 2021 when the parties reached an impasse. The parties conferred many times about the custodians whose email would be searched, what search terms would be used, and related matters. *Id.*

19.    After discussion, Defendants agreed to conduct email searches to retrieve the types of documents that Plaintiffs defined as "policy" so long as they came only from leadership at the top. *Id.* Plaintiffs never agreed this was sufficient, but asked Defendants to do at least this much so discovery could proceed. *Id.* Defendants then proposed to perform initial email searches using the keyword "confinement" for the Secretary, the Assistant Secretary of Detention, Chief of Staff, North Regional Director, and the Superintendents for the Duval and Volusia detention centers depending on the volume of the search results. *Id.* Plaintiffs agreed to start there with the email search to move the discovery process forward, but never agreed this was sufficient. *Id.* The parties could not agree on the relevant time period, but settled on initial searches from January 1, 2016, to the present. *Id.* After weeks, the parties also agreed on a list of custodians which included other headquarters' positions, regional directors, and superintendents. *Id.*

20.    Using this approach, Defendants provided email "hit" reports with the term "confinement." *Id.* These "hit" reports showed the number of emails for certain custodians. Defendants' searches were limited in that many of the agreed upon custodians were not included. Defendants asserted proportionality and undue burden for not including all of the agreed upon custodians, but all Plaintiffs had requested was a hit report with the number of emails. Defendants never substantiated or supported these objections by conducting a complete search as to

all custodians and providing the total number of emails at issue. By January 2021, Defendants reversed course and decided they would only search emails using the term "confinement" for the Secretary and Assistant Secretary of Detention and only for January 1, 2016, to the present. Ex. 1, ¶ 21.

21.     The parties' discussions about requests for non-email ESI followed a similar path. In May and June 2020, Defendants advised they were working to try to understand DJJ's available databases and the feasibility of producing certain reports about youths' disability or mental health status. Ex. 1, ¶ 11. In subsequent negotiations, Defendants agreed to perform keyword searches for non-email ESI but then tabled the issue pending review of email search results. *Id.*, ¶ 20. To help facilitate this process, the parties had a call with DJJ's IT staff to discuss JJIS, DJJ's Facility Management System, an online SharePoint document storage system, and their facility-level and headquarters K-drives.[6] *Id.*, ¶ 18.

22.     Just as with email discussions, on January 7, 2021, Defendants objected that their proposed searches for the term "confinement" on DJJ's D-drives and SharePoint were overbroad and burdensome. Ex. 1, ¶ 21. Plaintiffs requested specifics about why; none were provided. *Id.* Eventually, Defendants made another about-face and informed Plaintiffs that they would only conduct a very limited

---

[6] Defendants claim the delay in these searches was because they were waiting for Plaintiffs' counsel to provide a list of questions about searches related to JJIS. However, it was very clear from the First RFPs and many subsequent clarifications about the requests what reports and data were requested.

non-email ESI search for only Defendant Marstiller and the Assistant Secretary of Detention. Like the "confinement" term email searches, this discussion reached an impasse. *Id.*

23.     During facility inspections on January 26-28, 2021, Plaintiffs' counsel identified many documents that were "policies" as defined in Plaintiffs' First RFPs that were readily apparent, but not produced. Ex. 1, ¶ 23. These included Facility Operating Procedures (FOPs) with an effective date of July 2020; posters, guidelines, flyers, publications, handbooks, and log books about behavior management, rules that youth should follow, guidelines about what misbehavior would result in confinement, training materials, and guidance to youth about programs and services such as visitation, mental health services, medical services, phone use, and personal appearance.[7] *Id.*, ¶¶ 23-24. These documents were in youth living areas, medical areas, classrooms, cafeterias, and throughout other areas of the facilities. The majority of these documents were never produced. *Id.*

24.     Following the January 2021 facility inspections, Defendants produced a handful of documents that appeared to be earlier different drafts of some of the behavior management policies posted at the facilities. *Id.*, ¶ 25. Defendants also referred Plaintiffs to the DJJ website for the current FOPs that they had seen. *Id.*

---

[7]  Plaintiffs' counsel has provided a Declaration about this. The documents are subject to the confidentiality order in this case and would need to be filed under seal. If the Court prefers to see the documents, Plaintiffs can submit the photos from the inspections to the Court.

Plaintiffs informed Defendants that the FOPs which were at one of the facilities were inconsistent with those on their website. Defendants did not respond. *Id.*

25.     On February 12, 15, and 19, 2021, Defendants supplemented their production with additional documents, including dated copies of FOPs from 2014 to 2020 and emails transmitting the updated copies; some documentation related to changes to their behavior management policies, incentives, and use of behavior technicians; confinement reviews for Brevard and Pinellas; mental health and substance abuse forms; DJJ and CCC policy documents; and updated DJJ records for the named Plaintiffs. They still did not produce everything observed during the inspections nor emails and non-email ESI. Many of these documents also reference other relevant discoverable information which was not produced. *Id.*

26.     Given the upcoming class certification motion deadline on March 30, 2021, Plaintiffs wrote to Defendants in January and February about the outstanding deficiencies in Defendants' responses to the First RFPs. Plaintiffs asked if Defendants intended to produce any further documents or search for ESI (including email) and informed Defendants they intended to seek judicial intervention. Defendants responded by summarizing their responses to date and stating they were prepared to address these issues with the Court.

WHEREFORE, Plaintiffs respectfully request that the Court issue an Order compelling Defendants to search for and produce responsive information to

14

Plaintiffs' First RFPs, overrule their objections, set a 30-day deadline for production, and award reasonable attorney's fees and costs because Defendants' positions are not substantially justified.

## MEMORANDUM OF LAW

The parties' discovery disputes at issue fit into three categories. First, Defendants have made numerous improper objections to RFPs based on Plaintiffs' definition of "policies," the requested time period, relevance, proportionality, undue burden, expense, and as to time period. Second, relying on these meritless objections, they refuse to search for and produce relevant and responsive information in their possession, custody, and control. Third, Defendants' refuse to supplement certain incomplete and highly relevant discovery beyond December 27, 2019.

**I.    The Court Should Order Defendants to Produce the Discovery at Issue Because it is Relevant, Proportional to the Needs of the Case and There is No Undue Burden**

Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …" Fed. R. Civ. P. 26(b)(1). The scope of discovery in federal court is broad. *Adkins v. Christie*, 488 F.3d 1324, 1331 (11th Cir. 2007). "Discovery is not limited to issues raised by the pleadings." *Pitts v. Francis*, Case No. 5:07cv169/RS/EMT, 2008 WL 2229524, at *2 (N.D. Fla. May 28, 2008) (citation omitted). As

explained below, the Court should issue an Order requiring Defendants to search all available sources and produce the requested relevant and discoverable documents and ESI (including email).

### A.   Defendants' Objections to Plaintiffs' Definition of "Policy" Lack Merit

Defendants refuse to search available sources of information, documents, and ESI for many RFPs based on their constricted view of what could be a "policy."[8] Plaintiffs have, over many months, exhaustively explained the relevance of "policy" documents  (including ESI) such as: written or formal policies, operating procedures, interim policy documents, procedures, rules, protocols, guidelines, directives, orders, instructions, bulletins, training materials, and memoranda. To Defendants, policies can only be "official" in that they come from the top of the agency (i.e., Secretary or Assistant Secretary of Detention). Therefore, if it is not in their administrative code or FOPs from the Secretary-level, it is not an "official" policy that they need to find and produce. These objections are meritless and have created a logjam to the free flow of responsive discovery in this case.

Although Plaintiffs challenge overarching state-wide policies and practices about the use of solitary confinement, that does not mean that the creation or

---

[8]  These include: RFP Nos. 17-26, 28-29, 48, 50-52, 63-64, 73-76, 115-120, 122-24, 127-36, 139-41, 148-50 to Marstiller and Nos. 1-4 to DJJ. *See* Ex. 1.

implementation of policies and practices that are institution-specific or specific to populations of children (i.e., those with disabilities, who are pregnant, at risk for suicide, or have an identified mental illness) are irrelevant. *See*, *e.g.*, *Harvard v. Inch*, No. 4:19CV212-MW/CAS, 2020 WL 701990, at *4 (N.D. Fla. Feb. 7, 2020). Discovery is an appropriate device to unveil "[t]he specific policies, practices, or customs underlying the isolation and the conditions imposed during isolation." *G.H. v. Marstiller*, 424 F. Supp. 3d 1109 (N.D. Fla. Dec. 6, 2019) (citing *Harvard v. Inch*, 411 F. Supp. 3d 1220, 1233-34 (N.D. Fla. Oct. 24, 2019). This is precisely what Plaintiffs' "policy" RFPs seek.

Plaintiffs made allegations about the policies, practices, and customs that reflect when and for how long a child is placed in solitary confinement, often the same child repeatedly, and the deprivations of basic human needs that accompany isolation. *Id.* (citing ECF No. 2, ¶¶ 47–51, 52–57). They should be permitted to obtain discoverable and relevant information to prove these allegations and disprove Defendants' defenses.

Contrary to Defendants' assertions, this discovery goes to the heart of the claims and defenses in this action; it is relevant and proportional to the needs of this case. Plaintiffs' claim, pursuant to 42 U.S.C. § 1983, alleges that Defendants, through various written and unwritten policies and practices that are pervasive in detention centers throughout the state, implement an overarching policy and

practice of isolating children in such a way that deprives them of their rights. *See*, *G.H.*, 424 F. Supp. 3d at 1115-16.

It is clear that Section 1983 claims may challenge practices, and not just formal policies, because "[a] custom or practice, while not adopted as an official formal policy, may be so pervasive as to be the functional equivalent of a formal policy." *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1330 n.6 (11th Cir. 2003); *see also Harvard*, 2020 WL 701990, at *4 (rejecting the Department of Corrections' arguments that only "official" or "formal" rules, procedures, and policies are relevant and discoverable in class action challenging the use of isolation). For these reasons, Plaintiffs are entitled to discover more than just formal written policies from the Secretary or Assistant Secretary of Detention to support their Section 1983 claim. *See*, *e.g.*, *Harvard*, 2020 WL 701990, at *5; *see also Dunn v. Dunn*, 219 F. Supp. 3d 1100, 1158 (M.D. Ala. 2016) (finding that § 1983 liability could properly rest on policies and practices of the Alabama Department of Corrections, and the policies and practices of individual prisons).

Plaintiffs are entitled to discover evidence of how individual DJJ staff, and mental health and medical providers, implement DJJ policies and practices (or do not) at specific detention centers and how these actions subject children to a risk of harm or disability discrimination. Relevant discovery in this case includes facts related to the isolation of children detained in all 21-detention centers "because [t]o

establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1064 n. 7 (11th Cir. 2013); *see also Parsons v. Ryan*, 289 F.R.D. 513, 521 (D. Ariz. 2013) ("A policy, practice, or custom may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant officials are not reprimanded.")

This discovery is also relevant to Plaintiffs' class claims. Discovery relevant to certification and claims of the class, include, for example, policies, practices, and data related to the number and experiences of children, including those in the disability subclass, that are subject to a substantial risk of serious harm in confinement across DJJ's system. *See* Ex. 2, RFP Nos. 17-26, 28-29, 48, 50-52, 63-64, 73-76, 115-120, 122-24, 127-36, 139-41, 148-50 to Marstiller and RFP No. 1, 4-7 to DJJ. Plaintiffs are entitled to this information to support their class claims, including commonality and typicality. Fed. R. Civ. P. 23(a). *See Harvard*, 2020 WL 701990, at n.4 (finding class-based discovery is appropriate for plaintiffs to show numerosity, commonality, and typicality of the proposed class); *see also Sliwa v. Bright House Networks, LLC*, No. 216CV235FTM29MRM, 2018 WL 1183350, at *3 (M.D. Fla. Feb. 14, 2018) (discovery related to class certification elements are relevant and proportional to the needs of the case). Defendants cannot improperly withhold this relevant discovery.

**B.**     **Defendants Have Failed to Conduct Reasonable Searches for Responsive and Relevant Information**

The vast majority of both Defendants' Responses to the First RFPs are deficient because Defendants have not followed basic discovery rules to search for responsive information in their possession, custody, and control. Fed. R. Civ. P. 34(a)(1)(A). This includes a search of all sources reasonably likely to contain responsive information such as available databases, computer file or cloud storage systems, and non-electronically stored information. *See Kisz v. Unitrin Direct Prop. & Cas. Co.*, No. 8:10-CV-1773-T-27EAJ, 2011 WL 13302420, at *2 (M.D. Fla. Aug. 3, 2011). Defendants must either produce responsive records to a request, or, if none exist, describe their efforts to locate responsive records. *Potts v. Ford Motor Co.*, Case No. 4:04CV74-SPM/AK, 2005 WL 8163080, at *3 (N.D. Fla. May 26, 2005). Defendants have not done so.

Defendants should have searched DJJ's data systems (JJIS and FMS), detention-facility and headquarters' K-drives, an online SharePoint system, and DJJ's Central Communications Center and Office of the Inspector General systems. Plaintiffs' many examples below demonstrate how this was never done or, to the extent it was, the search was deficient and inadequate.

They did not produce data (in report form or otherwise) that identifies youth who had a JJIS system alert for pregnancy, mental illness, suicide or self-harm risk, or disability from January 1, 2014, to the present. *See* Ex. 2, RFP Nos. 99,

106, and 108 to Marstiller. Defendants stated that they would search for, at a minimum, youth with disabilities identified in JJIS, but did not. *Id.*, RFP No.  99 to Marstiller and No. 5 to DJJ.

In at least 2017 and 2018, Defendants had a workgroup to study and reduce the use of confinement in detention through participation in a grant with the Council of Juvenile Correctional Administrators. *See* Ex. 3 at MARST 10771; *see also* Ex. 2, RFP Nos. 33, 34, 54, and 90-92 to Marstiller. Defendants produced only six documents about this project and no emails. This production appears deficient for a project that involved headquarters, regional, and detention-level staff over at least a two-year period.

Defendants failed to adequately search for and produce all documents related to any facility audit. *Id.*, RFP Nos. 32, 34-39 to Marstiller. Plaintiffs know this because, for example, through a pre-suit public records request, they obtained more documents than produced concerning an audit of the Duval Regional Center by the Casey Foundation's Juvenile Detention Alternatives Initiative. *See* Ex. 1, ¶ 6. Plaintiffs know that there were workplans, draft audits, and communications among the audit team and DJJ related to this audit. None of that information was produced. Documents related to audits of other detention centers also appear to be missing or incomplete.

After months of persistence by Plaintiffs, Defendants finally produced some documents about changes made to DJJ's Behavior Management System (BMS). However, the documents produced show that Defendants have not produced all responsive information such as behavior management guidelines at the state or facility levels; studies of confinement data by a contractor; audits or review of the use of confinement and the modified BMS at detention centers by the contractor and DJJ; training materials about changes to the BMS; and all drafts and emails related to these changes. *See* Ex. 2, RFP Nos. 22, 90-92, 95, 98, 101, 103, 105, 173 to Marstiller and No. 21 to DJJ. From the documents produced, this project seems to possibly have started around 2018 and is ongoing. Defendants' limited email production related to these RFPs is also deficient given the scope of this project in terms of the number of DJJ staff involved at the headquarters and facility-levels and the lack of any documents explaining the inception of this project by DJJ leadership.

Some of the documents about the BMS changes reference studies of confinement data, findings from those studies, a "facility wide assessment," many trainings, communications with staff, a Facility-Wide Positive Intervention and Supports System, facility meeting minutes uploaded to SharePoint, on-site evaluations at several detention centers, and supervision for trained Registered Behavior Technicians and statewide Behavior Specialists conducted by consultants

with Adapt & Transform Behavior, LLC "with input and feedback from DJJ leadership." *See*, *e.g.*,  Ex. 3, MARST 84904-06; MARST 10691-92; and MARST 84772. Much of this information was not produced. From the limited documents produced, communications are missing between DJJ staff at each facility who were trained on the new system, between the Superintendents and the consultant about the changes to the BMS, how these changes were communicated to staff by DJJ headquarters, regional staff, or Superintendents.

Defendants have failed to search for and produce minutes from monthly meetings of each facilities' BMS Leadership Teams. *See* Ex. 3,  MARST 83142 (Facility Operating Procedure 3.02 for facility Behavior Management Systems stating that "each facility will develop and maintain a BMS Leadership Team . . . of administration, supervisors, education and mental health staff. They will discuss the effectiveness of the BMS, training and proficiency for staff, Behavior Intensive Youth and any upcoming events. Minutes from these monthly meetings will be uploaded into SharePoint.").

Defendants have also failed to search for and produce information related to another behavior management program called Stop, Orient, and Self-Check/S.O.S., other than a poster. There is no information produced about: the development of the program; communications between or to/from headquarters staff about the program and its implementation; meeting minutes involving DJJ leadership or staff

about this program; training related to this program; or any evaluations or input from DJJ staff about the program.

Plaintiffs have repeatedly asked Defendants to search for other requested relevant documents, including facility level plans: Suicide Prevention Plans, Crisis Intervention Plans, and Mental Health and Substance Abuse Emergency Care Plans. *See* Ex. 3, MARST 9529. Each detention facility also has a multi-disciplinary review process for each suicide attempt or serious self-inflicted injury. *Id.*, MARST 9533. These documents (including any related emails) have never been produced. These documents relate to RFP Nos. 51, 77, 102, 115, 118, 131, 140-141, and 143 to Defendant Marstiller which are relevant to Plaintiffs' claims and allegations about the high risk of suicide for children subject to confinement. ECF No. 2, ¶¶ 5, 67, 70.

Defendants produced documents that clearly show they study DJJ's confinement data. *See* Ex. 3, MARST 10757. Where are documents related to these studies, including the data? None of this information has been produced.

Plaintiffs requested youth grievances or complaints (e.g., made by parents/guardians, attorneys, or advocates) related to the use of isolation; these are highly relevant to Plaintiffs' claims. *See* Ex. 2, RFP Nos. 148-153 to Marstiller and No. 7 to DJJ. Defendants objected based on proportionality. Their objection lacks credibility because they have never attempted to search for the documents so

24

cannot substantiate, for example, that the number is too great or that producing them is too expensive to outweigh their relevance.

Defendants have never searched for data or reports about the use of secure observation (i.e., isolation used for youth at risk for suicide, including while they are in confinement for misbehavior). *See* Ex. 2, RFP Nos. 146-147 to Marstiller. Defendants' response included that Plaintiffs could inspect an unspecified logbook at the Duval and Volusia detention centers, their administrative rules about secure observation, and a document from a detention facility staff briefing that mentions:

> Please remember that if a youth is in a room and then ties something around their neck or does some other suicidal gesture…you MUST immediately stand at their door as they are now on Secure Observation. Mental Health should be called for further discussion.

*See* Ex. 3, MARST 10709. In a statewide juvenile detention system involving 21 facilities and approximately 14,000 children in custody each year, Defendants' objections and scant response lacks credibility that there is no other ESI (including emails) related to the use of this program. Their deficient searches seem to be the problem.

In addition, during January facility inspections, Plaintiffs' counsel noted that there were many documents which can be considered "policies" concerning DJJ's BMS, mental health, use of confinement, and concerning programs, services, and activities posted in detention facilities. These are not included in Defendants' document production to date. Defendants produced some drafts of behavior

consequences charts, but these are not the versions posted at facilities. Defendants' obligation to conduct reasonable and adequate searches for responsive information from available sources cannot be governed by whether Plaintiffs' counsel lucked out to find out that a responsive document exists.

Defendants have had many staff discussions about the use of confinement, but produced very few documents. In a regional directors meeting on January 14, 2020, there was a discussion about the "confinement suit." *See* Ex. 3, MARST 10795-10796. If Defendants assert privilege, they must still identify the documents in a privilege log. In a regional directors meeting on October 3, 2019, staff reviewed a "behavior management project update spreadsheet." *Id.*, MARST 10810. In an August 23, 2016, regional directors meeting, "confinement info" was reviewed and discussed. *Id.*, MARST 10818. On February 22, 2019, a regional director's meeting reviewed "a write up on confinement." *Id.*, MARST 10821. On August 6, 2019, staff discussed a "report" about confinements over 48-hours and modifying the report. *Id.*, MARST 10834. In May 2019, at a superintendents training, there was a breakout group to discuss "confinement." *Id.*, MARST 10875. Where is the information used by any DJJ staff to prepare for these meetings, the data and reports were reviewed, the meeting notes, and any communications through email or memos related to these meetings? If Defendants assert any

privilege for these documents, they must still identify the documents in a privilege log.

There are many more examples about Defendants' lack of, or insufficient, searches for responsive information. The Federal Rules of Civil Procedure require Defendants to do adequate and reasonable searches of all available sources of information in response to RFPs. They did not. The Court should order them to do so.

**C.  Defendants' Proportionality and Burden Objections Lack Merit and Should be Overruled**

Defendants assert improper and meritless objections to most of the RFPs based on proportionality and undue burden. *See* Ex. 2. Parties may obtain any non-privileged discovery that is relevant, meaning "it has any tendency to make the existence of any fact or consequence more or less probable than it would be without the evidence." *Sliwa v. Bright House Networks*, *LLC*, No. 216CV235FTM29MRM, 2018 WL 1183350, at *2 (M.D. Fla. Feb. 14, 2018) (citations omitted).

Discovery must also be proportional "to the needs of the case." Fed. R. Civ. P. 26(b)(1). To assess proportionality of a discovery request, the court weighs factors including: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

The parties' disputes about proportionality are only limited to Defendants' alleged "burden" to search for and produce the requested information, the lack of Defendants' proof of such a burden, and whether the burden or expense outweighs the likely benefit of the discovery. Defendants can show none.

### 1.   Defendants Must Search for and Produce Documents and ESI from January 1, 2016, to the Present[9]

Defendants object to producing documents and ESI (including email) from January 1, 2014, to the present, based on proportionality and a vague generalized explained "burden." Defendants' current position is that they will search only for ESI (including email) from the current DJJ Secretary and Assistant Secretary of Detention using the term "confinement" and from January 1, 2016, to the present. As to custodians, Plaintiffs seek the production of ESI from custodians that include select positions in headquarters, all regional directors, and all facility Superintendents. These individuals are involved in all aspects of policy creation and implementation related to confinement. They investigate serious incidents such as those involving self-harm or suicide. Defendants have not established there is a burden or that any such burden outweighs the likely benefit of this discovery.

---

[9] Plaintiffs originally proposed a five-year look back to January 1, 2014, when this case was filed in 2019. Plaintiffs agree to use January 1, 2016, to the present for ESI and document searches, but only if Defendants actually search to date. There is only one targeted RFP that seeks information outside this time period. *See* Ex. 2, RFP No. 157 to Marstiller.

As to email, Defendants asserted a general burden after only conducting limited and incomplete email "hit" reports to identify responsive emails using the term "confinement." They have never produced a similar report for ESI searches in their K-drives or SharePoint systems. After months of discussing these searches, Defendants asserted, without the required specificity, that searching the repositories for all custodians that Plaintiffs requested would be an "incredibly large burden" and would "drain the agency." Defendants have not provided Plaintiffs with any specific required information regarding the procedure, time, or expense of compiling this information so that Plaintiffs may properly assess this objection. *See Lesti v. Wells Fargo Bank NA*, No. 211CV695FTM29DNF, 2013 WL 12358008, at *5 (M.D. Fla. July 30, 2013) (party must establish an undue burden through specifics, such as affidavits, regarding the procedure, time, or expense of compiling this information so that the objection may be assessed). They have failed to establish or prove burden. Even if they did, this fact would not of itself excuse compliance with a discovery request.

Defendants have also failed to establish, through evidence, how the burden or expense of this discovery outweighs the likely benefit. *Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008). The discovery at issue is highly relevant to Plaintiffs' claims that Defendants' policy and practice of using solitary confinement, repeatedly for the same child, subjects them to deprivations

29

of basic human needs and poses a substantial risk of serious harm across DJJ's

statewide detention system, this policy and practice lacks legitimate penological

purpose, and discriminates against children with disabilities. *See G.H.*, 2019 WL

6694738, at *5-8; *see also* ECF No. 22 at 8-9. Defendants must produce relevant

information about how their statewide solitary confinement policy and practice is

implemented (or not) at DJJ's respective secure detention facilities. *See* Ex. 2, RFP

Nos. 54, 79-81, 83, 92, 100, 102-103, 114, 121, 126, 137-138, 144-145, 158, 173

to Marstiller and No. 1-2, 5-8 to DJJ; *see also* ECF No. 22 at 8; *Harvard*, 2020 WL

701990, at *3-5 (finding requests for staffing assignments, institution specific, and

inmate specific requests related to how isolation policy and practice is

implemented are relevant to Eighth Amendment and ADA claims are discoverable

and not overbroad, disproportionate to the case, or burdensome). Plaintiffs' RFPs

also seek information that is calculated to lead to evidence that may show

Defendants' deliberate indifference to a substantial risk of serious harm. *See* Ex. 2,

RFP Nos. 34, 39, 77-79, 89-95, 97-114, 121, 143-147, 151-153, 155-157, 173 to

Marstiller; *see also Harvard*, 2020 WL 701990, at *4.

Defendants' improper objections about proportionality also impermissibly

restrict discovery regarding Plaintiffs' disability discrimination claims. Plaintiffs

have alleged a policy and practice of disability discrimination. *G.H.*, 2019 WL

6694738, at *7-8. The nature of Plaintiffs' disability rights claims requires them to

establish a systemic and widespread policy and practice of statutory violations and how the policy was implemented over time at secure detention facilities. *See*, *e.g.*, *Harvard*, 2020 WL 701990, at *5. These RFPs are relevant and proportional to this proof. *See* Ex. 2, RFP Nos. 99 to Marstiller and 1-7 to DJJ.

As to the requested time period, Plaintiffs' request for discovery dating back five years from the filing of Plaintiffs' Complaint (i.e., January 1, 2014, to present), is calculated to lead to evidence that may show Defendants' deliberate indifference, or lack thereof. *Harvard*, 2020 WL 701990, at *4. The timeframe for Plaintiffs' discovery requests is not arbitrary.

In addition to their policies and practices, Plaintiffs' RFPs Nos. 32-34, 89-92, and 94-96 to Defendant Marstiller seek information related to Defendants' study, discussions, evaluations, and reforms related to their use of confinement. Through public sources, limited discovery here, and previous litigation against DJJ, Plaintiffs initially proposed January 1, 2014, to the present as the relevant discovery time period. Although Plaintiffs' dispute Defendants' burden objections, they have revised the period to be January 1, 2016, to the present because, *inter alia*, they are aware that Defendants studied and made conscious decisions to change, or not change, policies and practices about the use of isolation through work with consultants, changes to their administrative code, and modifications to policies related to confinement. This is precisely the type of discovery that may

provide evidence showing that unconstitutional isolation was "longstanding, pervasive, [and] well-documented" and that prison officials "had been exposed to information concerning the risk, and thus must have known about it." *Harvard*, 2020 WL 701990, at *4 (citing *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). This discovery may also lead to evidence showing that Defendants disregarded the risk of serious harm by engaging in conduct that is more than gross negligence after having subjective knowledge of the risk. *Id.* (citing *Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010)).

Evidence of Defendants' past conduct is especially important given the possible defense of mootness in this action based on Defendants' changes to their policies and practices that have already occurred during the litigation such as changes to their confinement policy and BMS. Assuming Defendants intend to claim that the violations which Plaintiffs allege are moot because they have been remedied before the time that this action is finally adjudicated, under the doctrine of voluntary cessation, a "longstanding practice" cuts against a finding of mootness. *See*, *e.g.*, *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1185 (11th Cir. 2007). If the illegal practices cease, evidence from years before Plaintiffs filed suit will be necessary to challenge Defendants' mootness defense. Plaintiffs should be permitted to discover this information. *See* Ex. 2, Nos. 17-31, 41-42, 44-

51, 54, 61, 63-65, 67, 72, 76-80, 84, 89-91, 96-97, 99-112, 114-124, 127-131, 136, 140-143, and 156 to Marstiller.

Proof establishing these allegations or disproving Defendants' defenses requires discovery from more than just two custodians at the top of the agency from three years prior to the Complaint. As discovery in this case demonstrates, Defendants were discussing, analyzing, studying, training, and changing their practices related to confinement at statewide and facility levels for years. They communicated among all levels of the agency to do so. Plaintiffs' requests for ESI involving all involved DJJ management staff are proportionate to the needs of the case to capture this relevant information.

For the same reasons, Defendants must produce documents, apart from ESI, that may include facility-level documents such as log books, notes, confinement visual observation reports, and similar information that is not electronically stored. *See*, *e.g.*, Ex. 2, RFP Nos. 30-31, 82, 147 to Marstiller. For the same reasons that ESI is relevant and proportionate to the needs of this case, so is other responsive information that is not electronically stored. To address any "burden" as to logbooks, Plaintiffs have offered to inspect them, but Defendants have not agreed that these will be produced.

> **2.**     **Defendants Must Search for and Produce Relevant Discovery From Detention Facilities Other Than Duval or Volusia**

Defendants assert the same improper and meritless proportionality, burden, and expense objections to searching for or producing documents and ESI from any detention center other than Duval or Volusia.[10] *See* Ex. 2, RFP Nos. 17-26, 28-29, 31, 34-37, 40-42, 48, 50-57, 59-61, 63-64, 73-74, 76-77, 79-82, 89-91, 96, 100, 102-103, 105-108, 110-114, 121, 132-140, 145-146, 148, 151-156, 158, 173, 176 to Marstiller and Nos. 1-7 to DJJ. This argument is waived because it was not timely asserted and Defendants produced documents that cover all facilities, including confinement data.[11] Defendants even continued to produce this information after trying to untimely assert in a supplemental response that it was not relevant.

Even if it were not waived, it is incorrect. Defendants' solitary confinement policy and practice is not limited to two detention centers. Plaintiffs' claims are on behalf of a putative class of over 4,000 children at all 21 DJJ-operated juvenile detention centers. *See G.H. v. Marstiller*, 19cv431-MW/CAS, 2019 WL 6694738, at *1 (N.D. Fla. Dec. 6, 2019). Their argument should be rejected.

---

[10]   Defendants also informed Plaintiffs on March 5, 2021, that they object to further facility inspections on this basis.

[11]   Defendants initial RFP responses did not include any objections. No extension or consent was granted for Defendants to include new objections not made in their original responses.On May 1, 2020, Defendants served "supplemental" RFP responses with objections. "As a general rule, when a party fails to timely object to interrogatories, production requests, or other discovery efforts, the objections are deemed waived." *Pitts*, 2008 WL 2229524, at *2 (citation omitted).

**IV.    Defendants Must Supplement Their Discovery Responses**

Defendants argue that they have no duty to supplement discovery beyond the date of December 27, 2019 when Plaintiffs First RFPs were served, including their production of highly relevant information such as the statewide confinement data and reports or investigations of serious incidents at facilities from the CCC and OIG. *See* Ex. 2, RFP Nos. 77, 99-101, 105, 110-112, 144 to Marstiller. ESI, specifically, email, is also highly relevant to what actions Defendants took, or decided not to take, in response to this litigation. This supplemental discovery is relevant to proof of deliberate indifference, class certification, disability discrimination, any remedial measures taken by Defendants, and mootness. A party's obligation to supplement or correct its response includes responsive discovery that post-dates their production. *See In re 3M Combat Arms Earplug Products Liability Litigation*, Case No. 3:19-md-2885, 2020 WL 6531421, at *3-4 (N.D. Fla. Nov. 5, 2020). Defendants should be required to supplement the statewide confinement data, CCC and OIG reports, email and ESI that is relevant to the claims and defenses in this action.

**V.    The Court Should Award Attorneys' Fees and Costs for This Motion Because Defendants' Delay and Obstruction of Discovery is Not Substantially Justified**

Some delay in searching for or producing discovery is reasonable in complex statewide system reform litigation involving a large state agency.

Defendants' objections, refusal to search for responsive information, and continual delays through shifting positions, are not. Plaintiffs spent months in discussions to reach an agreement only to have Defendants say they were no longer willing to do what was agreed upon. This has wasted significant time and expense.

Under Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure, when a motion to compel is granted, the Court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both, to pay the movant's expenses incurred in making the motion, including attorney's fees if the opposing party's nondisclosure, response, or objection was not substantially justified. In this instance, an award of expenses is mandatory. *Se. Asset Recovery Fund GA-4, LLC v. Windolf*, No. 5:13cv222, 2016 WL 7655801, at *1 (N.D. Fla. Apr. 21, 2016) (citation omitted). On this basis, the Court should grant Plaintiffs' request for attorney's fees and costs for bringing this motion.

## CONCLUSION

Based on the foregoing reasons, the Court should reject Defendants' attempt to obstruct Plaintiffs' access to relevant and discoverable information and issue an Order requiring them to do the following with respect to the First RFPs: (1) search all available repositories and custodians for relevant and responsive documents and Electronically Stored Information (ESI), including email; (2) search for and

produce all responsive documents that are defined as "policies"; (3) search for and produce all relevant and responsive documents and ESI from January 1, 2016, to the present, and (at a minimum) using Plaintiffs' proposed search terms to do so; and (4) supplement discovery. The Court should also set a deadline for production within 30 days and award reasonable attorney's fees and costs because Defendants' discovery objections, shifting positions, and delays are not substantially justified.

<h2 style="text-align:center"><u>Certificate of Attorney Conference</u></h2>

Pursuant to N.D. Fla. Local Rule 7.1(B) and (C), Plaintiffs' counsel has conferred with counsel for Defendants by phone and correspondence about this matter. Defendants oppose this motion.

<h2 style="text-align:center"><u>Certificate of Word Limit</u></h2>

Pursuant to N.D. Local Rule 7.1(F), the undersigned counsel hereby certify that this motion contains 7,929 words.

Dated: Dated: March 8, 2021          Respectfully submitted,

By: _____ s/ Andrea Costello _____
Andrea Costello
Fla. Bar No. 0532991
Christopher M. Jones
Fla. Bar No. 994642
Jennifer Painter
Fla. Bar No. 110966
Aimee Lim
Fla Bar No. 116209
Rachel Ortiz
Fla. Bar No. 0083842
Florida Legal Services

122 E. Colonial Drive, Suite 100
Orlando, FL 32801
Telephone: (407) 801-0332 (direct)
andrea@floridalegal.org
christopher@floridalegal.org
jennifer.painter@floridalegal.org
aimee.lim@floridalegal.org
rachel.ortiz@floridalegal.org

Kelly Knapp
Fla. Bar No. 1011018
Leonard J. Laurenceau
Fla. Bar No. 106987
Southern Poverty Law Center
4770 Biscayne Blvd., Suite 760
Miami, FL 33137
Telephone: (786) 347-2056
kelly.knapp@splcenter.org
leo.laurenceau@splcenter.org

Dante P. Trevisani
Fla. Bar No. 72912
Laura A. Ferro
Fla. Bar No. 1015841
Sam Thypin-Bermeo
Fla. Bar No. 1019777
Marcel A. Lilavois, Jr.
Fla. Bar No. 1016175
Kara Wallis (pro hac vice)
Florida Justice Institute, Inc.
100 S.E. 2nd St., Ste 3750
Miami, FL 33131
Telephone: (305) 358-2081
dtrevisani@floridajusticeinstitute.org
lferro@floridajusticeinstitute.org
sthypin-bermeo@floridajusticeinstitute.org
Mlilavois@floridajusticeinstitute.org
kwallis@floridajusticeinstitute.org

**Attorneys for Plaintiffs**