**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

_____

G.H., *et al*.,

           Plaintiffs,

                           Case No.: 4:19-cv-431-MW/MJF

v.

JOSEFINA TAMAYO, *et al*.,

           Defendants.

_____

## PLAINTIFF G.H.'S SECOND AMENDED AND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT MARSTILLER'S SECOND SET OF INTERROGATORIES TO PLAINTIFF, G.H., a minor, by <u>and through his parent and legal guardian, GREGORY HENRY</u>

Pursuant to Fed. R. Civ. P. 26, 33, and N.D. Loc. R. 26.1, Plaintiff G.H., by and through his undersigned counsel, hereby gives notice of service of his second amended and supplemental responses and objections to Defendant Simone Marstiller's Second Set of Interrogatories to Plaintiff, G.H., dated April 21, 2020.

Dated: March 8, 2021           Respectfully submitted,

                        By: ____ s/ Andrea Costello ____
                        Andrea Costello
                        Fla. Bar No. 0532991
                        Christopher M. Jones
                        Fla. Bar No. 994642
                        Jennifer Painter
                        Fla. Bar No. 110966

**CONFIDENTIAL**

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

Aimee Lim
Fla Bar No. 116209
Rachel Ortiz
Fla. Bar No. 0083842
Florida Legal Services
122 E. Colonial Drive, Suite 100
Orlando, FL 32801
Telephone: (407) 801-0332 (direct)
andrea@floridalegal.org
christopher@floridalegal.org
jennifer.painter@floridalegal.org
aimee.lim@floridalegal.org
rachel.ortiz@floridalegal.org

Kelly Knapp
Fla. Bar No. 1011018
Leonard J. Laurenceau
Fla. Bar No. 106987
Southern Poverty Law Center
4770 Biscayne Blvd., Suite 760
Miami, FL 33137
Telephone: (786) 347-2056
kelly.knapp@splcenter.org
leo.laurenceau@splcenter.org

Dante P. Trevisani
Fla. Bar No. 72912
Laura A. Ferro
Fla. Bar No. 1015841
Sam Thypin-Bermeo
Fla. Bar No. 1019777
Marcel A. Lilavois, Jr.
Fla. Bar No. 1016175
Florida Justice Institute, Inc.
100 S.E. 2nd St., Ste 3750
Miami, FL 33131
Telephone: (305) 358-2081
dtrevisani@floridajusticeinstitute.org
lferro@floridajusticeinstitute.org
sthypin-bermeo@floridajusticeinstitute.org

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

Mlilavois@floridajusticeinstitute.org

**Attorneys for Plaintiffs**

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by email on the 8th day of March, 2021 on all counsel or parties of record on the Service List below.

___s/ Andrea Costello___
Attorney for Plaintiffs

## SERVICE LIST

JONATHAN B. TROHN
j.trohn@cttalaw.com
j.kirkland@cttalaw.com
k.cassata@cttalaw.com
s.strickland@cttalaw.com

HANK B. CAMPBELL
h.campbell@cttalaw.com
r.roop@cttalaw.com
p.lizotte@cttalaw.com

ROBERT ARANDA
r.aranda@cttalaw.com
p.roop@cttalaw.com

JOHN MARC TAMAYO
j.tamayo@cttalaw.com
m.cunningham@cttalaw.com

ELLIOTT V. MITCHELL
e.mitchell@cttalaw.com

BARBARA W. DAVIS
b.davis@cttalaw.com
u.crews@cttalaw.com

JENNIFER VASQUEZ
j.vasquez@cttalaw.com

CAMPBELL TROHN TAMAYO &
ARANDA
1701 South Florida Avenue
Lakeland, Florida 33803
(863) 686-0043 (phone)
(863) 616-1445 (facsimile)

**Attorneys for Defendants**

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

## RESPONSES TO INTERROGATORIES

26.    State the name and address of each person who participated in answering these interrogatories, and if applicable, the person's official position or relationship with the party to whom the interrogatives are directed.

**RESPONSE:**

Plaintiff G.H. answered these Interrogatories. The objections to these Interrogatories are made by Plaintiff G.H.'s attorneys.


27.    Do you contend that there is a "national trend" to eliminate or reduce confinement, as alleged in paragraph 6 of the Complaint?

**RESPONSE:**

Plaintiff objects, in part, to the extent that this request seeks an expert opinion and information that is protected as attorney work product. This request is also vague because Defendant does not define "confinement" which is subject to different statutory definitions, policies, and practices, in various states and agencies throughout the country. To the extent not objected to, Plaintiff responds, in part, yes.

**AMENDED RESPONSE**:

Plaintiff objects, in part, to the extent that this request seeks an expert opinion; Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure.

Since Defendants claim that they are unable to tell what the answer to this Interrogatory is, Plaintiff restates that the answer is "yes."

Plaintiff has answered this Interrogatory to the best of his ability based on the information known to him through discovery at this time. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time.

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

**SECOND AMENDED/SUPPLEMENTAL RESPONSE:**

Yes.

A.     Identify all states or agencies that have completely eliminated the use of confinement in secure detention centers for juveniles.

**RESPONSE:**

Plaintiff objects, in part, to the extent that this request seeks an expert opinion as discovery is only in the early stages and Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. Plaintiff further objects, in part, to the extent that such materials are protected by the attorney work product doctrine or protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure. Plaintiff also objects, in part, because this request is vague as Defendant does not define "confinement" or "secure detention centers" which are subject to various statutory definitions, policies, and practices, in various states and agencies throughout the country. This request is also overbroad because it lacks any responsive time period.

**AMENDED RESPONSE**:

Plaintiff objects, in part, to the extent that such materials are protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure and to the extent that this request seeks an expert opinion. Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time.

Within the narrowed scope of these objections and relying on "solitary confinement" and "secure detention centers" as used in the Complaint, Plaintiff identifies the following: State of Ohio; State of New Mexico; State of Massachusetts and Massachusetts Department of Youth Services; State of Nebraska; Washington, D.C. Department of Youth Rehabilitative Services; Sacramento County Youth Detention Facility; and the State of Washington. Plaintiff has answered this Interrogatory to the best of his ability based on the information known to him at this time.

**SECOND AMENDED/SUPPLEMENTAL RESPONSE:**

Relying on the definitions of "solitary confinement" and "secure detention centers" as used in the Complaint, Plaintiff identifies the following: State of Ohio; State of New Mexico; State of Massachusetts and Massachusetts Department of Youth Services; State of Nebraska; Washington, D.C. Department of Youth Rehabilitative Services; Sacramento County Youth Detention Facility; and the State of Washington. Plaintiff has answered this Interrogatory to the best of her ability based on the information known to her at this time. Plaintiff anticipates providing an expert opinion to support this allegation and will supplement the response at that time.

B.     Are the states identified in A the same states as the 29 states alleged in paragraph 77 of your Complaint to have "prohibited juvenile detention facilities from using disciplinary isolation, or any isolation for juveniles" If not, provide the list of 29 states referenced in paragraph 77 of your Complaint.

**RESPONSE:**

Plaintiff objects, in part, to the extent that this request seeks an expert opinion as discovery is only in the early stages and Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. Plaintiff further objects, in part, to the extent that such materials are protected by the attorney work product doctrine or protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure. This request is vague because it relies on and references Interrogatory No. 27A in which Defendant does not define "confinement" or "secure detention centers" which are subject to various statutory definitions, policies, and practices, in various states and agencies throughout the country. This request is also overbroad because it lacks any responsive time limitation or period.

To the extent not objected to, Plaintiff responds, in part, that the allegations in paragraph 77 of the Complaint (ECF 2) that "[a]t least 29 states have prohibited juvenile detention facilities from using disciplinary isolation, or any isolation for juveniles[]" references jurisdictions that are discussed in the 51 Jurisdiction Survey of Juvenile Solitary Confinement Rules in Juvenile Justice Systems (Lowenstein Survey) which is cited in paragraph 77 of the Complaint and available at:

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

https://www.lowenstein.com/media/2825/51-jurisdiction-survey-of-juvenile-solitary-confinement-rules-72616.pdf. The Lowenstein Survey describes certain, but not all, states and agencies that have limited or eliminated the use of solitary confinement for juveniles where juveniles are serving a custodial sentence or being held for a significant amount of time awaiting adjudication and does not contain exhaustive information about all juvenile detention facilities that have implemented measures to eliminate its use. The Lowenstein Survey also contains references and definitions as to the types of solitary confinement which may differ from what Defendant is requesting in this Interrogatory; since no definitions have been provided, Plaintiff has answered this to the best of her ability. Since the Lowenstein Survey was completed, there has been litigation or legislative developments concerning the use of solitary confinement for juveniles which Plaintiffs' experts will address in their reports. In addition, the states of New York, New Jersey, North Carolina, Nebraska, and New Mexico have banned solitary confinement for juveniles in their state prison systems with each source for that information referenced in footnote 25 of the Complaint.

**AMENDED RESPONSE**:

Plaintiff objects, in part, to the extent that such materials are protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure and to the extent that this request seeks an expert opinion. Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time.

Within the narrowed scope of these objections, Plaintiff responds: some, but not all. The 29 states referenced in paragraph 77 of the Complaint are: Alaska, Arizona, Arkansas, Colorado, Connecticut, Florida, Hawaii, Idaho, Illinois, Maine, Maryland, Massachusetts, Missouri, Montana, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Utah, Vermont, and Washington, D.C. While the Lowenstein Survey characterizes Florida as having prohibited the use of punitive confinement, Plaintiff's Complaint alleges that Defendant DJJ's use of behavioral confinement in secure detention is punitive in practice and poses an unconstitutional risk of harm to children.

8

Plaintiff has answered this Interrogatory to the best of his ability based on the information known to him at this time. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time.

**SECOND AMENDED/SUPPLEMENTAL RESPONSE:**

Some, but not all. The 29 states referenced in paragraph 77 of the Complaint are: Alaska, Arizona, Arkansas, Colorado, Connecticut, Florida, Hawaii, Idaho, Illinois, Maine, Maryland, Massachusetts, Missouri, Montana, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Utah, Vermont, and Washington, D.C. While the Lowenstein Survey characterizes Florida as having prohibited the use of punitive confinement, Plaintiff's Complaint alleges that Defendant DJJ's use of behavioral confinement in secure detention is punitive in practice and poses an unconstitutional risk of harm to children.

Plaintiff has answered this Interrogatory to the best of his ability based on the information known to him at this time. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time.


C.      Of the states or agencies that have completely eliminated the use of confinement or isolation in secure detention centers, identify those that continue to use mechanical restraints or other forms of physical control.

**RESPONSE:**

Plaintiff objects, in part, to the extent that this request seeks an expert opinion as discovery is only in the early stages and Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. Plaintiff further objects, in part, to the extent that such materials are protected by the attorney work product doctrine or protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure. This request is also vague because Defendant has not defined "confinement," "secure detention" or "mechanical restraints" or "other forms of physical control" which are subject to various interpretations, statutory definitions, policies, and practices,

in various states and agencies throughout the country. This request is also overbroad because it lacks any responsive time limitation or period.

**AMENDED RESPONSE**:

Plaintiff refers to the responses to Interrogatories Nos. 27(A) and (B). Plaintiff objects, in part, to the extent that such materials are protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure and to the extent that this request seeks an expert opinion. Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time.

Within the narrowed scope of these objections and relying on "solitary confinement" and "secure detention centers" as used in the Complaint, Plaintiff states that at this time he does not know whether and which states that have completely eliminated solitary confinement allow for the use of mechanical restraints.

**SECOND AMENDED/SUPPLEMENTAL RESPONSE:**

Relying on the definitions of "solitary confinement" and "secure detention centers" as used in the Complaint, Plaintiff states that at this time she does not know whether and which states that have completely eliminated solitary confinement and allow for the use of mechanical restraints. However, Plaintiff refers to the responses to Interrogatories Nos. 27(A) and (B). To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time.

D.     For those states or agencies that have not completely eliminated confinement or isolation, identify those states or agencies in the "national trend" that have reduced the duration of confinement to 24 hours or less.

**RESPONSE:**

Plaintiff objects, in part, to the extent that this request seeks an expert opinion as discovery is only in the early stages and Plaintiff will provide any

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. Plaintiff further objects, in part, to the extent that such materials are protected by the attorney work product doctrine or protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure. This request is also vague because Defendant has not defined "confinement" or "isolation" which are subject to various interpretations, statutory definitions, policies, and practices, in various states and agencies throughout the country. This request is also overbroad because it lacks any responsive time limitation or period.

**AMENDED RESPONSE:**

Plaintiff objects, in part, to the extent that such materials are protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure and to the extent that this request seeks an expert opinion. Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time.

Within the narrowed scope of these objections and relying on "solitary confinement" and "secure detention centers" as used in the Complaint, Plaintiff responds that these states do not permit the total time in a type of confinement to exceed 24 hours: Colorado, Delaware, Georgia, Hawaii, Illinois, Kentucky, Maine, Missouri, North Dakota, Oklahoma, Oregon, Pennsylvania, and South Carolina.

Plaintiff has answered this Interrogatory to the best of his ability based on the information known to him through discovery at this time.

**SECOND AMENDED/SUPPLEMENTAL RESPONSE:**

Relying on the definitions of "solitary confinement" and "secure detention centers" as used in the Complaint, Plaintiff responds that these states do not permit the total time in a type of confinement to exceed 24 hours: Colorado, Delaware, Georgia, Hawaii, Illinois, Kentucky, Maine, Missouri, North Dakota, Oklahoma, Oregon, Pennsylvania, and South Carolina.

Plaintiff has answered this Interrogatory to the best of his ability based on the information known to him through discovery at this time. Plaintiff anticipates

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

providing an expert opinion to support this allegation and will supplement the response at that time.

28.    Provide the factual basis for your contention in paragraph 67 of a correlation between suicide and confinement.

**RESPONSE:**

Plaintiff objects, in part, to the extent that this request seeks an expert opinion as discovery is only in the early stages and Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. Plaintiff further objects, in part, to the extent that such materials are protected by the attorney work product doctrine or protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure. To the extent that discovery is ongoing and this information is in Defendants' possession and control and has not yet been produced in discovery, Plaintiff will supplement this response as information becomes known through discovery.

To the extent not objected to, Plaintiff responds, in part, as follows: a national study by the Department of Justice's Office of Juvenile Justice and Delinquency Prevention found that half of the youth who committed suicide in juvenile facilities were in isolation at the time of their death. *See* Lindsay Hayes, Juvenile Suicide in Confinement, A National Survey, Office of Juvenile Justice Delinquency and Prevention, (2009), at vii., https://www.ncjrs.gov/pdffiles1/ojjdp/213691.pdf. This study further found that more than 60% of young people who committed suicide in detention while in confinement had a history of being held in isolation. This study further explains the incidence of mental illness, psychiatric disorders, mental health treatment needs, sexual abuse, self-injurious behavior, and other factors which relate to the correlation between juvenile suicide and the use of confinement.

The Council of Juvenile Correctional Administrators also recognizes the correlation between the use of confinement, solitary confinement, or isolation and juvenile suicide. *See* Toolkit: Reducing the Use of Isolation (March 2015). In 2012, the United States Attorney General's National Task Force on Children Exposed to Violence also discusses the increased vulnerability to suicide for children who are subject to solitary confinement. *See* Report of the Attorney General's National Task Force on Children Exposed to Violence, at 178 (Dec. 12,

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

2012), https://www.justice.gov/defendingchildhood/cev-rpt-full.pdf (last visited September 4, 2019). In a 2015 report, the United Nations Special Rapporteur on Torture also acknowledged the high risk of mental illness and higher rates of suicide and self-harm for juveniles in solitary confinement. *See* Interim Rep. of the Special Rapporteur on Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, U.N. Doc. A/66/268, at ¶ 77 (Aug. 5, 2011), http://solitaryconfinement.org/uploads/SpecRapTortureAug2011.pdf.

On December 1, 2011, the U.S. Department of Justice Civil Rights Division (DOJ) also sent the Department of Juvenile Justice (DJJ) Secretary and DJJ a findings letter following its investigation of the DJJ North Florida Youth Development Center, also discusses the risk of harm and potential for suicide when youth are subject to solitary confinement. *See* https://www.justice.gov/sites/default/files/crt/legacy/2011/12/02/dozier_findltr_12-1-11.pdf. This findings letter notes that the suicidal behaviors by youth in DJJ's custody at these facilities was disproportionately high when compared with the PbS field average and due to a lack of adequate documentation by staff, the numbers of such incidents may be higher than the DOJ was able to discern. (PbS refers to the Performance-based Standards for Youth Correction and Detention Facilities that was developed in 1995 by DOJ, Office of Justice Programs, Office of Juvenile Justice and Delinquency Prevention.)

Defendants have also studied the correlation between the use of solitary confinement and juvenile suicide. *See* documents previously produced at Bates Nos.: PLS0001130-PLS0001160.

**AMENDED RESPONSE:**

Plaintiff objects, in part, to the extent that such materials are protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure and to the extent that this request seeks an expert opinion. Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time.

Within the narrowed scope of these objections and relying on "solitary confinement" and "secure detention centers" as used in the Complaint, and interpreting "confinement" broadly, Plaintiff responds, in part, as follows: a

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

national study by the Department of Justice's Office of Juvenile Justice and
Delinquency Prevention found that half of the youth who committed suicide in
juvenile facilities were in isolation at the time of their death. *See* Lindsay Hayes,
Juvenile Suicide in Confinement, A National Survey, Office of Juvenile Justice
Delinquency and Prevention, (2009), at vii.,
https://www.ncjrs.gov/pdffiles1/ojjdp/213691.pdf. This study further found that
more than 60% of young people who committed suicide in detention while in
confinement had a history of being held in isolation. This study further explains the
incidence of mental illness, psychiatric disorders, mental health treatment needs,
sexual abuse, self-injurious behavior, and other factors which relate to the
correlation between juvenile suicide and the use of confinement.

        The Council of Juvenile Correctional Administrators also recognizes the
correlation between the use of confinement, solitary confinement, or isolation and
juvenile suicide. *See* Toolkit: Reducing the Use of Isolation (March 2015). In
2012, the United States Attorney General's National Task Force on Children
Exposed to Violence also discusses the increased vulnerability to suicide for
children who are subject to solitary confinement. *See* Report of the Attorney
General's National Task Force on Children Exposed to Violence, at 178 (Dec. 12,
2012), https://www.justice.gov/defendingchildhood/cev-rpt-full.pdf (last visited
September 4, 2019). In a 2015 report, the United Nations Special Rapporteur on
Torture also acknowledged the high risk of mental illness and higher rates of
suicide and self-harm for juveniles in solitary confinement. *See* Interim Rep. of the
Special Rapporteur on Torture and Other Cruel, Inhuman or Degrading Treatment
or Punishment, U.N. Doc. A/66/268, at ¶ 77 (Aug. 5, 2011),
http://solitaryconfinement.org/uploads/SpecRapTortureAug2011.pdf.

        On December 1, 2011, the U.S. Department of Justice Civil Rights Division
(DOJ) also sent the Department of Juvenile Justice (DJJ) Secretary and DJJ a
findings letter following its investigation of the DJJ North Florida Youth
Development Center, also discusses the risk of harm and potential for suicide when
youth are subject to solitary confinement. *See*
https://www.justice.gov/sites/default/files/crt/legacy/2011/12/02/dozier_findltr_12-
1-11.pdf. This findings letter notes that the suicidal behaviors by youth in DJJ's
custody at these facilities was disproportionately high when compared with the
PbS field average and due to a lack of adequate documentation by staff, the
numbers of such incidents may be higher than the DOJ was able to discern. (PbS
refers to the Performance-based Standards for Youth Correction and Detention
Facilities that was developed in 1995 by DOJ, Office of Justice Programs, Office
of Juvenile Justice and Delinquency Prevention.)

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

Defendants have also studied the correlation between the use of solitary confinement and juvenile suicide. *See* documents previously produced at Bates Nos.: PLS0001130-PLS0001160.

Plaintiff has answered this Interrogatory to the best of his ability based on the information known to him through discovery at this time. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time.

A.     Provide the factual basis for any correlation between any suicide  or self-harm and any confinement administered by these specific Defendants.

**RESPONSE:**

*See* response to Interrogatory No. 28.

**AMENDED RESPONSE:**

*See* response to Interrogatory No. 28. Plaintiff has answered this Interrogatory to the best of his ability based on the information known to him at this time. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time.

B.     Identify by name and address all individuals that attempted suicide or self- harm for which a reliable determination was made that the suicide or self-harm was a result of confinement in this Defendant's detention facility.

**RESPONSE:**

Plaintiff objects, in part, because this request is vague; the phrase "for which a reliable determination was made that the suicide or self-harm was a result of confinement" is vague as Plaintiff has no way to determine from this Interrogatory, for example, who made such a determination, about whom it was made, or any such person's qualifications to do so. The term "reliable" is also vague and subject to different interpretations. Plaintiff also objects because this request is overbroad because it lacks any time limitation. To the extent that discovery is ongoing and this information is in Defendants' possession and control and has not yet been

15

**Protected Health Information**

**Subject to HIPAA Qualified Protective Order**

produced in discovery, Plaintiff will supplement this response as information becomes known through discovery. Defendants have objected to and refused to produce responses to Plaintiffs' Requests for Production (RFPs) which seek documents, data, and electronically stored information concerning children that have engaged in attempts of self-harm or suicide in DJJ secure detention centers; therefore, Plaintiffs are unable to respond until Defendants' meritless objections are withdrawn and responsive information is provided. *See* Plaintiffs' letter to Defendants' counsel, dated May 1, 2020, concerning these objections and RFPs.

**AMENDED RESPONSE:**

Plaintiff is not aware of the name and address of all individuals that attempted suicide or self-harm in Defendant's secure detention facility.

During one of the periods when Defendants subjected G.H. to solitary confinement, the trauma that Plaintiff experienced caused him to wrap his pants around his neck to choke himself. Instead of providing a meaningful mental health intervention, DJJ's response was to send a detention staff person to open Plaintiff's door, take the pants from around Plaintiff's neck, briefly talk to him, and then leave. After the detention staff person left, Plaintiff wrapped his pants around his neck again to choke himself. Plaintiff got scared and stopped. DJJ never provided any mental health treatment to Plaintiff in response to this self-harming behavior. Plaintiff also refers to the following documents: Bates Nos. MARST000000000000053, MARST000000000000074-75, MARST000000000000082, MARST000000000000087, MARST000000000000091, MARST000000000000092-95, MARST000000000000150, MARST000000000000162, MARST000000000000180, MARST000000000000182-231.

Plaintiff has answered this Interrogatory to the best of his ability based on the information known to him at this time. Plaintiff has served discovery requests for information about suicide and self-harm in DJJ secure detention since January 1, 2014, but Defendant has not produced this information. Plaintiff will supplement this response, to the extent possible, following receipt and review of further discovery from Defendant.

**SECOND SUPPLEMENTAL RESPONSE**:

Based on the information available to Plaintiff through discovery at this time, Plaintiff supplements this response to refer to documents with Bates Nos.

Protected Health Information
Subject to HIPAA Qualified Protective Order

MARST80804 - 81669. Plaintiff cannot say, based on the discovery available at this time, that a "reliable determination was made that the suicide or self-harm was a result of confinement in this Defendant's detention facility," but identifies these documents as having information that may be responsive to this request.

C.      Provide the names and addresses of all mental health professionals that determined there was a correlation between any of the above described suicides or self-harm and the confinement utilized in Defendant's detention facility.

**RESPONSE:**

*See* responses to Interrogatories Nos. 28(A) and (B).

**AMENDED RESPONSE:**

*See* responses to Interrogatories Nos. 28(A) and 28(B).

**SECOND SUPPLEMENTAL RESPONSE:**

Based on the information available to Plaintiff through discovery at this time, Plaintiff supplements this response to refer to documents with Bates Nos. MARST80804 - 81669.

29.     Provide your factual basis for alleging that Defendants had subjective knowledge of a substantial risk of serious harm.

**RESPONSE:**

Plaintiff objects, in part, to the extent that this request is vague as to who had "subjective knowledge of a substantial risk of harm" and with regard to what specific factual issue or allegation in the Complaint. Plaintiff also objects, in part, because this request is overbroad because it lacks any time limitation. To the extent that discovery is ongoing and this information is in Defendants' possession and control and has not yet been produced in discovery, Plaintiff will supplement this response as information becomes known through discovery.

Protected Health Information
Subject to HIPAA Qualified Protective Order

To the extent not objected to, Plaintiff responds, in part, that Defendants have known of and disregarded a substantial risk of serious harm to Plaintiff's mental and physical health caused by their policy and practice of solitary confinement in DJJ secure detention centers. Defendant Marstiller has failed to stop subjecting children, including Plaintiff, to solitary confinement in detention despite knowing the risk of physical and psychological harm to children. Defendant Marstiller has been repeatedly warned about, but failed to eliminate the risks of harm to children, including G.H., from solitary confinement.

Additional facts which Plaintiffs are presently aware of that Defendants had subjective knowledge of the substantial risk of serious harm: for example, in 2011, a lawsuit was filed against the DJJ Secretary, *J.B., et al. v. Walters, et al.*, Case No. 11-83-RH-WCS (N.D. Fla.), where plaintiffs, a class of children with mental illness and developmental disabilities, challenged defendants' use of isolation in DJJ's North Florida Youth Development residential facility; in that case, the DJJ Secretary was informed that isolation is contraindicated for adolescents with developmental disabilities, mental illness, and self-harming behavior. The DJJ Secretary and DJJ also received a findings letter on December 1, 2011, from the U.S. Department of Justice Civil Rights Division (DOJ) following its investigation of the North Florida Youth Development Center which concluded that there were unconstitutional conditions of confinement that included Defendants' use of isolation. Defendants have also implemented different policies and policy changes in DJJ residential and non-residential programs concerning the use of solitary confinement.

Defendants also received a grievance from G.H. asking to not be subject to solitary confinement again because of the serious risk of harm from being put in confinement. Plaintiffs' counsel notified Defendants of the substantial risk of serious harm to children subject to solitary confinement pursuant to their policies and practices prior to the filing of this action.

Plaintiff's claims, on behalf of a putative class, under the Eighth and Fourteenth Amendments to the U.S. Constitution include that that Defendants subject him, and similarly situated children, to a substantial risk of serious harm by isolating them for days at a time, with no time limit, in locked cells without meaningful social interaction, environmental stimulation, outdoor recreation, schooling, or access to personal property, for minor misbehavior. For example, Defendants were aware of, but deliberately disregarded the risk of harm to children, such as G.H., who are still developing physically, mentally, and have a pre-existing diagnosed mental health need. Defendants were aware of, but

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

deliberately disregarded, the substantial risk of serious harm for children, such as G.H., who engage in self-harming behaviors or are at risk for suicide, when they subject them to solitary confinement. This includes the failure to provide a mental health examination prior to confinement or meaningful mental health treatment during confinement to prevent the onset or exacerbation of mental illness and reduce the risk of suicide. This includes when Defendants subjected G.H. to solitary confinement once for three days, a second time for over two days, and a third time for one day while he was in secure detention as reflected in DJJ confinement reports. Defendants knew of G.H.'s young age and his diagnosis of emotional behavioral disorder, but disregarded the risk of serious harm to him, subjected him to confinement, and no DJJ mental health professional or medical staff appropriately evaluated G.H. prior to, during, or after his time in solitary confinement.

DJJ policy and practice subjects G.H., and similarly situated children, to isolation in confinement without recreation, education, reading or writing materials, personal property, environmental stimulation, meaningful social interaction, exercise, or basic human needs like a clean cell. The cumulative effect of these conditions and deprivations subjects G.H. to a substantial risk of serious harm to his psychological and physical health in violation of the Eighth and Fourteenth Amendments.

Defendants knew of G.H.'s young age, his diagnosis of emotional behavioral disorder, and his risk for self-harm or suicide, but disregarded the substantial risk of serious harm to him and isolated him in solitary confinement. No mental health professional or medical staff adequately, appropriately, or meaningfully evaluated G.H. prior to, during his time in solitary confinement, or after. Defendants subjected G.H. to solitary confinement at least three times while in secure detention for days at a time. Defendants subjected G.H. to a substantial risk of serious harm by isolating him in confinement. Each time that DJJ isolated G.H. in solitary confinement, the cells were filthy. DJJ did not allow him a mat or blanket during the day. He was only allowed out of solitary confinement for a few minutes a day to shower after everyone else. Plaintiff had to eat in his cell. The only time that DJJ staff opened the door was to give him food or take him to shower. In confinement, Plaintiff did not have anything to do; he slept or stared at the walls. There were also ants in the confinement cell. While in confinement, G.H. felt like he was going to die. Plaintiff became paranoid. He had difficulty sleeping and thought he was having a seizure while he was sleeping even though he does not get seizures. Defendants would not let him socialize with other people. Plaintiff was denied recreation.

**Protected Health Information**

**Subject to HIPAA Qualified Protective Order**

*See* response to Interrogatory No. 28.

**AMENDED RESPONSE:**

Plaintiff objects, in part, to the extent that this request is vague as to who had "subjective knowledge of a substantial risk of harm" with regard to what specific factual issue or allegation in the Complaint. To the extent that discovery is ongoing and this information is in Defendants' possession and control and has not yet been produced in discovery, Plaintiff will supplement this response as information becomes known through discovery.

Within the narrowed scope of these objections and relying on "solitary confinement" and "confinement" as used in the Complaint, Plaintiff responds: Defendants have known of and disregarded a substantial risk of serious harm to Plaintiff's mental and physical health caused by their policy and practice of solitary confinement in DJJ secure detention centers. Defendant Marstiller has failed to stop subjecting children, including Plaintiff, to solitary confinement in detention despite knowing the risk of physical and psychological harm to children. Defendant Marstiller has been repeatedly warned about, but failed to eliminate the risks of harm to children, including G.H., from solitary confinement.

Additional facts which Plaintiffs are presently aware of that Defendants had subjective knowledge of the substantial risk of serious harm: for example, in 2011, a lawsuit was filed against the DJJ Secretary, *J.B., et al. v. Walters, et al.*, Case No. 11-83-RH-WCS (N.D. Fla.), where plaintiffs, a class of children with mental illness and developmental disabilities, challenged defendants' use of isolation in DJJ's North Florida Youth Development residential facility; in that case, the DJJ Secretary was informed that isolation is contraindicated for adolescents with developmental disabilities, mental illness, and self-harming behavior. The DJJ Secretary and DJJ also received a findings letter on December 1, 2011, from the U.S. Department of Justice Civil Rights Division (DOJ) following its investigation of the North Florida Youth Development Center which concluded that there were unconstitutional conditions of confinement that included Defendants' use of isolation. Defendants have also implemented different policies and policy changes in DJJ residential and non-residential programs concerning the use of solitary confinement.

Defendants also received a grievance from G.H. asking to not be subject to solitary confinement again because of the serious risk of harm from being put in

Protected Health Information
Subject to HIPAA Qualified Protective Order

confinement. Plaintiffs' counsel notified Defendants of the substantial risk of serious harm to children subject to solitary confinement pursuant to their policies and practices prior to the filing of this action.

Plaintiff's claims, on behalf of a putative class, under the Eighth and Fourteenth Amendments to the U.S. Constitution include that that Defendants subject him, and similarly situated children, to a substantial risk of serious harm by isolating them for days at a time, with no time limit, in locked cells without meaningful social interaction, environmental stimulation, outdoor recreation, schooling, or access to personal property, for minor misbehavior. For example, Defendants were aware of, but deliberately disregarded the risk of harm to children, such as G.H., who are still developing physically, mentally, and have a pre-existing diagnosed mental health need. Defendants were aware of, but deliberately disregarded, the substantial risk of serious harm for children, such as G.H., who engage in self-harming behaviors or are at risk for suicide, when they subject them to solitary confinement. This includes the failure to provide a mental health examination prior to confinement or meaningful mental health treatment during confinement to prevent the onset or exacerbation of mental illness and reduce the risk of suicide. This includes when Defendants subjected G.H. to solitary confinement once for three days, a second time for over two days, and a third time for one day while he was in secure detention as reflected in DJJ confinement reports. Defendants knew of G.H.'s young age and his diagnosis of emotional behavioral disorder, but disregarded the risk of serious harm to him, subjected him to confinement, and no DJJ mental health professional or medical staff appropriately evaluated G.H. prior to, during, or after his time in solitary confinement.

DJJ policy and practice subjects G.H., and similarly situated children, to isolation in confinement without recreation, education, reading or writing materials, personal property, environmental stimulation, meaningful social interaction, exercise, or basic human needs like a clean cell. The cumulative effect of these conditions and deprivations subjects G.H. to a substantial risk of serious harm to his psychological and physical health in violation of the Eighth and Fourteenth Amendments.

Defendants knew of G.H.'s young age, his diagnosis of emotional behavioral disorder, and his risk for self-harm or suicide, but disregarded the substantial risk of serious harm to him and isolated him in solitary confinement. No mental health professional or medical staff adequately, appropriately, or meaningfully evaluated G.H. prior to, during his time in solitary confinement, or after. Defendants

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

subjected G.H. to solitary confinement at least three times while in secure detention for days at a time. Defendants subjected G.H. to a substantial risk of serious harm by isolating him in confinement. Each time that DJJ isolated G.H. in solitary confinement, the cells were filthy. DJJ did not allow him a mat or blanket during the day. He was only allowed out of solitary confinement for a few minutes a day to shower after everyone else. Plaintiff had to eat in his cell. The only time that DJJ staff opened the door was to give him food or take him to shower. In confinement, Plaintiff did not have anything to do; he slept or stared at the walls. There were also ants in the confinement cell. While in confinement, G.H. felt like he was going to die. Plaintiff became paranoid. He had difficulty sleeping and thought he was having a seizure while he was sleeping even though he does not get seizures. Defendants would not let him socialize with other people. Plaintiff was denied recreation.

*See* response to Interrogatory No. 28. Plaintiff has answered this Interrogatory to the best of his ability based on the information known to him at this time. Plaintiff has served discovery requests for information which relates to this Interrogatory, but Defendant has not produced this information. Plaintiff will supplement this response, to the extent possible, following receipt and review of further discovery from Defendant.

**SECOND SUPPLEMENTAL RESPONSE:**

Relying on "solitary confinement" and "confinement" as used in the Complaint, Plaintiff responds: that Defendants have known of and disregarded a substantial risk of serious harm to Plaintiff's mental and physical health caused by their policy and practice of solitary confinement in DJJ secure detention centers. Defendant Marstiller has failed to stop subjecting children, including Plaintiff, to solitary confinement in detention despite knowing the risk of physical and psychological harm to children. Defendant Marstiller has been repeatedly warned about, but failed to eliminate the risks of harm to children, including G.H., from solitary confinement.

Additional facts which Plaintiffs are presently aware of that Defendants had subjective knowledge of the substantial risk of serious harm: for example, in 2011, a lawsuit was filed against the DJJ Secretary, *J.B., et al. v. Walters, et al.*, Case No. 11-83-RH-WCS (N.D. Fla.), where plaintiffs, a class of children with mental illness and developmental disabilities, challenged defendants' use of isolation in DJJ's North Florida Youth Development residential facility; in that case, the DJJ Secretary was informed that isolation is contraindicated for adolescents with

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

developmental disabilities, mental illness, and self-harming behavior. The DJJ
Secretary and DJJ also received a findings letter on December 1, 2011, from the
U.S. Department of Justice Civil Rights Division (DOJ) following its investigation
of the North Florida Youth Development Center which concluded that there were
unconstitutional conditions of confinement that included Defendants' use of
isolation. Defendants have also implemented different policies and policy changes
in DJJ residential and non-residential programs concerning the use of solitary
confinement.

Defendants also received a grievance from G.H. asking to not be subject to
solitary confinement again because of the serious risk of harm from being put in
confinement. Plaintiffs' counsel notified Defendants of the substantial risk of
serious harm to children subject to solitary confinement pursuant to their policies
and practices prior to the filing of this action.

Plaintiff's claims, on behalf of a putative class, under the Eighth and
Fourteenth Amendments to the U.S. Constitution include that that Defendants
subject him, and similarly situated children, to a substantial risk of serious harm by
isolating them for days at a time, with no time limit, in locked cells without
meaningful social interaction, environmental stimulation, outdoor recreation,
schooling, or access to personal property, for minor misbehavior. For example,
Defendants were aware of, but deliberately disregarded the risk of harm to
children, such as G.H., who are still developing physically, mentally, and have a
pre-existing diagnosed mental health need. Defendants were aware of, but
deliberately disregarded, the substantial risk of serious harm for children, such as
G.H., who engage in self-harming behaviors or are at risk for suicide, when they
subject them to solitary confinement. This includes the failure to provide a mental
health examination prior to confinement or meaningful mental health treatment
during confinement to prevent the onset or exacerbation of mental illness and
reduce the risk of suicide. This includes when Defendants subjected G.H. to
solitary confinement once for three days, a second time for over two days, and a
third time for one day while he was in secure detention as reflected in DJJ
confinement reports. Defendants knew of G.H.'s young age and his diagnosis of
emotional behavioral disorder, but disregarded the risk of serious harm to him,
subjected him to confinement, and no DJJ mental health professional or medical
staff appropriately evaluated G.H. prior to, during, or after his time in solitary
confinement.

DJJ policy and practice subjects G.H., and similarly situated children, to
isolation in confinement without recreation, education, reading or writing

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

materials, personal property, environmental stimulation, meaningful social interaction, exercise, or basic human needs like a clean cell. The cumulative effect of these conditions and deprivations subjects G.H. to a substantial risk of serious harm to his psychological and physical health in violation of the Eighth and Fourteenth Amendments.

Defendants knew of G.H.'s young age, his diagnosis of emotional behavioral disorder, and his risk for self-harm or suicide, but disregarded the substantial risk of serious harm to him and isolated him in solitary confinement. No mental health professional or medical staff adequately, appropriately, or meaningfully evaluated G.H. prior to, during his time in solitary confinement, or after. Defendants subjected G.H. to solitary confinement at least three times while in secure detention for days at a time. Defendants subjected G.H. to a substantial risk of serious harm by isolating him in confinement. Each time that DJJ isolated G.H. in solitary confinement, the cells were filthy. DJJ did not allow him a mat or blanket during the day. He was only allowed out of solitary confinement for a few minutes a day to shower after everyone else. Plaintiff had to eat in his cell. The only time that DJJ staff opened the door was to give him food or take him to shower. In confinement, Plaintiff did not have anything to do; he slept or stared at the walls. There were also ants in the confinement cell. While in confinement, G.H. felt like he was going to die. Plaintiff became paranoid. He had difficulty sleeping and thought he was having a seizure while he was sleeping even though he does not get seizures. Defendants would not let him socialize with other people. Plaintiff was denied recreation.

*See* response to Interrogatory No. 28. Plaintiff has answered this Interrogatory to the best of his ability based on the information known to him at this time. Plaintiff has served discovery requests for information which relates to this Interrogatory, but Defendant has not produced this information. Plaintiff will supplement this response, to the extent possible, following receipt and review of further discovery from Defendant.

Based on the information available to Plaintiff through discovery at this time, Plaintiff supplements this response to refer to documents with Bates Nos. MARST80804 - 81669. To the extent that discovery is ongoing and this information is in Defendants' possession and control and has not yet been produced in discovery, Plaintiff will supplement this response as information becomes known through discovery.

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

     A.    What facts do you contend demonstrate that the Defendants knew that its confinement practices and policies created a substantial risk?

**RESPONSE:**

    *See* responses to Interrogatories Nos. 28 and 29.

**AMENDED RESPONSE:**

    *See* responses to Interrogatories Nos. 28 and 29. Plaintiff has answered this Interrogatory to the best of his ability based on the information known to him at this time. Plaintiff has served discovery requests for information which relates to this Interrogatory, but Defendants have not produced this information. Plaintiff will supplement this response, to the extent possible, following receipt and review of further discovery from Defendants.

**SECOND SUPPLEMENTAL RESPONSE:**

    Based on the information available to Plaintiff through discovery at this time, Plaintiff supplements this response to refer to documents with Bates Nos. MARST000000000080804 - 81669.

     B.    What facts do you contend demonstrate that the Defendants knew that its confinement practices and policies caused serious harm?

**RESPONSE:**

    *See* responses to Interrogatory Nos. 28 and 29.

**AMENDED RESPONSE:**

    *See* responses to Interrogatories Nos. 28 and 29. Plaintiff has answered this Interrogatory to the best of his ability based on the information known to him at this time. Plaintiff has served discovery requests for information which relates to this Interrogatory, but Defendants have not produced this information. Plaintiff will supplement this response, to the extent possible, following receipt and review of further discovery from Defendants.

**SECOND SUPPLEMENTAL RESPONSE:**

**Protected Health Information**

**Subject to HIPAA Qualified Protective Order**

Based on the information available to Plaintiff through discovery at this time, Plaintiff supplements this response to refer to documents with Bates Nos. MARST80804 - 81669.

30.    Define "minor issues" and provide the factual basis for your allegation in paragraph 81 that Defendants routinely place juveniles in solitary confinement for "minor issues."

**RESPONSE:**

Plaintiff objects, in part, to the extent that this request seeks an expert opinion as discovery is only in the early stages and Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. Plaintiff further objects, in part, to the extent that such materials are protected by the attorney work product doctrine or protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure. To the extent that discovery is ongoing and this information is in Defendants' possession and control and has not yet been produced in discovery, Plaintiff will supplement this response as information becomes known through discovery. Defendants have also objected to and refused to produce responses to Plaintiffs' RFPs which seek information concerning children that have engaged in attempts of self-harm or suicide in DJJ secure detention centers; therefore, Plaintiffs are unable to fully respond until those meritless objections are withdrawn and responsive information is provided. *See* Plaintiffs' discovery dispute letters to Defendants' counsel, dated May 1, and May 20, 2020, concerning these objections and RFPs.

To the extent not objected to, Plaintiff responds, in part, that Defendants' policy and practice is to repeatedly isolate children for days at a time, with no time limit, in locked cells without meaningful social interaction, environmental stimulation, outdoor recreation, schooling, or access to personal property, for minor misbehavior in a practice that experts refer to as "solitary confinement." Defendants do not use solitary confinement or confinement sparingly or as a last resort to respond to immediate serious threats of physical harm by children to themselves or others. Defendants also use solitary confinement contrary to the stated reasons in Fla. Admin. Code R. 63G-2.022. DJJ uses solitary confinement for any and no reason. For example, Defendants' policy and practice subjects G.H. to solitary confinement, repeatedly, without any time limit, to manage his behavior

as a first response to any situation. Defendants subject G.H. to confinement for reasons including horseplay with another child. Other examples of Defendants' use of solitary confinement for any reason, including minor issues, include where youth talk back to staff, use a computer without authorization during school testing, do not follow staff directions, engage in horseplay, or curse.

## AMENDED RESPONSE:

Plaintiff objects, in part, to the extent that such materials are protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure and to the extent that this request seeks an expert opinion. Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time. To the extent that discovery is ongoing and this information is in Defendants' possession and control and has not yet been produced in discovery, Plaintiff will supplement this response as information becomes known through discovery.

Within the narrowed scope of these objections, Plaintiff responds that Defendants' policy and practice is to repeatedly isolate children for days at a time, with no time limit, in locked cells without meaningful social interaction, environmental stimulation, outdoor recreation, schooling, or access to personal property, for minor misbehavior in a practice that experts refer to as "solitary confinement." Defendants do not use solitary confinement or confinement sparingly or as a last resort to respond to immediate serious threats of physical harm by children to themselves or others. Defendants also use solitary confinement contrary to the stated reasons in Fla. Admin. Code R. 63G-2.022. DJJ uses solitary confinement for any and no reason. For example, Defendants' policy and practice subjects G.H.  to solitary confinement, repeatedly, without any time limit, to manage his behavior as a first response to any situation. Defendants subject G.H. to confinement for reasons including horseplay with another child. Other examples of Defendants' use of solitary confinement for any reason, including minor issues, include where youth talk back to staff, use a computer without authorization during school testing, do not follow staff directions, engage in horseplay, or curse.

Plaintiff has answered this Interrogatory to the best of his ability based on the information known to him through discovery at this time. Plaintiff has served discovery requests for information which relates to this Interrogatory, but

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

Defendants have not produced this information. Plaintiff will supplement this response, to the extent possible, following receipt and review of further discovery from Defendants.

**SECOND AMENDED/SUPPLEMENTAL RESPONSE:**

To the extent that such materials are protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure and to the extent that this request seeks an expert opinion, Plaintiff will provide any required and permissible disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time. To the extent that discovery is ongoing and this information is in Defendants' possession and control and has not yet been produced in discovery, Plaintiff will supplement this response as information becomes known through discovery.

Defendants' policy and practice is to repeatedly isolate children for days at a time, with no time limit, in locked cells without meaningful social interaction, environmental stimulation, outdoor recreation, schooling, or access to personal property, for minor misbehavior in a practice that experts refer to as "solitary confinement." Defendants do not use solitary confinement or confinement sparingly or as a last resort to respond to immediate serious threats of physical harm by children to themselves or others. Defendants also use solitary confinement contrary to the stated reasons in Fla. Admin. Code R. 63G-2.022. DJJ uses solitary confinement for any and no reason. For example, Defendants' policy and practice subjects G.H. to solitary confinement, repeatedly, without any time limit, to manage her behavior as a first response to any situation. Defendants subject G.H. to confinement for reasons including horseplay with another child. Other examples of Defendants' use of solitary confinement for any reason, including "minor issues," include where youth talk back to staff, use a computer without authorization during school testing, do not follow staff directions, engage in horseplay, or curse, or other behaviors that do not create an immediate threat to safety. For example, see: MARST80214.

Plaintiff has answered this Interrogatory to the best of his ability based on the information known to him through discovery at this time. Plaintiff has served discovery requests for information which relates to this Interrogatory, but Defendants have not produced this information. Plaintiff will supplement this

response, to the extent possible, following receipt and review of further discovery from Defendants. Plaintiff anticipates providing an expert opinion to support this allegation and will supplement the response at that time.

31.    Provide the factual or legal support for your contention that you are qualified to be a representative of the proposed class. Describe each and every way you are typical of the proposed class members.

**RESPONSE:**

Plaintiff objects, in part, to the extent that this request calls for a legal conclusion and is also a misstatement of the law because a class representative is not required to establish that they "are typical of the proposed class members." This Interrogatory is also vague to the extent that it is unclear if Defendants are requesting a response only as to one requirement, typicality, that is required to certify a class under Rule 23(a)(3) of the Federal Rules of Civil Procedure.

To the extent not objected to, Plaintiff responds, in part, only as to the requirement under Fed. R. Civ. P. 23(a)(3) that Plaintiff's claims are typical of those of the putative Plaintiff class. For example, Plaintiff's claims arise from the same policies, practices, or courses of conduct of Defendants' use of solitary confinement; Plaintiff's claims are based on the same theory of law as the classes' claims that Defendants policy and practice regarding solitary confinement constitute cruel and unusual punishment proscribed by the Eighth and Fourteenth Amendments to the United States Constitution and Defendants have been deliberately indifferent to a substantial risk of serious harm; and Plaintiff seeks injunctive and declaratory relief from the same alleged illegal policy and practice of Defendants as the class members.

**AMENDED RESPONSE:**

Plaintiff objects, in part, to the extent that this request calls for a legal conclusion concerning class certification. This Interrogatory is also vague to the extent that it is unclear if Defendants are requesting a response only as to one requirement, typicality, that is required to certify a class under Rule 23(a)(3) of the Federal Rules of Civil Procedure.

Within the narrowed scope of these objections, Plaintiff responds as to the requirement under Fed. R. Civ. P. 23(a)(3) that Plaintiff's claims are typical of

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

those of the putative Plaintiff class. For example, Plaintiff's claims arise from the same policies, practices, or courses of conduct of Defendants' use of solitary confinement; Plaintiff's claims are based on the same theory of law as the classes' claims that Defendants policy and practice regarding solitary confinement constitute cruel and unusual punishment proscribed by the Eighth and Fourteenth Amendments to the United States Constitution and Defendants have been deliberately indifferent to a substantial risk of serious harm; and Plaintiff seeks injunctive and declaratory relief from the same alleged illegal policy and practice of Defendants as the class members.

Plaintiff has answered this Interrogatory to the best of his ability based on the information known to him at this time.

**SECOND AMENDED/SUPPLEMENTAL RESPONSE:**

This Interrogatory is vague to the extent that it is unclear if Defendants are requesting a response only as to one requirement, typicality, that is required to certify a class under Rule 23(a)(3) of the Federal Rules of Civil Procedure.

Within the narrowed scope of these objections and interpreting this Interrogatory as inquiring regarding "typicality" only, Plaintiff responds as to the requirement under Fed. R. Civ. P. 23(a)(3) that Plaintiff's claims are typical of those of the putative Plaintiff class. For example, Plaintiff's claims arise from the same policies, practices, or courses of conduct of Defendants' use of solitary confinement; Plaintiff's claims are based on the same theory of law as the classes' claims that Defendants policy and practice regarding solitary confinement constitute cruel and unusual punishment proscribed by the Eighth and Fourteenth Amendments to the United States Constitution and Defendants have been deliberately indifferent to a substantial risk of serious harm; and Plaintiff seeks injunctive and declaratory relief from the same alleged illegal policy and practice of Defendants as the class members.

Plaintiff has answered this Interrogatory to the best of his ability based on the information known to her at this time.

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

_____

G.H., *et al*.,

          Plaintiffs,

                          Case No.: 4:19-cv-431-MW/MJF

v.

JOSEFINA TAMAYO, *et al*.,

          Defendants.

_____

### PLAINTIFF R.L.'S SECOND AMENDED AND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT MARSTILLER'S SECOND SET OF INTERROGATORIES TO PLAINTIFF, R.L., a minor, by <u>and through her parent and legal guardian, ANGEL CARTER</u>

Pursuant to Fed. R. Civ. P. 26, 33, and N.D. Loc. R. 26.1, Plaintiff R.L., by and through her undersigned counsel, hereby gives notice of service of her second amended and supplemental responses to Defendant Simone Marstiller's Second Set of Interrogatories to Plaintiff, R.L., dated April 21, 2020.

Dated: March 8, 2021          Respectfully submitted,

                          By:     s/ Andrea Costello
                          Andrea Costello
                          Fla. Bar No. 0532991
                          Christopher M. Jones
                          Fla. Bar No. 994642
                          Jennifer Painter
                          Fla. Bar No. 110966

**CONFIDENTIAL**

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

Aimee Lim
Fla Bar No. 116209
Rachel Ortiz
Fla. Bar No. 0083842
Florida Legal Services
122 E. Colonial Drive, Suite 100
Orlando, FL 32801
Telephone: (407) 801-0332 (direct)
andrea@floridalegal.org
christopher@floridalegal.org
jennifer.painter@floridalegal.org
aimee.lim@floridalegal.org
rachel.ortiz@floridalegal.org

Kelly Knapp
Fla. Bar No. 1011018
Leonard J. Laurenceau
Fla. Bar No. 106987
Southern Poverty Law Center
4770 Biscayne Blvd., Suite 760
Miami, FL 33137
Telephone: (786) 347-2056
kelly.knapp@splcenter.org
leo.laurenceau@splcenter.org

Dante P. Trevisani
Fla. Bar No. 72912
Laura A. Ferro
Fla. Bar No. 1015841
Sam Thypin-Bermeo
Fla. Bar No. 1019777
Marcel A. Lilavois, Jr.
Fla. Bar No. 1016175
Florida Justice Institute, Inc.
100 S.E. 2nd St., Ste 3750
Miami, FL 33131
Telephone: (305) 358-2081
dtrevisani@floridajusticeinstitute.org
lferro@floridajusticeinstitute.org
sthypin-bermeo@floridajusticeinstitute.org

2

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

Mlilavois@floridajusticeinstitute.org

**Attorneys for Plaintiffs**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by email on the 8th of March, 2021 on all counsel or parties of record on the Service List below.

____ s/ Andrea Costello ____
Attorney for Plaintiffs

## <u>SERVICE LIST</u>

JONATHAN B. TROHN
j.trohn@cttalaw.com
j.kirkland@cttalaw.com
k.cassata@cttalaw.com
s.strickland@cttalaw.com

HANK B. CAMPBELL
h.campbell@cttalaw.com
r.roop@cttalaw.com
p.lizotte@cttalaw.com

ROBERT ARANDA
r.aranda@cttalaw.com
p.roop@cttalaw.com

JOHN MARC TAMAYO
j.tamayo@cttalaw.com
m.cunningham@cttalaw.com

ELLIOTT V. MITCHELL
e.mitchell@cttalaw.com

BARBARA W. DAVIS
b.davis@cttalaw.com
u.crews@cttalaw.com

JENNIFER VASQUEZ
j.vasquez@cttalaw.com

CAMPBELL TROHN TAMAYO &
ARANDA
1701 South Florida Avenue
Lakeland, Florida 33803
(863) 686-0043 (phone)
(863) 616-1445 (facsimile)

**Attorneys for Defendants**

## RESPONSES TO INTERROGATORIES

26.     State the name and address of each person who participated in answering these interrogatories, and if applicable, the person's official position or relationship with the party to whom the interrogatives are directed.

**RESPONSE:**

Plaintiff R.L. answered these interrogatories. The objections to these interrogatories are made by Plaintiff R.L.'s attorneys.

27.     Do you contend that there is a "national trend" to eliminate or reduce confinement, as alleged in paragraph 6 of the Complaint?

**RESPONSE:**

Plaintiff objects, in part, to the extent that this request seeks an expert opinion and information that is protected as attorney work product. This request is also vague because Defendant does not define "confinement" which is subject to different statutory definitions, policies, and practices, in various states and agencies throughout the country. To the extent not objected to, Plaintiff responds, in part, yes.

**AMENDED RESPONSE**:

Plaintiff objects, in part, to the extent that this request seeks an expert opinion; Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure.

Since Defendants claim that they are unable to tell what the answer to this Interrogatory is, Plaintiff restates that the answer is "yes."

Plaintiff has answered this Interrogatory to the best of her ability based on the information known to her through discovery at this time. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time.

**SECOND AMENDED/SUPPLEMENTAL RESPONSE:**

Yes.

A.    Identify all states or agencies that have completely eliminated the use of confinement in secure detention centers for juveniles.

**RESPONSE:**

Plaintiff objects, in part, to the extent that this request seeks an expert opinion as discovery is only in the early stages and Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. Plaintiff further objects, in part, to the extent that such materials are protected by the attorney work product doctrine or protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure. Plaintiff also objects, in part, because this request is vague as Defendant does not define "confinement" or "secure detention centers" which are subject to various statutory definitions, policies, and practices, in various states and agencies throughout the country. This request is also overbroad because it lacks any responsive time period.

**AMENDED RESPONSE**:

Plaintiff objects, in part, to the extent that such materials are protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure and to the extent that this request seeks an expert opinion. Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time.

Within the narrowed scope of these objections and relying on "solitary confinement" and "secure detention centers" as used in the Complaint, Plaintiff identifies the following: State of Ohio; State of New Mexico; State of Massachusetts and Massachusetts Department of Youth Services; State of Nebraska; Washington, D.C. Department of Youth Rehabilitative Services; Sacramento County Youth Detention Facility; and the State of Washington.

Plaintiff has answered this Interrogatory to the best of her ability based on the information known to her at this time.

**SECOND AMENDED/SUPPLEMENTAL RESPONSE:**

Relying on the definitions of "solitary confinement" and "secure detention centers" as used in the Complaint, Plaintiff identifies the following: State of Ohio; State of New Mexico; State of Massachusetts and Massachusetts Department of Youth Services; State of Nebraska; Washington, D.C. Department of Youth Rehabilitative Services; Sacramento County Youth Detention Facility; and the State of Washington. Plaintiff has answered this Interrogatory to the best of her ability based on the information known to her at this time. Plaintiff anticipates providing an expert opinion to support this allegation and will supplement the response at that time.

B.     Are the states identified in A the same states as the 29 states alleged in paragraph 77 of your Complaint to have "prohibited juvenile detention facilities from using disciplinary isolation, or any isolation for juveniles" If not, provide the list of 29 states referenced in paragraph 77 of your Complaint.

**RESPONSE:**

Plaintiff objects, in part, to the extent that this request seeks an expert opinion as discovery is only in the early stages and Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. Plaintiff further objects, in part, to the extent that such materials are protected by the attorney work product doctrine or protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure. This request is vague because it relies on and references Interrogatory No. 27A in which Defendant does not define "confinement" or "secure detention centers" which are subject to various statutory definitions, policies, and practices, in various states and agencies throughout the country. This request is also overbroad because it lacks any responsive time limitation or period.

To the extent not objected to, Plaintiff responds, in part, that the allegations in paragraph 77 of the Complaint (ECF 2) that "[a]t least 29 states have prohibited juvenile detention facilities from using disciplinary isolation, or any isolation for juveniles[]" references jurisdictions that are discussed in the 51 Jurisdiction Survey

of Juvenile Solitary Confinement Rules in Juvenile Justice Systems (Lowenstein Survey) which is cited in paragraph 77 of the Complaint and available at: https://www.lowenstein.com/media/2825/51-jurisdiction-survey-of-juvenile-solitary-confinement-rules-72616.pdf. The Lowenstein Survey describes certain, but not all, states and agencies that have limited or eliminated the use of solitary confinement for juveniles where juveniles are serving a custodial sentence or being held for a significant amount of time awaiting adjudication and does not contain exhaustive information about all juvenile detention facilities that have implemented measures to eliminate its use. The Lowenstein Survey also contains references and definitions as to the types of solitary confinement which may differ from what Defendant is requesting in this Interrogatory; since no definitions have been provided, Plaintiff has answered this to the best of her ability. Since the Lowenstein Survey was completed, there has been litigation or legislative developments concerning the use of solitary confinement for juveniles which Plaintiffs' experts will address in their reports. In addition, the states of New York, New Jersey, North Carolina, Nebraska, and New Mexico have banned solitary confinement for juveniles in their state prison systems with each source for that information referenced in footnote 25 of the Complaint.

**AMENDED RESPONSE**:

Plaintiff objects, in part, to the extent that such materials are protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure and to the extent that this request seeks an expert opinion. Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time.

Within the narrowed scope of these objections, Plaintiff responds: some, but not all. The 29 states referenced in paragraph 77 of the Complaint are: Alaska, Arizona, Arkansas, Colorado, Connecticut, Florida, Hawaii, Idaho, Illinois, Maine, Maryland, Massachusetts, Missouri, Montana, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Utah, Vermont, and Washington, D.C. While the Lowenstein Survey characterizes Florida as having prohibited the use of punitive confinement, Plaintiff's Complaint alleges that Defendant DJJ's use of behavioral confinement in secure detention is punitive in practice and poses an unconstitutional risk of harm to children.

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

Plaintiff has answered this Interrogatory to the best of her ability based on the information known to her at this time. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time.

**SECOND AMENDED/SUPPLEMENTAL RESPONSE:**

Some, but not all. The 29 states referenced in paragraph 77 of the Complaint are: Alaska, Arizona, Arkansas, Colorado, Connecticut, Florida, Hawaii, Idaho, Illinois, Maine, Maryland, Massachusetts, Missouri, Montana, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Utah, Vermont, and Washington, D.C. While the Lowenstein Survey characterizes Florida as having prohibited the use of punitive confinement, Plaintiff's Complaint alleges that Defendant DJJ's use of behavioral confinement in secure detention is punitive in practice and poses an unconstitutional risk of harm to children.

Plaintiff has answered this Interrogatory to the best of her ability based on the information known to her at this time. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time.

C.     Of the states or agencies that have completely eliminated the use of confinement or isolation in secure detention centers, identify those that continue to use mechanical restraints or other forms of physical control.

**RESPONSE:**

Plaintiff objects, in part, to the extent that this request seeks an expert opinion as discovery is only in the early stages and Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. Plaintiff further objects, in part, to the extent that such materials are protected by the attorney work product doctrine or protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure. This request is also vague because Defendant has not defined "confinement," "secure detention" or "mechanical restraints" or "other forms of physical control" which are subject to various interpretations, statutory definitions, policies, and practices,

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

in various states and agencies throughout the country. This request is also overbroad because it lacks any responsive time limitation or period.

**AMENDED RESPONSE**:

Plaintiff refers to the responses to Interrogatories Nos. 27(A) and (B). Plaintiff objects, in part, to the extent that such materials are protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure and to the extent that this request seeks an expert opinion. Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time.

Within the narrowed scope of these objections and relying on "solitary confinement" and "secure detention centers" as used in the Complaint, Plaintiff states that at this time she does not know whether and which states that have completely eliminated solitary confinement allow for the use of mechanical restraints.

**SECOND AMENDED/SUPPLEMENTAL RESPONSE:**

Relying on the definitions of "solitary confinement" and "secure detention centers" as used in the Complaint, Plaintiff states that at this time she does not know whether and which states that have completely eliminated solitary confinement and allow for the use of mechanical restraints. However, Plaintiff refers to the responses to Interrogatories Nos. 27(A) and (B). To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time.

D.    For those states or agencies that have not completely eliminated confinement or isolation, identify those states or agencies in the "national trend" that have reduced the duration of confinement to 24 hours or less.

**RESPONSE:**

Plaintiff objects, in part, to the extent that this request seeks an expert opinion as discovery is only in the early stages and Plaintiff will provide any

disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. Plaintiff further objects, in part, to the extent that such materials are protected by the attorney work product doctrine or protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure. This request is also vague because Defendant has not defined "confinement" or "isolation" which are subject to various interpretations, statutory definitions, policies, and practices, in various states and agencies throughout the country. This request is also overbroad because it lacks any responsive time limitation or period.

**AMENDED RESPONSE:**

Plaintiff objects, in part, to the extent that such materials are protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure and to the extent that this request seeks an expert opinion. Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time.

Within the narrowed scope of these objections and relying on "solitary confinement" and "secure detention centers" as used in the Complaint, Plaintiff responds that these states do not permit the total time in a type of confinement to exceed 24 hours: Colorado, Delaware, Georgia, Hawaii, Illinois, Kentucky, Maine, Missouri, North Dakota, Oklahoma, Oregon, Pennsylvania, and South Carolina.

Plaintiff has answered this Interrogatory to the best of her ability based on the information known to her through discovery at this time.

**SECOND AMENDED/SUPPLEMENTAL RESPONSE:**

Relying on the definitions of "solitary confinement" and "secure detention centers" as used in the Complaint, Plaintiff responds that these states do not permit the total time in a type of confinement to exceed 24 hours: Colorado, Delaware, Georgia, Hawaii, Illinois, Kentucky, Maine, Missouri, North Dakota, Oklahoma, Oregon, Pennsylvania, and South Carolina.

Plaintiff has answered this Interrogatory to the best of her ability based on the information known to her through discovery at this time. Plaintiff anticipates

**Protected Health Information**

**Subject to HIPAA Qualified Protective Order**

providing an expert opinion to support this allegation and will supplement the response at that time.


28.     Provide the factual basis for your contention in paragraph 67 of a correlation between suicide and confinement.

**RESPONSE:**

Plaintiff objects, in part, to the extent that this request seeks an expert opinion as discovery is only in the early stages and Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. Plaintiff further objects, in part, to the extent that such materials are protected by the attorney work product doctrine or protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure. To the extent that discovery is ongoing and this information is in Defendants' possession and control and has not yet been produced in discovery, Plaintiff will supplement this response as information becomes known through discovery.

To the extent not objected to, Plaintiff responds, in part, as follows: a national study by the Department of Justice's Office of Juvenile Justice and Delinquency Prevention found that half of the youth who committed suicide in juvenile facilities were in isolation at the time of their death. *See* Lindsay Hayes, Juvenile Suicide in Confinement, A National Survey, Office of Juvenile Justice Delinquency and Prevention, (2009), at vii., https://www.ncjrs.gov/pdffiles1/ojjdp/213691.pdf. This study further found that more than 60% of young people who committed suicide in detention while in confinement had a history of being held in isolation. This study further explains the incidence of mental illness, psychiatric disorders, mental health treatment needs, sexual abuse, self-injurious behavior, and other factors which relate to the correlation between juvenile suicide and the use of confinement.

The Council of Juvenile Correctional Administrators also recognizes the correlation between the use of confinement, solitary confinement, or isolation and juvenile suicide. *See* Toolkit: Reducing the Use of Isolation (March 2015). In 2012, the United States Attorney General's National Task Force on Children Exposed to Violence also discusses the increased vulnerability to suicide for children who are subject to solitary confinement. *See* Report of the Attorney General's National Task Force on Children Exposed to Violence, at 178 (Dec. 12,

2012), https://www.justice.gov/defendingchildhood/cev-rpt-full.pdf (last visited September 4, 2019). In a 2015 report, the United Nations Special Rapporteur on Torture also acknowledged the high risk of mental illness and higher rates of suicide and self-harm for juveniles in solitary confinement. *See* Interim Rep. of the Special Rapporteur on Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, U.N. Doc. A/66/268, at ¶ 77 (Aug. 5, 2011), http://solitaryconfinement.org/uploads/SpecRapTortureAug2011.pdf.

On December 1, 2011, the U.S. Department of Justice Civil Rights Division (DOJ) also sent the Department of Juvenile Justice (DJJ) Secretary and DJJ a findings letter following its investigation of the DJJ North Florida Youth Development Center, also discusses the risk of harm and potential for suicide when youth are subject to solitary confinement. *See* https://www.justice.gov/sites/default/files/crt/legacy/2011/12/02/dozier_findltr_12-1-11.pdf. This findings letter notes that the suicidal behaviors by youth in DJJ's custody at these facilities was disproportionately high when compared with the PbS field average and due to a lack of adequate documentation by staff, the numbers of such incidents may be higher than the DOJ was able to discern. (PbS refers to the Performance-based Standards for Youth Correction and Detention Facilities that was developed in 1995 by DOJ, Office of Justice Programs, Office of Juvenile Justice and Delinquency Prevention.)

Defendants have also studied the correlation between the use of solitary confinement and juvenile suicide. *See* documents produced herewith at Bates Nos.: PLS0001130-PLS0001160.

**AMENDED RESPONSE:**

Plaintiff objects, in part, to the extent that such materials are protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure and to the extent that this request seeks an expert opinion. Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time.

Within the narrowed scope of these objections and relying on "solitary confinement" and "secure detention centers" as used in the Complaint, and interpreting "confinement" broadly, Plaintiff responds, in part, as follows: a

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

national study by the Department of Justice's Office of Juvenile Justice and Delinquency Prevention found that half of the youth who committed suicide in juvenile facilities were in isolation at the time of their death. *See* Lindsay Hayes, Juvenile Suicide in Confinement, A National Survey, Office of Juvenile Justice Delinquency and Prevention, (2009), at vii., https://www.ncjrs.gov/pdffiles1/ojjdp/213691.pdf. This study further found that more than 60% of young people who committed suicide in detention while in confinement had a history of being held in isolation. This study further explains the incidence of mental illness, psychiatric disorders, mental health treatment needs, sexual abuse, self-injurious behavior, and other factors which relate to the correlation between juvenile suicide and the use of confinement.

The Council of Juvenile Correctional Administrators also recognizes the correlation between the use of confinement, solitary confinement, or isolation and juvenile suicide. *See* Toolkit: Reducing the Use of Isolation (March 2015). In 2012, the United States Attorney General's National Task Force on Children Exposed to Violence also discusses the increased vulnerability to suicide for children who are subject to solitary confinement. *See* Report of the Attorney General's National Task Force on Children Exposed to Violence, at 178 (Dec. 12, 2012), https://www.justice.gov/defendingchildhood/cev-rpt-full.pdf (last visited September 4, 2019). In a 2015 report, the United Nations Special Rapporteur on Torture also acknowledged the high risk of mental illness and higher rates of suicide and self-harm for juveniles in solitary confinement. *See* Interim Rep. of the Special Rapporteur on Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, U.N. Doc. A/66/268, at ¶ 77 (Aug. 5, 2011), http://solitaryconfinement.org/uploads/SpecRapTortureAug2011.pdf.

On December 1, 2011, the U.S. Department of Justice Civil Rights Division (DOJ) also sent the Department of Juvenile Justice (DJJ) Secretary and DJJ a findings letter following its investigation of the DJJ North Florida Youth Development Center, also discusses the risk of harm and potential for suicide when youth are subject to solitary confinement. *See* https://www.justice.gov/sites/default/files/crt/legacy/2011/12/02/dozier_findltr_12-1-11.pdf. This findings letter notes that the suicidal behaviors by youth in DJJ's custody at these facilities was disproportionately high when compared with the PbS field average and due to a lack of adequate documentation by staff, the numbers of such incidents may be higher than the DOJ was able to discern. (PbS refers to the Performance-based Standards for Youth Correction and Detention Facilities that was developed in 1995 by DOJ, Office of Justice Programs, Office of Juvenile Justice and Delinquency Prevention.)

Defendants have also studied the correlation between the use of solitary confinement and juvenile suicide. *See* documents previously produced at Bates Nos.: PLS0001130-PLS0001160.

Plaintiff has answered this Interrogatory to the best of her ability based on the information known to her through discovery at this time. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time.

A.     Provide the factual basis for any correlation between any suicide or self-harm and any confinement administered by these specific Defendants.

**RESPONSE:**

*See* response to Interrogatory No. 28.

**AMENDED RESPONSE:**

*See* response to Interrogatory No. 28. Plaintiff has answered this Interrogatory to the best of her ability based on the information known to her at this time. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time.

B.     Identify by name and address all individuals that attempted suicide or self- harm for which a reliable determination was made that the suicide or self-harm was a result of confinement in this Defendant's detention facility.

**RESPONSE:**

Plaintiff objects, in part, because this request is vague; the phrase "for which a reliable determination was made that the suicide or self-harm was a result of confinement" is vague as Plaintiff has no way to determine from this Interrogatory, for example, who made such a determination, about whom it was made, or any such person's qualifications to do so. The term "reliable" is also vague and subject to different interpretations. Plaintiff also objects because this request is overbroad because it lacks any time limitation. To the extent that discovery is ongoing and this information is in Defendants' possession and control and has not yet been

15

produced in discovery, Plaintiff will supplement this response as information becomes known through discovery. Defendants have objected to and refused to produce responses to Plaintiffs' Requests for Production (RFPs) which seek documents, data, and electronically stored information concerning children that have engaged in attempts of self-harm or suicide in DJJ secure detention centers; therefore, Plaintiffs are unable to respond until Defendants' meritless objections are withdrawn and responsive information is provided. *See* Plaintiffs' letter to Defendants' counsel, dated May 1, 2020, concerning these objections and RFPs.

**AMENDED RESPONSE:**

Plaintiff is not aware of the name and address of all individuals that attempted suicide or self-harm in Defendant's secure detention facility.

Plaintiff has answered this Interrogatory to the best of her ability based on the information known to her at this time. Plaintiff has served discovery requests for information about suicide and self-harm in DJJ secure detention since January 1, 2014, but Defendant has not produced this information. Plaintiff will supplement this response, to the extent possible, following receipt and review of further discovery from Defendant.

**SECOND SUPPLEMENTAL RESPONSE**:

Based on the information available to Plaintiff through discovery at this time, Plaintiff supplements this response to refer to documents with Bates Nos. MARST80804 - 81669. Plaintiff cannot say, based on the discovery available at this time, that a "reliable determination was made that the suicide or self-harm was a result of confinement in this Defendant's detention facility," but identifies these documents as having information that may be responsive to this request.

C.     Provide the names and addresses of all mental health professionals that determined there was a correlation between any of the above described suicides or self-harm and the confinement utilized in Defendant's detention facility.

**RESPONSE:**

*See* responses to Interrogatories Nos. 28(A) and (B).

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

**AMENDED RESPONSE:**

*See* responses to Interrogatories Nos. 28(A) and 28(B).

**SECOND SUPPLEMENTAL RESPONSE:**

Based on the information available to Plaintiff through discovery at this time, Plaintiff supplements this response to refer to documents with Bates Nos. MARST80804 - 81669.

29.    Provide your factual basis for alleging that Defendants had subjective knowledge of a substantial risk of serious harm.

**RESPONSE:**

Plaintiff objects, in part, to the extent that this request is vague as to who had "subjective knowledge of a substantial risk of harm" and with regard to what specific factual issue or allegation in the Complaint. Plaintiff also objects, in part, because this request is overbroad because it lacks any time limitation. To the extent that discovery is ongoing and this information is in Defendants' possession and control and has not yet been produced in discovery, Plaintiff will supplement this response as information becomes known through discovery.

To the extent not objected to, Plaintiff responds, in part, that Defendants have known of and disregarded a substantial risk of serious harm to Plaintiff's mental and physical health caused by their policy and practice of solitary confinement in DJJ secure detention centers. Defendant Marstiller has failed to stop subjecting children, including Plaintiff, to solitary confinement in detention despite knowing the risk of physical and psychological harm to children. Defendant Marstiller has been repeatedly warned about, but failed to eliminate the risks of harm to children, including R.L., from solitary confinement.

Additional facts which Plaintiffs are presently aware of that Defendants had subjective knowledge of the substantial risk of serious harm: for example, in 2011, a lawsuit was filed against the DJJ Secretary, *J.B., et al. v. Walters, et al.*, Case No. 11-83-RH-WCS (N.D. Fla.), where plaintiffs, a class of children with mental illness and developmental disabilities, challenged defendants' use of isolation in DJJ's North Florida Youth Development residential facility; in that case, the DJJ Secretary was informed that isolation is contraindicated for adolescents with

developmental disabilities, mental illness, and self-harming behavior. The DJJ
Secretary and DJJ also received a findings letter on December 1, 2011, from the
U.S. Department of Justice Civil Rights Division (DOJ) following its investigation
of the North Florida Youth Development Center which concluded that there were
unconstitutional conditions of confinement that included Defendants' use of
isolation. Defendants have also implemented different policies and policy changes
in DJJ residential and non-residential programs concerning the use of solitary
confinement.

Defendants also received a grievance from R.L. asking to not be subject to
solitary confinement again because of the serious risk of harm from being put in
confinement. Plaintiffs' counsel notified Defendants of the substantial risk of
serious harm to children subject to solitary confinement pursuant to their policies
and practices prior to the filing of this action.

Plaintiff's claims, on behalf of a putative class, under the Eighth and
Fourteenth Amendments to the U.S. Constitution include that that Defendants
subject her, and similarly situated children, to a substantial risk of serious harm by
isolating them for days at a time, with no time limit, in locked cells without
meaningful social interaction, environmental stimulation, outdoor recreation,
schooling, or access to personal property, for minor misbehavior. For example,
Defendants knew of R.L.'s young age, her mental illness, and her risk for self-
harm or suicide, but disregarded the substantial risk of serious harm to her and
isolated her in solitary confinement. No mental health professional or medical staff
adequately, appropriately, or meaningfully evaluated R.L. prior to, during her time
in solitary confinement, or after. Defendants subject R.L. to solitary confinement at
least three times while in secure detention. This included in approximately
September 2019, during one of the periods when Defendants subjected R.L. to
solitary confinement, when Plaintiff used an object to cut her forearm. Defendants
subjected R.L. to a substantial risk of serious harm by isolating her in confinement.
Also, in approximately August 2019, Plaintiff tried to jump from an elevated area
in a confinement cell and staff responded to this incident. Plaintiff told DJJ staff
that she wanted to get out of confinement or she would jump. Staff's response was
to tell Plaintiff something to the effect of get down or you will get pulled down.
After Plaintiff got down, DJJ did not provide any mental health counseling or
intervention and continued Plaintiff's isolation in confinement in another cell.

When DJJ isolated R.L. in solitary confinement, the cells were filthy, had
human feces on the walls, and were defaced by writing on the wall. DJJ did not
allow her a mat or blanket during the day. She was only allowed out of solitary

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

confinement for a few minutes a day to shower after everyone else. Plaintiff had to eat in her cell. The only time that DJJ staff opened the door was to give her food or take her to shower. In confinement, Plaintiff's anxiety became worse and she was depressed. She found it difficult to sleep. She felt upset and trapped, alone, and angry. Plaintiff did not have anything to do; she just sat there or cried. While in confinement, Defendants would not let her socialize with other people. Plaintiff was denied recreation. No staff told Plaintiff how long she would be in confinement or when she would get out.

*See* response to Interrogatory No. 28.

**AMENDED RESPONSE:**

Plaintiff objects, in part, to the extent that this request is vague as to who had "subjective knowledge of a substantial risk of harm" with regard to what specific factual issue or allegation in the Complaint. To the extent that discovery is ongoing and this information is in Defendants' possession and control and has not yet been produced in discovery, Plaintiff will supplement this response as information becomes known through discovery.

Within the narrowed scope of these objections and relying on "solitary confinement" and "confinement" as used in the Complaint, Plaintiff responds: that Defendants have known of and disregarded a substantial risk of serious harm to Plaintiff's mental and physical health caused by their policy and practice of solitary confinement in DJJ secure detention centers. Defendant Marstiller has failed to stop subjecting children, including Plaintiff, to solitary confinement in detention despite knowing the risk of physical and psychological harm to children. Defendant Marstiller has been repeatedly warned about, but failed to eliminate the risks of harm to children, including R.L., from solitary confinement.

Additional facts which Plaintiffs are presently aware of that Defendants had subjective knowledge of the substantial risk of serious harm: for example, in 2011, a lawsuit was filed against the DJJ Secretary, *J.B., et al. v. Walters, et al.*, Case No. 11-83-RH-WCS (N.D. Fla.), where plaintiffs, a class of children with mental illness and developmental disabilities, challenged defendants' use of isolation in DJJ's North Florida Youth Development residential facility; in that case, the DJJ Secretary was informed that isolation is contraindicated for adolescents with developmental disabilities, mental illness, and self-harming behavior. The DJJ Secretary and DJJ also received a findings letter on December 1, 2011, from the U.S. Department of Justice Civil Rights Division (DOJ) following its investigation

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

of the North Florida Youth Development Center which concluded that there were unconstitutional conditions of confinement that included Defendants' use of isolation. Defendants have also implemented different policies and policy changes in DJJ residential and non-residential programs concerning the use of solitary confinement.

Defendants also received a grievance from R.L. asking to not be subject to solitary confinement again because of the serious risk of harm from being put in confinement. Plaintiffs' counsel notified Defendants of the substantial risk of serious harm to children subject to solitary confinement pursuant to their policies and practices prior to the filing of this action.

Plaintiff's claims, on behalf of a putative class, under the Eighth and Fourteenth Amendments to the U.S. Constitution include that that Defendants subject her, and similarly situated children, to a substantial risk of serious harm by isolating them for days at a time, with no time limit, in locked cells without meaningful social interaction, environmental stimulation, outdoor recreation, schooling, or access to personal property, for minor misbehavior. For example, Defendants were aware of, but deliberately disregarded the risk of harm to children, such as R.L., who are still developing physically, mentally, and have a pre-existing diagnosed mental health need. Defendants knew of R.L.'s young age, her mental illness, and her risk for self-harm or suicide, but disregarded the substantial risk of serious harm to her and isolated her in solitary confinement. No mental health professional or medical staff adequately, appropriately, or meaningfully evaluated R.L. prior to, during her time in solitary confinement, or after. Defendants subject R.L. to solitary confinement at least three times while in secure detention. This included in approximately September 2019, during one of the periods when Defendants subjected R.L. to solitary confinement, when Plaintiff used an object to cut her forearm. Defendants subjected R.L. to a substantial risk of serious harm by isolating her in confinement. Also, in approximately August 2019, Plaintiff tried to jump from an elevated area in a confinement cell and staff responded to this incident. Plaintiff told DJJ staff that she wanted to get out of confinement or she would jump. Staff's response was to tell Plaintiff something to the effect of get down or you will get pulled down. After Plaintiff got down, DJJ did not provide any mental health counseling or intervention and continued Plaintiff's isolation in confinement in another cell.

When DJJ isolated R.L. in solitary confinement, the cells were filthy, had human feces on the walls, and were defaced by writing on the wall. DJJ did not allow her a mat or blanket during the day. She was only allowed out of solitary

confinement for a few minutes a day to shower after everyone else. Plaintiff had to eat in her cell. The only time that DJJ staff opened the door was to give her food or take her to shower. In confinement, Plaintiff's anxiety became worse and she was depressed. She found it difficult to sleep. She felt upset and trapped, alone, and angry. Plaintiff did not have anything to do; she just sat there or cried. While in confinement, Defendants would not let her socialize with other people. Plaintiff was denied recreation. No staff told Plaintiff how long she would be in confinement or when she would get out.

DJJ policy and practice subjects R.L., and similarly situated children, to isolation in confinement without recreation, education, reading or writing materials, personal property, environmental stimulation, meaningful social interaction, exercise, or basic human needs like a clean cell. The cumulative effect of these conditions and deprivations subjects R.L. to a substantial risk of serious harm to her psychological and physical health in violation of the Eighth and Fourteenth Amendments.

*See* response to Interrogatory No. 28. Plaintiff has answered this Interrogatory to the best of her ability based on the information known to her at this time. Plaintiff has served discovery requests for information which relates to this Interrogatory, but Defendant has not produced this information. Plaintiff will supplement this response, to the extent possible, following receipt and review of further discovery from Defendant.

**SECOND SUPPLEMENTAL RESPONSE:**

Relying on "solitary confinement" and "confinement" as used in the Complaint, Plaintiff responds: that Defendants have known of and disregarded a substantial risk of serious harm to Plaintiff's mental and physical health caused by their policy and practice of solitary confinement in DJJ secure detention centers. Defendant Marstiller has failed to stop subjecting children, including Plaintiff, to solitary confinement in detention despite knowing the risk of physical and psychological harm to children. Defendant Marstiller has been repeatedly warned about, but failed to eliminate the risks of harm to children, including R.L., from solitary confinement.

Additional facts which Plaintiffs are presently aware of that Defendants had subjective knowledge of the substantial risk of serious harm: for example, in 2011, a lawsuit was filed against the DJJ Secretary, *J.B., et al. v. Walters, et al.*, Case No. 11-83-RH-WCS (N.D. Fla.), where plaintiffs, a class of children with mental

illness and developmental disabilities, challenged defendants' use of isolation in DJJ's North Florida Youth Development residential facility; in that case, the DJJ Secretary was informed that isolation is contraindicated for adolescents with developmental disabilities, mental illness, and self-harming behavior. The DJJ Secretary and DJJ also received a findings letter on December 1, 2011, from the U.S. Department of Justice Civil Rights Division (DOJ) following its investigation of the North Florida Youth Development Center which concluded that there were unconstitutional conditions of confinement that included Defendants' use of isolation. Defendants have also implemented different policies and policy changes in DJJ residential and non-residential programs concerning the use of solitary confinement.

Defendants also received a grievance from R.L. asking to not be subject to solitary confinement again because of the serious risk of harm from being put in confinement. Plaintiffs' counsel notified Defendants of the substantial risk of serious harm to children subject to solitary confinement pursuant to their policies and practices prior to the filing of this action.

Plaintiff's claims, on behalf of a putative class, under the Eighth and Fourteenth Amendments to the U.S. Constitution include that that Defendants subject her, and similarly situated children, to a substantial risk of serious harm by isolating them for days at a time, with no time limit, in locked cells without meaningful social interaction, environmental stimulation, outdoor recreation, schooling, or access to personal property, for minor misbehavior. For example, Defendants were aware of, but deliberately disregarded the risk of harm to children, such as R.L., who are still developing physically, mentally, and have a pre-existing diagnosed mental health need. Defendants knew of R.L.'s young age, her mental illness, and her risk for self-harm or suicide, but disregarded the substantial risk of serious harm to her and isolated her in solitary confinement. No mental health professional or medical staff adequately, appropriately, or meaningfully evaluated R.L. prior to, during her time in solitary confinement, or after. Defendants subject R.L. to solitary confinement at least three times while in secure detention. This included in approximately September 2019, during one of the periods when Defendants subjected R.L. to solitary confinement, when Plaintiff used an object to cut her forearm. Defendants subjected R.L. to a substantial risk of serious harm by isolating her in confinement. Also, in approximately August 2019, Plaintiff tried to jump from an elevated area in a confinement cell and staff responded to this incident. Plaintiff told DJJ staff that she wanted to get out of confinement or she would jump. Staff's response was to tell Plaintiff something to the effect of get down or you will get pulled down. After Plaintiff got down, DJJ

did not provide any mental health counseling or intervention and continued Plaintiff's isolation in confinement in another cell.

When DJJ isolated R.L. in solitary confinement, the cells were filthy, had human feces on the walls, and were defaced by writing on the wall. DJJ did not allow her a mat or blanket during the day. She was only allowed out of solitary confinement for a few minutes a day to shower after everyone else. Plaintiff had to eat in her cell. The only time that DJJ staff opened the door was to give her food or take her to shower. In confinement, Plaintiff's anxiety became worse and she was depressed. She found it difficult to sleep. She felt upset and trapped, alone, and angry. Plaintiff did not have anything to do; she just sat there or cried. While in confinement, Defendants would not let her socialize with other people. Plaintiff was denied recreation. No staff told Plaintiff how long she would be in confinement or when she would get out.

DJJ policy and practice subjects R.L., and similarly situated children, to isolation in confinement without recreation, education, reading or writing materials, personal property, environmental stimulation, meaningful social interaction, exercise, or basic human needs like a clean cell. The cumulative effect of these conditions and deprivations subjects R.L. to a substantial risk of serious harm to her psychological and physical health in violation of the Eighth and Fourteenth Amendments.

*See* response to Interrogatory No. 28. Plaintiff has answered this Interrogatory to the best of her ability based on the information known to her at this time. Plaintiff has served discovery requests for information which relates to this Interrogatory, but Defendant has not produced this information. Plaintiff will supplement this response, to the extent possible, following receipt and review of further discovery from Defendant.

Based on the information available to Plaintiff through discovery at this time, Plaintiff supplements this response to refer to documents with Bates Nos. MARST80804 - 81669. To the extent that discovery is ongoing and this information is in Defendants' possession and control and has not yet been produced in discovery, Plaintiff will supplement this response as information becomes known through discovery.

A.     What facts do you contend demonstrate that the Defendants knew that its confinement practices and policies created a substantial risk?

**RESPONSE:**

*See* responses to Interrogatories Nos. 28 and 29.

**AMENDED RESPONSE:**

*See* responses to Interrogatories Nos. 28 and 29. Plaintiff has answered this Interrogatory to the best of her ability based on the information known to her at this time. Plaintiff has served discovery requests for information which relates to this Interrogatory, but Defendants have not produced this information. Plaintiff will supplement this response, to the extent possible, following receipt and review of further discovery from Defendants.

**SECOND SUPPLEMENTAL RESPONSE:**

Based on the information available to Plaintiff through discovery at this time, Plaintiff supplements this response to refer to documents with Bates Nos. MARST80804 - 81669.

B.     What facts do you contend demonstrate that the Defendants knew that its confinement practices and policies caused serious harm?

**RESPONSE:**

See responses to Interrogatory Nos. 28 and 29.

**AMENDED RESPONSE:**

*See* responses to Interrogatories Nos. 28 and 29. Plaintiff has answered this Interrogatory to the best of her ability based on the information known to her at this time. Plaintiff has served discovery requests for information which relates to this Interrogatory, but Defendants have not produced this information. Plaintiff will supplement this response, to the extent possible, following receipt and review of further discovery from Defendants.

**SECOND SUPPLEMENTAL RESPONSE:**

Based on the information available to Plaintiff through discovery at this

**Protected Health Information**

**Subject to HIPAA Qualified Protective Order**

time, Plaintiff supplements this response to refer to documents with Bates Nos.
MARST80804 - 81669.


    30.    Define "minor issues" and provide the factual basis for your allegation
in paragraph 81 that Defendants routinely place juveniles in solitary confinement
for "minor issues."

**RESPONSE:**

    Plaintiff objects, in part, to the extent that this request seeks an expert
opinion as discovery is only in the early stages and Plaintiff will provide any
disclosures related to expert testimony under the deadlines and requirements as
stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal
Rules of Civil Procedure. Plaintiff further objects, in part, to the extent that such
materials are protected by the attorney work product doctrine or protected from
disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure. To the
extent that discovery is ongoing and this information is in Defendants' possession
and control and has not yet been produced in discovery, Plaintiff will supplement
this response as information becomes known through discovery. Defendants have
also objected to and refused to produce responses to Plaintiffs' RFPs which seek
information concerning children that have engaged in attempts of self-harm or
suicide in DJJ secure detention centers; therefore, Plaintiffs are unable to fully
respond until those meritless objections are withdrawn and responsive information
is provided. *See* Plaintiffs' discovery dispute letters to Defendants' counsel, dated
May 1, and May 20, 2020, concerning these objections and RFPs.

    To the extent not objected to, Plaintiff responds, in part, that Defendants'
policy and practice is to repeatedly isolate children for days at a time, with no time
limit, in locked cells without meaningful social interaction, environmental
stimulation, outdoor recreation, schooling, or access to personal property, for
minor misbehavior in a practice that experts refer to as "solitary confinement."
Defendants do not use solitary confinement or confinement sparingly or as a last
resort to respond to immediate serious threats of physical harm by children to
themselves or others. Defendants also use solitary confinement contrary to the
stated reasons in Fla. Admin. Code R. 63G-2.022. DJJ uses solitary confinement
for any and no reason. For example, Defendants' policy and practice subjects R.L.
to solitary confinement, repeatedly, without any time limit, to manage her behavior
as a first response to any situation. Defendants subject R.L. to confinement for
reasons including peeling paint off the wall in her cell. Other examples of

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

Defendants' use of solitary confinement for any reason, including minor issues, include where youth talk back to staff, use a computer without authorization during school testing, do not follow staff directions, engage in horseplay, or curse.

**AMENDED RESPONSE:**

Plaintiff objects, in part, to the extent that such materials are protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure and to the extent that this request seeks an expert opinion. Plaintiff will provide any disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time. To the extent that discovery is ongoing and this information is in Defendants' possession and control and has not yet been produced in discovery, Plaintiff will supplement this response as information becomes known through discovery.

Within the narrowed scope of these objections, Plaintiff responds that Defendants' policy and practice is to repeatedly isolate children for days at a time, with no time limit, in locked cells without meaningful social interaction, environmental stimulation, outdoor recreation, schooling, or access to personal property, for minor misbehavior in a practice that experts refer to as "solitary confinement." Defendants do not use solitary confinement or confinement sparingly or as a last resort to respond to immediate serious threats of physical harm by children to themselves or others. Defendants also use solitary confinement contrary to the stated reasons in Fla. Admin. Code R. 63G-2.022. DJJ uses solitary confinement for any and no reason. For example, Defendants' policy and practice subjects R.L. to solitary confinement, repeatedly, without any time limit, to manage her behavior as a first response to any situation. Defendants subject R.L. to confinement for reasons including peeling paint off the wall in her cell. Other examples of Defendants' use of solitary confinement for any reason, including minor issues, include where youth talk back to staff, use a computer without authorization during school testing, do not follow staff directions, engage in horseplay, or curse.

Plaintiff has answered this Interrogatory to the best of her ability based on the information known to her through discovery at this time. Plaintiff has served discovery requests for information which relates to this Interrogatory, but Defendants have not produced this information. Plaintiff will supplement this

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

response, to the extent possible, following receipt and review of further discovery from Defendants.

**SECOND AMENDED/SUPPLEMENTAL RESPONSE:**

To the extent that such materials are protected from disclosure under Rule 26(b)(4) of the Federal Rules of Civil Procedure and to the extent that this request seeks an expert opinion, Plaintiff will provide any required and permissible disclosures related to expert testimony under the deadlines and requirements as stated in the Court's Scheduling Order (ECF 44) and Rule 26(a)(2) of the Federal Rules of Civil Procedure. To the extent that Plaintiffs' experts will provide an opinion that addresses this Interrogatory, Plaintiff will supplement the response at that time. To the extent that discovery is ongoing and this information is in Defendants' possession and control and has not yet been produced in discovery, Plaintiff will supplement this response as information becomes known through discovery.

Defendants' policy and practice is to repeatedly isolate children for days at a time, with no time limit, in locked cells without meaningful social interaction, environmental stimulation, outdoor recreation, schooling, or access to personal property, for minor misbehavior in a practice that experts refer to as "solitary confinement." Defendants do not use solitary confinement or confinement sparingly or as a last resort to respond to immediate serious threats of physical harm by children to themselves or others. Defendants also use solitary confinement contrary to the stated reasons in Fla. Admin. Code R. 63G-2.022. DJJ uses solitary confinement for any and no reason. For example, Defendants' policy and practice subjects R.L. to solitary confinement, repeatedly, without any time limit, to manage her behavior as a first response to any situation. Defendants subject R.L. to confinement for reasons including peeling paint off the wall in her cell. Other examples of Defendants' use of solitary confinement for any reason, including "minor issues," include where youth talk back to staff, use a computer without authorization during school testing, do not follow staff directions, engage in horseplay, or curse, or other behaviors that do not create an immediate threat to safety. For example, see: MARST80214.

Plaintiff has answered this Interrogatory to the best of her ability based on the information known to her through discovery at this time. Plaintiff has served discovery requests for information which relates to this Interrogatory, but Defendants have not produced this information. Plaintiff will supplement this response, to the extent possible, following receipt and review of further discovery

from Defendants. Plaintiff anticipates providing an expert opinion to support this allegation and will supplement the response at that time.

31.    Provide the factual or legal support for your contention that you are qualified to be a representative of the proposed class. Describe each and every way you are typical of the proposed class members.

**RESPONSE:**

Plaintiff objects, in part, to the extent that this request calls for a legal conclusion and is also a misstatement of the law because a class representative is not required to establish that they "are typical of the proposed class members." This Interrogatory is also vague to the extent that it is unclear if Defendants are requesting a response only as to one requirement, typicality, that is required to certify a class under Rule 23(a)(3) of the Federal Rules of Civil Procedure.

To the extent not objected to, Plaintiff responds, in part, only as to the requirement under Fed. R. Civ. P. 23(a)(3) that Plaintiff's claims are typical of those of the putative Plaintiff class. For example, Plaintiff's claims arise from the same policies, practices, or courses of conduct of Defendants' use of solitary confinement; Plaintiff's claims are based on the same theory of law as the classes' claims that Defendants policy and practice regarding solitary confinement constitute cruel and unusual punishment proscribed by the Eighth and Fourteenth Amendments to the United States Constitution and Defendants have been deliberately indifferent to a substantial risk of serious harm; and Plaintiff seeks injunctive and declaratory relief from the same alleged illegal policy and practice of Defendants as the class members.

**AMENDED RESPONSE:**

Plaintiff objects, in part, to the extent that this request calls for a legal conclusion concerning class certification. This Interrogatory is also vague to the extent that it is unclear if Defendants are requesting a response only as to one requirement, typicality, that is required to certify a class under Rule 23(a)(3) of the Federal Rules of Civil Procedure.

Within the narrowed scope of these objections, Plaintiff responds as to the requirement under Fed. R. Civ. P. 23(a)(3) that Plaintiff's claims are typical of those of the putative Plaintiff class. For example, Plaintiff's claims arise from the

**Protected Health Information**
**Subject to HIPAA Qualified Protective Order**

same policies, practices, or courses of conduct of Defendants' use of solitary confinement; Plaintiff's claims are based on the same theory of law as the classes' claims that Defendants policy and practice regarding solitary confinement constitute cruel and unusual punishment proscribed by the Eighth and Fourteenth Amendments to the United States Constitution and Defendants have been deliberately indifferent to a substantial risk of serious harm; and Plaintiff seeks injunctive and declaratory relief from the same alleged illegal policy and practice of Defendants as the class members.

Plaintiff has answered this Interrogatory to the best of her ability based on the information known to her at this time.

**SECOND AMENDED/SUPPLEMENTAL RESPONSE:**

This Interrogatory is vague to the extent that it is unclear if Defendants are requesting a response only as to one requirement, typicality, that is required to certify a class under Rule 23(a)(3) of the Federal Rules of Civil Procedure.

Within the narrowed scope of these objections and interpreting this Interrogatory as inquiring regarding "typicality" only, Plaintiff responds as to the requirement under Fed. R. Civ. P. 23(a)(3) that Plaintiff's claims are typical of those of the putative Plaintiff class. For example, Plaintiff's claims arise from the same policies, practices, or courses of conduct of Defendants' use of solitary confinement; Plaintiff's claims are based on the same theory of law as the classes' claims that Defendants policy and practice regarding solitary confinement constitute cruel and unusual punishment proscribed by the Eighth and Fourteenth Amendments to the United States Constitution and Defendants have been deliberately indifferent to a substantial risk of serious harm; and Plaintiff seeks injunctive and declaratory relief from the same alleged illegal policy and practice of Defendants as the class members.

Plaintiff has answered this Interrogatory to the best of her ability based on the information known to her at this time.