# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

_____

G.H., *et al*.,

              Plaintiffs,

                               Case No.: 4:19-cv-431-RH/MJF

v.

JOSEFINA TAMAYO, *et al*.,

              Defendants.

_____

## PLAINTIFFS' (OPPOSED) MOTION TO COMPEL ENTRY ONTO LAND AND REQUEST FOR EXPEDITED BRIEFING WITH <u>INCORPORATED MEMORANDUM OF LAW</u>

## <u>INTRODUCTION</u>

Defendants Josefina Tamayo and Florida Department of Juvenile Justice (Defendants) improperly seek to obstruct Plaintiffs' merits-based discovery of highly relevant information through detention facility inspections and interviews with youth in custody subject to solitary confinement. This evidence goes to the heart of Plaintiffs' claims of systemic deliberate indifference and disability discrimination and is necessary, in particular, for the completion of Plaintiffs' expert reports currently due on August 24, 2021 (ECF No. 57). Without this evidence, Defendants obtain an unfair advantage in challenging the methodology and reliability of Plaintiffs' expert opinions and Plaintiffs' ability to prove their case

at trial. *See Dang by & through Dang v. Eslinger*, No. 6:14-CV-37-ORL-31TBS, 2015 WL 13655675, at *3, 5 (M.D. Fla. Jan. 20, 2015).

Plaintiffs, G.H. and R.L. hereby respectfully move this Court for an Order under Rule 37 of the Federal Rules of Civil Procedure and N.D. Loc. Rule 26.1 to compel Defendants to: (1) permit Plaintiffs' experts to conduct facility inspections of up to five (5) juvenile detention centers before and after class certification is decided; (2) permit Plaintiffs' experts to observe youth in their normal course of activities during facility inspections; (3) require Defendants to produce facility rosters and DJJ Facesheets[1] for any youth subject to confinement within the time periods previously stipulated to by the parties; and (4) permit Plaintiffs' experts to conduct interviews of consenting youth in any secure juvenile detention center and prohibit Defendants and their representatives from attending or recording these interviews.

Defendants have failed to demonstrate that any burden or expense to them outweighs Plaintiffs' need for this critical discovery. The Court should reject Defendants' meritless objections and allow reasonable and necessary discovery in the interests of the full and fair litigation of this case at trial.

---

[1] The Facesheets are significant because they contain a youth's Department of Juvenile Justice (DJJ) history, mental health needs, suicide risk, and disabilities which are relevant to the risk of harm from solitary confinement.

## FACTUAL BACKGROUND

Plaintiffs challenge Defendants' statewide policy and practice of repeatedly isolating approximately 3,000 children each year for days at a time, with no time limit, in tiny dirty locked cells at 21 Department of Juvenile Justice (DJJ) secure detention centers around the State. ECF No. 2, ¶¶ 4, 51.Through this isolation, Defendants deprive children of basic human needs including meaningful social interaction, environmental stimulation, outdoor recreation, education, and adequate sanitation. *Id.*, ¶¶ 2, 54-57. These deprivations, along with inhumane cell conditions, subject Named Plaintiffs, and putative class members, to a substantial risk of serious harm to their psychological and physical health and safety in violation of the Eighth and Fourteenth Amendments. *Id.*, ¶¶ 53-61, 118-30. Plaintiffs also allege that Defendants discriminate against children with disabilities in their use of isolation in violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. *Id.*,  ¶¶ 96-101, 132-49.

### A.   Rule 34 Facility Inspections with Requested Expert Interviews with Youth

Plaintiffs initially noticed detention facility inspections on April 14, 2020. ECF No. 121, ¶ 4. Defendants delayed inspections for several months based on various objections, some of which were ultimately heard by the Court in November 2020, and while the parties navigated safety concerns related to COVID-19. *See* ECF Nos. 58 and 72 at 3-4.

Defendants objected and refused to allow Plaintiffs' experts to interview any youth unless Plaintiffs' obtained parental/guardian consent and Defendants' attorneys and experts attended and simultaneously video recorded each interview (ECF No. 60 at 32-33). This dispute related to Plaintiffs' Rule 34 Inspection Notice and proposed Stipulation served on May 14, 2020, which provided:

> Plaintiffs' team will be permitted to speak with putative class members who consent to such brief conversations. Defendants, including their experts will stand a reasonable distance away when these conversations take place to allow Plaintiffs' team to speak confidentially with the putative class members.

> After and separate from the inspections of operations, either the same or following day, Defendants will reserve and provide sufficient space for Plaintiffs' team to conduct confidential interviews with Plaintiffs and putative class members. Defendants will provide sufficient staff to escort youth to this space after receiving a list of people Plaintiffs' team would like to interview. Defendants will allow Plaintiffs' team to interview more than one person, but no more than three, at the same time in confidential locations. Defendants (including Defendants' experts) will not be allowed to participate in or listen to these interviews. Such time for privileged communications must be between the hours of 8:00 a.m. and 6:00 p.m.

In their initial response, Defendants' objected to these interviews as follows:

> Defendants object to numbered paragraph 9 of the proposed stipulation allowing Plaintiffs' representatives to speak to juveniles in the facility on the grounds the same is outside the scope of a Rule 34(a)(2) inspection. Juvenile interviews require parental, guardian and/or legal custodian consent, attorney representation and/or a duly noticed deposition in accordance with the Federal Rules of Civil Procedure. Furthermore, an Entry Onto Land under Rule 34 cannot be used as a method to obtain interviews or speak to persons on the land.

Defendants object to numbered paragraph 16 of the proposed stipulation for Plaintiffs to conduct confidential interviews during the inspection of juveniles in the facility. The request for interviews is outside the scope of a Rule 34(a)(2) inspection and juvenile interviews require parental consent, attorney representation and/or a duly noticed deposition in accordance with the Federal Rules of Civil Procedure. The request for unspecified juvenile interviews is also oppressive and burdensome in light of Defendants' security obligations and resources. Should any interview be conducted, after obtaining appropriate consent, Defendants reserve the right to attend and record the interviews and question the youth.

During the parties' numerous discussions about the requested interviews, Defendants persisted in their objections.

Plaintiffs opposed these interview conditions. For example, Plaintiffs' experts had concerns about the negative impacts on building trust and rapport if the interviews were recorded and that children may be chilled from openly discussing their experiences based on fear of reprisal. *See* ECF No. 58-3 at ¶¶ 4-8. Plaintiffs offered to proceed with the inspections without interviews while the Court resolved these disputes, but Defendants refused to do so. Plaintiffs ultimately withdrew this motion based on Defendants' stated intent to appeal an adverse ruling, which would cause substantial delay in the litigation, and their experts' concerns about Defendants' attendance and video recording.

After months of negotiation and litigation, in January 2021, the parties entered into a Stipulation for inspections of three facilities (ECF No. 80). On January 27-29, 2021, Plaintiffs conducted inspections at the Duval, Marion, and

Alachua Regional Juvenile Detention Centers located in DJJ's North Region (ECF

No. 121 at ¶ 4).[2] To avoid further delays, Plaintiffs agreed to Defendants'

prohibition that Plaintiffs' counsel and their experts could not speak to any youth or

staff, but preserved their ability to litigate this dispute (ECF No. 80, ¶ 3(e)).

Before the January 2021 Rule 34 inspections, Defendants produced DJJ

Facesheets that included the contact information for the parents/guardians of

youths who had been subject to solitary confinement. Plaintiffs made a good faith

and diligent effort to gain parental/guardian consent before the inspections based

on the DJJ Facesheets that Defendants provided, but had limited success for

various reasons.

For example, a child's very short length of detention complicated Plaintiffs'

efforts; Plaintiffs had just a few days before an inspection to obtain signed

releases.[3] Some of the information on the Facesheets was stale because children

were already out of custody.[4] Some information was unusable because it was

incorrect, did not relate to a child subject to confinement, or concerned dependent

youth in the custody of the Department of Children and Families. Plaintiffs'

---

[2] DJJ's secure detention centers are divided into three regions: North, Central, and South. *See* http://www.djj.state.fl.us/programs-facilities/detention-centers (last visited on June 7, 2021).
    [3] The timing of the Facesheet disclosures was intended to maximize chances that youth would still be in custody given the short length of detention.
    [4] Plaintiffs' counsel has conducted interviews with youth in custody after this action was filed, but cannot disclose this information to their experts to use to form their opinions because it may waive any of their privileged communications with putative class members and clients.

counsel attempted to contact 35 parents/guardians; only 13 returned a signed release (with some returned following the inspections).

During the January 2021 facility inspections, Defendants prohibited Plaintiffs' experts from not only interviewing youth; they also orchestrated the inspection so that Plaintiffs' experts could barely even *see* the youth. Defendants guided Plaintiffs' team through the facility in an order they predetermined and timed so they were never in areas while children were present. When Plaintiffs' expert asked to observe children during their normal daily activities, he was told the most he could do was "take a quick peek" once through a classroom window.

Following the January inspections, Plaintiffs made discovery requests, using a randomized sample, for additional Facesheets to try to secure parental/guardian consent for expert interviews. Defendants produced the Facesheets, but redacted any parent/guardian contact information and stated they would not provide it. Defendants' refusal to provide this information has made it impossible for Plaintiffs to secure the parental/guardian consent that Defendants require for Plaintiffs' counsel or their experts to interview youth.

On February 12, 2021, Plaintiffs initiated discussions about the next round of facility inspections. Over the following two weeks, the parties conferred about the terms of these inspections, including whether Defendants would agree to inspection of additional facilities in DJJ's South and Central Regions. On March 1,

2021, Plaintiffs' counsel emailed Defendants' counsel about coordinating inspections of the Broward, Dade, and Palm Beach detention centers (in DJJ's South Region) for April 14-16, 2021, before serving a formal notice.

On March 5, 2021, Defendants responded that they would not permit these inspections. They asserted facility inspections were "not critical" to class certification and would revisit the matter only if a class was certified even though discovery is not bifurcated in this case. Defendants offered the Volusia Juvenile Detention Center for inspection because one of the named Plaintiffs had been detained there, but they required the inspection to occur before the class certification deadline of March 30, 2021 (ECF No. 95, ¶ 4).[5] Plaintiffs' experts, who are not located in Florida, were not available on such short notice. On April 5, 2021, Defendants stated they would tentatively allow inspection of possibly up to three additional facilities, but no more and only if a class was certified.

On June 4, 2021, Plaintiffs' counsel confirmed that, even if a class was certified, Defendants would not permit interviews of youth by Plaintiffs' experts unless video recorded and attended by Defendants' counsel and experts. *See* Exhibit (Ex.) 1. On June 7, 2021, Plaintiffs' counsel offered to record their experts' interviews with youth and provide Defendants with the recordings if the Court ordered it after an in camera review. *Id.* Defendants rejected this offer. *Id.*

---

[5] On March 11, 2021, the Court extended the class certification deadline to April 30, 2021. ECF No. 88.

8

Defendants also clarified their position that they would not agree to youth interviews by any of Plaintiffs' experts (mental health or juvenile justice) unless Defendants' experts and their counsel were present and video recording. *Id.* Defendants represented that they may have more objections to these interviews and that they opposed them as not permitted by Rule 34. Plaintiffs served a Notice of Rule 34 Inspection of Land on June 11, 2021, to facilitate judicial resolution of this matter.

Defendants' position about the timing of facility inspections puts Plaintiffs in an impossible and unfair position. If Plaintiffs are forced to wait until after class certification is decided, they will have little to no time to conduct additional inspections and use the information they may gather during these inspections before the August 24, 2021 deadline for Plaintiffs' expert reports. The discovery cutoff of December 17, 2021, also leaves insufficient time for noticing multiple inspections, Defendants serving objections, and the Court resolving those objections. Defendants have contributed to this problem by refusing to work cooperatively to extend the Scheduling Order deadlines at the same time they ask for open-ended extensions to produce voluminous discovery past the parties' June 23, 2021 agreed-upon deadline for this ESI which has been in dispute for over a year (ECF No. 110).

**B.**     **Electronically Stored Information Requested Under Rule 34**

In connection with the facility inspections in January 2021, Defendants

agreed to produce the following electronically stored information (ESI) relevant to

youth in custody who had been subject to solitary confinement:

> (b) Seven (7) business days prior to each scheduled facility inspection, Defendants agree to produce a roster of each child in the secure detention center and will indicate which children have been in confinement at that facility during their current detention period. At this time, Defendants will also produce the DJJ FACE sheets for any children who are in custody at that detention center (this will allow Plaintiffs' counsel to identify any children who have been subject to confinement at another time while in custody).

> (c) Upon arrival at each facility for a scheduled inspection, Defendants will provide Plaintiffs' team with an updated current roster with each child in the secure detention center; this roster will indicate which children have been in confinement at that facility since the previous roster was provided. Defendants will also produce the DJJ FACE sheets for any children who are in custody at that detention center that were not provided two business days prior to the inspection. Copies of these rosters will be made available for Plaintiffs'
> counsel.

> (d) The "rosters" mentioned above will include the youth's name, age, gender, living module, and room/cell number in their living module.

*See* ECF No. 80, ¶¶ 3(b)-(d). Defendants now refuse to produce this information

for any future inspections.

## MEMORANDUM OF LAW

Defendants assert numerous objections to five additional facility inspections, related ESI (i.e., Facesheets and rosters for youth subject to confinement), and youth interviews. Contrary to the purpose of inspections of land, Defendants also refuse to permit Plaintiffs' experts to observe youth in the normal course of detention facility operations. This evidence is necessary for Plaintiffs' experts to form their opinions and for Plaintiffs to prove systemic violations of the Eighth Amendment and disability discrimination at trial. Plaintiffs cannot obtain this critical information through any other discovery method. As explained below, each of Defendants' objections lacks merit and should be rejected by the Court.

## I.     Additional Facility Inspections are Relevant and Necessary to Support Plaintiffs' Burden of Proof at Trial

Defendants are impeding Plaintiffs' ability to meet their burden of proof at trial by interfering with Plaintiffs' evidence-gathering through facility inspections permitted under Rule 34 in three respects. First, Defendants dispute the total number of inspections that may occur and will not permit any further inspections until a class is certified even though discovery is not bifurcated and Plaintiffs' need to conduct merits-based discovery before discovery closes on December 17, 2021, and to support their expert reports due on August 24, 2021. Second, although previously agreed upon, they refuse to produce highly relevant ESI (i.e., rosters and Facesheets) for youth subject to solitary confinement. Third, they will not

permit Plaintiffs' experts to observe youth in the normal course of detention facility operations during inspections. As explained below, the Court should reject these meritless objections.

To prove their Eighth Amendment claims at trial, Plaintiffs must present sufficient evidence that Defendants are deliberately indifferent to a systemic, substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994). "In the class-action context, the plaintiff class must show that it, as a whole, has been subjected to policies and practices that create a substantial risk of serious harm." *Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1192 (M.D. Ala. 2017); *see also Brown v. Plata*, 563 U.S. 493, 506 n.3 (2011) (finding that in a class action alleging inadequate medical care, the court considers systemwide deficiencies as opposed to deficiencies "on any one occasion").

Similarly, for their disability discrimination claims, Plaintiffs "endeavor[] to prove not merely, or even primarily, that their individual rights to particular accommodations under the ADA have been violated," but that Defendants' failure to implement a system to ensure reasonable accommodations results in systemic violations of the ADA for children with disabilities subject to solitary confinement. *Dunn v. Dunn*, 318 F.R.D. 652, 663 (M.D. Ala. 2016).

Plaintiffs, through Rule 34 inspections, will gather relevant evidence of the conditions of confinement at a variety of facilities where children are subject to

solitary confinement to meet their burden of proof regarding Defendants' systemic policies and practices. These conditions include, for example: cell size; condition and maintenance; sanitation; lighting; objects in cells; where children in confinement eat; suicide hazards; programming or property in confinement; youths' ability to communicate or have normal human contact in confinement; staff lines of sight and monitoring of youth in confinement; and how children in confinement interact with mental health, medical, and security staff. Ex. 2 (Plaintiffs' Notice of Rule 34 Inspection); *see*, *e.g.*, *Chunn v. Edge*, No. 20-CV-1590 (RPK), 2020 WL 1872523, at *1 (E.D.N.Y. Apr. 15, 2020).

This evidence is also necessary to rebut Defendants' asserted defenses. For example, Defendants argue that their confinement policy and practice does not expose Plaintiffs, or the putative class members, to a systemic risk of harm or disability discrimination. *See* ECF Nos. 24 and 123-7. Defendants dispute the existence of the conditions and deprivations of basic human needs that Plaintiffs experienced in confinement, or that these conditions are systemic. *See* ECF No. 122 at 7, 9-10, and 13-14. Facility inspections are an important discovery tool for Plaintiffs' experts to have sufficient information to develop their opinions on these issues. *See*, *e.g.*, *Dang*, 2015 WL 13655675, at *3, 5 (compelling inspections of relevant conditions at jail to ensure the plaintiff's expert report and opinion is thorough, reliable, and fully informed).

Courts routinely recognize Rule 34 inspections as a necessary discovery tool for plaintiffs to gather evidence in correctional facility conditions cases.[6] *See*, *e.g.*, *Dang*, 2015 WL 13655675, at *3 (permitting inspection of jail security system and conditions to assist plaintiff's expert to prepare report and help the trier of fact through documenting conditions); *Morales v. Turman*, 59 F.R.D. 157 (E.D. Tex. 1972) (plaintiffs' experts permitted to live with juveniles to determine conditions in systemic challenge to unconstitutional conditions of confinement); *Alvarez v. LaRose*, No.Case No.: 3:20-cv-00782-DMS-AHG, 2020 WL 5594908, at *7 (S.D. Cal. Sept. 18, 2020) (allowing site inspection "to obtain objective evidence of the conditions of confinement"); *Chunn*, 2020 WL 1872523, at *1 (allowing an inspection of the Metro Detention Center as it "is the best way for petitioners' expert to gain an accurate understanding of the conditions there"); *United States v. Erie Cty., NY*, No. 09-CV-849S, 2010 WL 986505, at *2 (W.D.N.Y. Mar. 17, 2010) (allowing inspection of a holding center and noting that Rule 34 "is to be liberally construed"); *Coleman v. Schwarzenegger*, No. C01-1351 TEH, 2007 WL 3231706, at *1 (E.D. Cal. Oct. 30, 2007) (allowing site inspections of ten prisons); *Jones'El v. Berge*, 164 F. Supp. 2d 1096, 1102-03 (W.D. Wis. 2001) (expert toured the entire physical plant at "super-maximum prison"); *Madrid v. Gomez*, 889 F.

---

[6] By agreeing to facility inspections in January 2021, and entering into a Stipulation (ECF No. 80) about the terms of the inspections, Defendants have waived any argument that facility inspections are not authorized under the Federal Rules of Civil Procedure.

Supp. 1146, 1160-61 (N.D. Cal. 1995) (experts spent several days touring a secure prison housing unit, conducting prisoner interviews, and meeting with correctional staff).[7]

Defendants are effectively obstructing Plaintiffs from completing their expert reports and merits-based discovery by baselessly prohibiting any inspections until the class is certified. This case has not been bifurcated between class certification and the merits, nor is there any stay of discovery pending resolution of the pending motion for class certification. *See*, *e.g.*, *Harvard v. Inch*, No. 4:19CV212-MW/CAS, 2020 WL 701990, at *3 (N.D. Fla. Feb. 7, 2020) (declining to limit class-based or merits discovery pending ruling on class certification where the parties agreed not to bifurcate discovery); *Eisenband v. Starion Energy, Inc.*, Civil No. 17-80195-CIV-Marra/Matthewman, 2017 WL 4685266, at *1 (S.D. Fla. Oct. 17, 2017) (overruling objection to classwide discovery prior to certification where discovery was not bifurcated).

Given the current August 24, 2021 deadline for Plaintiffs' expert reports and the December 17, 2021 discovery cutoff (ECF No. 57), Plaintiffs would be unfairly prejudiced by further unjustified delay of these inspections. Defendants' refusal to allow these inspections to proceed until after class certification effectively makes it

---

[7] Courts also permit facility inspections in litigation involving minors in other types of institutional reform cases. *See*, *e.g.*, *Kenny A. v. Perdue*, No. 1:02-cv-1686-MHS, 2004 WL 7335091, at *2 (N.D. Ga. Dec. 3, 2004); *Wyatt v. Hanan*, No. Civ. A. No. 3195–N., 1995 WL 699616 (M.D. Ala. 1995); *K.L. v. Edgar*, 945 F. Supp. 167 (N.D. Ill. 1996); *N.Y. State Ass'n of Retarded Children, Inc. v. Carey*, 706 F.2d 956, 960-61 (2d Cir. 1983).

impossible for Plaintiffs' experts to fully address merits-based issues in their

reports and extremely difficult, if not impossible, to complete merits-based

discovery before the cut-off date. Even assuming *arguendo* that the Court ruled on

Plaintiffs' Motion for Class Certification in July, at best, one inspection might be

noticed in sufficient time for Plaintiffs' experts to include it in their reports. This

also assumes that Defendants would not serve objections to the notice which has

not been the case so far.

## II.   Five Additional Inspections and Related ESI are Proportionate in this Systemic Case and Pose No Undue Burden to Defendant

In a conclusory manner, Defendants object to five additional facility

inspections as not proportionate to the needs of this case.[8] Given the liberal

standard for relevant discovery, the Court should reject their position. *See Adkins v.*

*Christie*, 488 F.3d 1324, 1331 (11th Cir. 2007).

The relevant factors to the Court's determination of the proportionality of

this discovery weigh in Plaintiffs' favor. These include: the importance of the

issues at stake in the action, the parties' relative access to relevant information, the

parties' resources, the importance of the discovery in resolving the issues, and

whether the burden or expense of the proposed discovery outweighs its likely

benefit. *See In re 3M Combat Arms Earplug Products Liab. Litig.*, No. 3:19-MD-

---

[8] Even if the Court denies Plaintiffs' Motion for Class Certification, this discovery remains necessary to prove the systemic claims in this action. Plaintiffs may also renew their motion to certify a class at a later time in this case.

2885, 2019 WL 5787747, at *2 (N.D. Fla. Nov. 6, 2019) (quoting Fed. R. Civ. P.

26(b)(1)); *see also Quiterio v. QBE Speciality Ins. Co.*, No. 16-cv-895-T-35JSS,

2019 WL 5390865, at *1 (M.D. Fla. Apr. 18, 2019) (granting motion to compel

Rule 34 inspection to assist expert in finalizing opinions about claim). In

evaluating a request to inspect land under Rule 34(a)(2) of the Federal Rules of

Civil Procedure, a court considers the relevance of the inspection and balances the

value of the information sought with the burden of the proposed intrusion. *See*

*Dang*, 2015 WL 13655675, at *2; *see also Carey*, 706 F.2d at 961.

### A.   Importance of Additional Facility Inspections

The serious nature of Plaintiffs' claims demonstrates the importance of these

inspections and weighs in their favor in balancing proportionality and burden. This

case arises from Defendants' statewide policy and practice of subjecting thousands

of children, often repeatedly, to solitary confinement in dirty, small cells and

depriving them of normal human contact, recreation, and environmental

stimulation for hours and days at a time. ECF 2, ¶¶ 2-3. As a result of these

policies and practices, children suffer a substantial risk of serious harm that

manifests for many into psychological stress, trauma, post-traumatic stress

disorder, and acts of self-harm and attempted suicide. ECF No. 2, ¶¶ 58, 62-72.

Given the high stakes for the risk to children's well-being and safety, Defendants

should not be permitted to arbitrarily impede Plaintiffs' ability to use a well-

established discovery tool of facility inspections.

These inspections are also important to gather evidence to rebut Defendants' defenses. For example, Defendants claim their facilities, policies, and practices are consistent with national standards and their use of solitary confinement poses no risk of harm. *See* ECF Nos. 123-2 at 2, 123-6, and 123-7 at 10-14. They dispute the conditions that they subject children to, for example, sensory deprivation, inadequate sanitation, and a lack of normal human contact and programming. ECF No. 122 at 13-14. They claim they use interventions such as "soft" rooms and implemented a new behavior management plan to de-escalate behavior. ECF No. 123-2 at 10-15. They assert mental health staff is on-site and available to youth at any time. ECF No. 123-2 at 10.

Other facts demonstrate the importance of these inspections. DJJ has three regions, but, thus far, Defendants have permitted Plaintiffs' experts to inspect three facilities in only one region (the North). Defendants claim they have made changes to their solitary confinement policy and practice, such as developing pilot programs using behavior specialists and technicians at certain detention centers; these facilities are included among the additional five Plaintiffs seek to inspect. ECF No. 123-2 at 13-14. However, Defendants refuse to permit Plaintiffs' experts to observe those programs in operation.

**B.    Any Burden to Defendants is Outweighed by the Benefit to Plaintiffs**

Any burden resulting from the requested inspections is outweighed by the benefit of the discovery to prove the merits of Plaintiffs' case and the prejudice that will result if it is denied. "[T]he burden of showing that the requested information is not relevant to the issues in the case is on the party resisting discovery." *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.,* No. 01-0392-CIV-GOLD, 2001 WL 34079319, at *2 (S.D. Fla. Nov. 1, 2001). They have failed to describe or establish this burden in sufficient detail as required.

In discussions about future facility inspections, Defendants made vague conclusory objections about the burden on staff. The staffing required to facilitate the inspections is not unduly burdensome. Plaintiffs have judiciously and strategically requested to inspect only five additional facilities based on a diversity of factors such as youth demographics, size, staffing, frequency of use of isolation, programming, and DJJ region. This would bring the total number of facilities inspected by their experts to eight (roughly 38% of DJJ's 21 detention centers). Given the size of DJJ's detention system, which admits over 11,000 children each year, this is a reasonable request. *See Coleman*, 2007 WL 3231706, at *1 (permitting site inspections at 10 prisons to assess the impact of overcrowding on the delivery of constitutionally adequate medical and mental health care in California prisons); *Braggs v. Dunn*, No. 2:14CV601-MHT, 2020 WL 5909086, at

*2 (M.D. Ala. Oct. 1, 2020) (granting request to inspect four prisons to defend against motion to terminate remedial orders and noting additional inspections would be preferable and "may even be necessary"). The Court should reject Defendants' objection for these reasons.

### C. Defendants Have Absolute Control of Access to This Discovery

The parties' relative access to this information also weighs in Plaintiffs' favor. Defendants control access to the facilities and the children. Plaintiffs cannot visually observe and document the conditions in secure juvenile detention facilities without Defendants' agreement. While Defendants have provided some written discovery,[9] "document review is not a viable substitute for site inspections, as one must determine whether the documents reflect reality." *Braggs*, 2020 WL 5909086, at *2. Site inspections offer the best and least burdensome means for Plaintiffs' experts to observe the actual conditions of confinement and how facility staff implement the written policies on confinement and behavior management. *See*, *e.g.*, *Dang*, 2015 WL 13655675, at *5 (recognizing Plaintiffs' "substantial interest" in expert conducting Rule 34 inspection of county jail in conditions case); *Kenny A.*, 2004 WL 7335091, at *2; *Morales*, 59 F.R.D. at 158. Defendants insist that their facilities meet constitutional standards, but refuse to allow Plaintiffs to observe them.

---

[9] Defendants have objected to producing documents about the facility-level conditions and practices, claiming their policies are only "from the top." *See* ECF No. 83 at 9, 25-26.

**D.      Plaintiffs' Request for ESI Related to Facility Inspections is Proportionate to the Needs of this Case**

The proportionality factors also weigh in favor of the Court ordering Defendants to produce DJJ Facesheets and rosters for youth subject to confinement as part of Rule 34 inspections. This discovery is the only way that Plaintiffs can identify youth subject to confinement who are currently in custody for their experts to interview. This ESI also provides Plaintiffs' experts with important background about identified disabilities, suicide risk, vulnerabilities, and DJJ history; Defendants claim they cannot identify children with disabilities through any other discovery source. The parties agreed to this in lieu of on-site inspection of records to minimize the impact on Defendants' staff. Production of these documents is neither unduly burdensome nor disproportionate given the size of the proposed class and subclasses. ECF No. 111 at 20-22.

Defendants agreed to, and did, produce this discovery for three facility inspections in January 2021. Their about-face is unjustified and lacks merit.

**III.     Plaintiffs' Experts Should be Permitted to Conduct Interviews with Youth Who Consent Without Defendants Attending or Video Recording**

As part of Rule 34 facility inspections, Plaintiffs seek expert interviews with children who consent to an initial brief discussion and a longer interview. Defendants assert these interviews should not occur, or, alternatively, must be conducted in the presence of Defendants' counsel and their experts—while video

recorded— and only with parental/guardian consent. The Court should reject these meritless arguments.

### A.  Expert Interviews with Incarcerated Individuals are Relevant Discovery Permitted Under the Federal Rules of Civil Procedure

Defendants dispute that these interviews are permitted under Rule 34. This argument fails for several reasons.

In institutional reform cases, courts routinely permit Plaintiffs' experts to have access to persons in custody, including juveniles, to conduct confidential interviews before and after a class is certified. *See*, *e.g.*, *Kenny A.*, 2004 WL 7335091, at *2 (permitting plaintiffs' expert to conduct private interviews of willing foster children residents in state-run facilities in conditions case); *Morales*, 59 F.R.D. at 159 (plaintiffs' experts permitted to live with juveniles to determine the quality of life under confinement conditions in systemic challenge to unconstitutional conditions of confinement for juveniles); *Wyatt v. Hanan*, 1995 WL 699616, at *1 (expert permitted to tour a secure adolescent center and observe classes outside the presence of defendant's counsel without staff escort and to interview classroom teachers and students).[10]

---

[10]  Many other courts have found plaintiffs' experts can conduct interviews with persons who are detained and consent. *See e.g.*, *N.Y. State Ass'n of Retarded Children, Inc. v.Carey*, 706 F.2d 956, 960 (2d Cir. 1983) (plaintiffs and their experts permitted to conduct inspection, including interviews of class members and staff members outside the presence of defendants' counsel and representatives); *Jones'El v. Berge*, 164 F. Supp. 2d 1096, 1102-03 (W.D. Wis. 2001) (expert toured super-maximum prison and conducted interviews with prisoners in a lawyer's interview room); *Madrid v. Gomez*, 889 F. Supp. 1146, 1160 (N.D. Cal. 1995) (expert inspection included conducting prisoner interviews); *K.L. v. Edgar*, 945 F. Supp. 167, 168-69 (N.D. Ill. 1996) (plaintiffs' experts granted wide access to institution for persons with

These interviews are authorized by the broad scope of relevant discovery allowed in federal cases permitted under Rules 34 and 26 of the Federal Rules of Civil Procedure. *See Morales*, 59 F.R.D. at 158 (ordering plaintiffs' experts to live with and study youth's experiences in conditions of confinement challenge based on finding "[i]n complex litigation of widespread concern, a court must make every effort to enhance the fact-finding process available to counsel for both sides."). The Court and parties are also required to construe and administer the Rules to secure a just, speedy, and inexpensive discovery process. Fed. R. Civ. P. 1. Taken together, these requirements support broad discovery that is reasonable and necessary to allow Plaintiffs' experts to interview those in custody experiencing the actual conditions they inspect considering the important civil rights at stake. *See Morales*, 59 F.R.D. at 158; *Dang*, 2015 WL 13655675, at *5.

This need is even more pronounced in the context of incarcerated juveniles who are under absolute control of the State. *See*, *e.g.*, *V.W. v. Conway*, 236 F. Supp. 3d 554, 568-71, 584 (N.D.N.Y. 2017) (noting court's reliance on experts' facility inspections and interviews in systemic challenge to use of solitary confinement for juveniles). Whether they are in secure detention or post-adjudication programs, Plaintiffs' experts can only speak to them while in Defendants' custody only if Defendants allow it. They remain in secure detention

---

mental illness, including resident interviews). Defendants have not provided any legal authority to support their position because these interviews are commonly permitted.

for an average of 14 days[11] and are sent to post-adjudication programs for several months to over a year. Thus, if Plaintiffs are forced to wait until they are out of Defendants' custody, they will not be able to speak with children before the expert report deadline, the close of discovery, and while they are clearly class members because they are in custody.

Defendants cannot demonstrate that any of the Rule 26 limitations should prohibit these interviews. The parties have no dispute about the relevance of youth interviews to the claims in this litigation. This discovery is not cumulative or duplicative: the direct experience of children in secure detention, their explanation about the impacts of Defendants' use of solitary confinement, and the youth's firsthand perspectives can <u>only</u> be obtained directly from youth. Plaintiffs' counsel cannot interview youth and provide our experts with this information; this jeopardizes their attorney-client privilege and attorney work product. Any burden to Defendants' staff standing outside a closed door for security purposes while Plaintiffs' experts conduct interviews is minimal. Defendants cannot establish that the discovery of this relevant evidence is outweighed by the importance to Plaintiffs' case.

---

[11] *See* Department of Juvenile Justice Comprehensive Accountability Report for Detention available at http://www.djj.state.fl.us/docs/car-reports/final-(2018-19-car)-detention.pdf?sfvrsn=2 (last visited June 27, 2021).

**B.      The Court Should Permit Plaintiffs' Expert Interviews
          Based on a Youth's Consent**

Defendants assert these interviews should not occur, but, alternatively argue

that if permitted, the interviews can only occur with parental/guardian consent.

However, in response to the Court's request, Defendants were "not able to find any

federal statutory or case law directly on point requiring parental consent for legal

consultation or for mental health evaluations." *See* ECF No. 71 at 2-3. The Court

should reject their position on this basis alone.

The difficulty of accessing children in or out of DJJ custody supports the

need for Plaintiffs' experts to speak with them during facility inspections with their

consent, especially to evaluate the impact, if any, of Defendants' asserted changes

to their confinement policy and practice in November 2020. Using the Facesheets

produced by Defendants as part of the January 2021 inspections, Plaintiffs' counsel

made diligent efforts, but had extremely limited success at obtaining the consent of

any parent/guardian for even counsel to interview their child.

Defendants now refuse to produce the Facesheets in connection with facility

inspections which makes this task impossible. Even if Plaintiffs could feasibly

obtain consent, this would not be a random sampling because responses would

depend on factors such as valid contact information and whether parents/guardians

choose to return Plaintiffs' phone calls. Plaintiffs should not be foreclosed from

this inherently objective and empirically reliable method to obtain highly relevant

information to support their deliberate indifference and disability discrimination claims.

When this matter was previously before the Court, Defendants asserted that parental/guardian consent is required based on a mischaracterization of these interviews as medical examinations or "psychoanalysis." ECF 60 at 5-7. Defendants gloss over that Plaintiffs' experts include a non-clinician who will opine about juvenile corrections. Also, all of Plaintiffs' experts, including the adolescent psychiatrist, plan to ask children factual questions about their experiences with solitary confinement, the conditions in confinement, and whether they were impacted by being in confinement. These are not forensic evaluations or psychiatric evaluations to, for example, diagnose or determine a treatment plan. Instead, the interviews are one component of fact gathering, coupled with document review (e.g., policies, data, and youth records) and visual inspections of the conditions, to aid Plaintiffs' experts in assessing the overall risk of harm to children in isolation.

Defendants' objection is also contrary to long-standing DJJ policy and practice. For years, Plaintiffs' counsel, and their representatives, have interviewed hundreds of youth in DJJ secure detention centers throughout the State based on DJJ's policy and practice of a youth (not their parent or guardian) providing consent for legal assistance. Prior to and during this litigation, Plaintiffs' counsel

obtained only the consent of the minors to conduct confidential interviews; the same authorization should apply to Plaintiffs' agents (i.e., their experts). *See* ECF No. 58-1, ¶¶ 3-4, 7-8; *see also* Fla. Admin. Code R. 63E-7.100(6).[12] Defendants now seek to impose a baseless obstacle which is clearly only connected to the inspections of their facilities by Plaintiffs' experts as part of litigation. The Court should reject this position.

Defendants should not be permitted to impose invalid barriers to relevant discovery that also unreasonably interfere with a child's right to access the courts. The putative class members in DJJ custody should be permitted to speak with Plaintiffs' counsel (and their expert representatives) to challenge the unconstitutional conditions of their confinement. *See*, *e.g.*, *John L. v. Adams*, 969 F.2d 228, 233-34 (6th Cir. 1992); *Morgan v. Sproat*, 432 F. Supp. 1130, 1158 (S.D. Miss. 1977). Children's access to Plaintiffs' counsel and the courts in this matter is even more compelling after a class is certified and counsel represents the class. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981). Defendants have not made a "clear record and specific findings" about particular abuses to establish good cause to burden the class members' First Amendment rights in this manner. *Id.*

---

[12] Defendants' now assert that this rule only relates to residential programs, but prior to and even after this litigation began, DJJ has permitted attorneys to meet with juveniles in custody based on DJJ's policy which authorizes "[a] licensed attorney who represents the youth on a previous or pending case, **or an attorney who has written authorization from the youth** or the youth's parent or legal guardian **to provide legal consultation or representation for the youth**." Fla. Admin. Code R. 63E-7.100(6) (emphases added).

Defendants' claim that parental/guardian consent is needed here is erroneous for other reasons. In related legal contexts, it is the child, not parents or guardians, who provide consent. For example, DJJ policy allows a child the right to consent to counsel in all stages of delinquency proceedings. *See* § 985.033, Fla. Stat. (2020). Children in dependent proceedings also have the right to consent to an attorney ad litem to represent their interests. *See* Fla. R. Juv. P. 8.217(a) and § 39.4085(20), Fla. Stat.

Defendants' position is also undermined by the extensive discovery about putative class members they produced in this action without parental or guardian consent, including thousands of unredacted Incident Reports and Confinement Reports involving youth in custody at detention centers from January 1, 2015, to the present. These reports contain, *inter alia*, the minor's name, their Juvenile Justice Identification Number, staff narratives about the child, whether the child received any mental health services, and detailed staff descriptions about the incident. Some reports include information about children's hospitalizations and medical conditions.[13] Defendants also agreed that Plaintiffs could request (and they would provide) the DJJ, medical, and mental health records of any child in secure detention, without parental or guardian consent, following an inspection.

---

[13] As stated in the HIPAA Qualified Protective Order, "The parties may not assert a discovery objection based on the fact that the documents or information sought contain PHI protected by HIPAA, unless the PHI falls outside the scope of this Order." ECF No. 29, ¶ 4. Any protected health information obtained by Plaintiffs' experts through youth interviews falls within the scope of the Order. Any reliance on HIPAA by Defendants to object to the interviews of youth should, therefore, be disregarded.

Defendants acknowledged that parental or guardian consent is not required to disclose these youth records because this information is subject to disclosure and protected under the Confidentiality Order (ECF No. 36) and HIPAA Qualified Protective Order (ECF No. 29) in this case.[14]

Defendants' position about the consent required for Plaintiffs' expert interviews is unsubstantiated. It unduly burdens and obstructs the truth seeking purpose of discovery. *See*, *e.g.*, *Malautea v. Suzuki Motor Co.,* 987 F.2d 1536, 1546 (11th Cir. 1993). Defendants should not be permitted to maintain the position that no parental or guardian consent is necessary when the information represents their version about the confinement of children, but is required when Plaintiffs' experts want to talk to these same children about their version of events in detention (rather than staff's).

### C.   Defendants' Recording and Attendance of Plaintiffs' Expert Interviews is Legally Unsupported and Unfairly Prejudices Plaintiffs and Putative Class Members

Defendants also assert that they should attend and video record the interviews. Defendants' position lacks support and merit. However, to avoid unnecessary litigation, Plaintiffs counsel offered to record their expert interviews and maintain the recordings so that, should the need arise, Defendants could seek

---

[14] The information from youth interviews by Plaintiffs' experts would be similarly protected under both of these orders.

the information and Plaintiffs would provide it to the Court for in camera review. Defendants rejected this offer.

In support of their position, the only authority Defendants rely on relates to cases about forensic or psychiatric examinations or evaluations. Since Plaintiffs' experts are not performing these types of evaluations or exams, these cases are inapposite. Even in the Rule 35 context of mental or physical examinations of parties where mental or physical condition is in issue, the prevailing view among federal courts is to exclude third-parties and recording equipment from such exams. *See Holland v. United States*, 182 F.R.D. 493, 495 (D. S.C. 1998) (collecting cases). Similar arguments by Defendants' counsel and their experts for recording and attendance of expert interviews were rejected as lacking merit in a systemic challenge to unconstitutional conditions of confinement for juveniles detained in the Polk County Jail. *See* ECF No. 58-4. This Court should also do so here.

Defendants' insistence on both recording and attending these interviews brushes aside the credible fear of reprisal that children and adults experience in correctional settings when discussing how those who hold power over their liberty have mistreated them. *See*, *e.g.*, *Erie County*, 2010 WL 986505, at *3 (finding that involving defendants' employees and their attorneys in expert interviews of incarcerated adults "would likely chill their willingness to speak to investigators or

speak candidly. This, of course, defeats the whole purpose of speaking to inmates in the first place."). Children have unique vulnerabilities and are still developing socially, cognitively, and psychologically. ECF 22 at 6-7. They are sensitive to actual or perceived pressure or intimidation. *See* ECF No. 58-3 at ¶ 4.

Any chilling effect on children's disclosures will inhibit Plaintiffs' experts from reaching accurate and complete opinions. *Id.* at ¶¶ 4-8; *see Mantel v. Carnival Corp.*, No. 09-CV-20042, 2009 WL 3247225, at *1 (S.D. Fla. Oct. 9, 2009) (noting substantial support finding third-party presence will "contaminate" the exam); *see also Osgood v. Discount Auto Parts, LLC*, No. 3:13-CV-1364, 2014 WL 212323, at *7 (M.D. Fla. Jan. 21, 2014) (rejecting recording of interview for purpose of "preserving an accurate record of the dialogue" during Rule 35 examination); *Tomlin v. Holecek*, 150 F.R.D. 628, 631-32 (D. Minn. 1993) (rejecting recording and third-party presence because of potential risk to Rule 35 evaluation integrity). Children must feel comfortable enough to speak openly about their experiences so that Plaintiffs' experts can form full and accurate opinions about how DJJ's challenged policy and practice subjects children to a risk of harm.[15] *See* ECF No. 58-3 at ¶¶ 4-7; *see also Alonso v. Sch. Bd. of Collier County, Fla.*, No. 2:16-cv-379-FtM-38MRM, 2018 WL 9617238, at *3 (M.D. Fla. Nov. 20,

---

[15] Defendants assert that an article by Plaintiffs' expert, Dr. Louis Kraus, supports their position. *See* ECF No. 60 at 18-20. It does not. This article merely explains some of the pros and cons of recording forensic interviews which are not what Plaintiffs' psychiatric expert is doing by interviewing youth in detention. Dr. Kraus is clear that the cons are present here. ECF No. 58-3, ¶¶ 4-7.

2018) (denying plaintiffs' request to make an audio-visual recording of expert inspections of children's classrooms). It is the exceptionally rare child who will have the courage to speak openly about the conditions they allege are overly harshly and punitive in the presence of the very people, and their recording device, they believe control such conditions and prosecution of their criminal cases.

Defendants also have less intrusive means to obtain "the facts or data" that Plaintiffs' experts consider in forming their opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii). Defendants and their experts can review any discoverable interview notes of Plaintiffs' experts. They can review a child's records requested by Plaintiffs following an inspection and interviews. They can depose Plaintiffs' experts, inquire, and cross-examine about the interviews. Rule 26 does not require more.

Plaintiffs have proposed a simple solution to address Defendants' desire to "preserve the record" and fears they will not be able to locate the children that Plaintiffs' experts interview. ECF No. 60 at 16-17. Plaintiffs can record the interviews and provide the recordings if the Court determines after in camera review that Defendants cannot obtain this information for their case through, *inter alia*, other less intrusive, oppressive, or harassing means. Fed. R. Civ. P. 26(c). Defendants rejected this reasonable compromise. Defendants' position is

unsupported and misguided. The Court should not permit this unreasonable and unnecessary discovery obstacle.[16]

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion to Compel and issue an Order to: (1) permit Plaintiffs' experts to conduct facility inspections of up to five juvenile detention centers before and after class certification is decided; (2) permit Plaintiffs' experts to observe youth in their normal course of activities during facility inspections; (3) require Defendants to produce facility rosters and DJJ Facesheets for any youth subject to confinement within the time periods previously agreed upon by the parties; and (4) permit Plaintiffs' experts to conduct interviews of youth in the putative or certified class in any secure juvenile detention center based on youth's consent and prohibit Defendants, including their representatives, from attending or recording these interviews. In the alternative, if the Court finds the interviews should be recorded, Plaintiffs should be permitted to retain the recording, conduct the interview without the presence of Defendants' experts or counsel, and Defendants shall be required to demonstrate the disclosure of this information is warranted based on an in camera review. Based on the current Scheduling Order deadlines, Plaintiffs

---

[16] If the Court does not permit these interviews to be conducted by Plaintiffs' experts using a reliable method, Defendants should be precluded from: (a) refusing to produce youth records which will need to be the primary source of obtaining children's experiences and (b) any attacks on this basis to the methodology of Plaintiffs' experts.

respectfully request that the Court conduct briefing and argument on this matter in an expedited manner.

## Certificate of Attorney Conference

Pursuant to N.D. Fla. Local Rule 7.1(B) and (C), Plaintiffs' counsel has conferred numerous times with counsel for Defendants by phone and correspondence about this matter. The parties were unable to reach agreement as to the issues in this motion.

## Certificate of Word Limit

Pursuant to N.D. Local Rule 7.1(F), the undersigned counsel hereby certify that this motion contains 7,333 words.

Dated: June 29, 2021                     Respectfully submitted,

By:      s/ Andrea Costello
Andrea Costello
Fla. Bar No. 0532991
Christopher M. Jones
Fla. Bar No. 994642
Rachel Ortiz
Fla. Bar No. 0083842
Florida Legal Services
122 E. Colonial Drive, Suite 100
Orlando, FL 32801
Telephone: (407) 801-0332 (direct)
andrea@floridalegal.org
christopher@floridalegal.org
rachel.ortiz@floridalegal.org

Kelly Knapp
Fla. Bar No. 1011018
Leonard J. Laurenceau

Fla. Bar No. 106987
Southern Poverty Law Center
4770 Biscayne Blvd., Suite 760
Miami, FL 33137
Telephone: (786) 347-2056
kelly.knapp@splcenter.org
leo.laurenceau@splcenter.org

Dante P. Trevisani
Fla. Bar No. 72912
Laura A. Ferro
Fla. Bar No. 1015841
Sam Thypin-Bermeo
Fla. Bar No. 1019777
Marcel A. Lilavois, Jr.
Fla. Bar No. 1016175
Kara Wallis (pro hac vice)
Florida Justice Institute, Inc.
2915 Biscayne Blvd., Ste 300-21
Miami, FL 33137
Telephone: (305) 358-2081
dtrevisani@floridajusticeinstitute.org
lferro@floridajusticeinstitute.org
sthypin-bermeo@floridajusticeinstitute.org
Mlilavois@floridajusticeinstitute.org
kwallis@floridajusticeinstitute.org

**Attorneys for Plaintiffs**