## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

_____

G.H., *et al.*,

                Plaintiffs,

                                   Case No.: 4:19-cv-431-RH-MJF

v.

JOSEFINA TAMAYO, *et al.*,

                Defendants.

_____

## <u>PLAINTIFFS' SECOND MOTION TO COMPEL DISCOVERY</u>

## <u>INTRODUCTION</u>

Plaintiffs, and the putative class, seek to compel highly relevant and critical discovery to prove their systemic Eighth Amendment claim: video footage from inside cells that depict what happens when a child is isolated in solitary confinement. This is the best evidence that objectively demonstrates the conditions, deprivations of basic human needs, and risk of harm that children experience while in solitary confinement. After initially agreeing to produce the video footage, Defendants reversed course by withholding it based on untimely and waived objections. As explained below, even if considered, their objections lack merit. *See infra* Sec. I-II.

This highly relevant evidence is necessary for Plaintiffs' experts to complete their reports (due by November 24, 2021) because Plaintiffs' experts have not been permitted to interview children in Department of Juvenile Justice (DJJ) custody about their experiences in solitary confinement until, and if, a class is certified. *See* ECF No. 151.

This video footage also provides the best means for Plaintiffs' experts to observe the manner in which Defendants use confinement. During the first four detention facility inspections, there were no youth in confinement in any secure detention center even though, in some cases, observation log sheets outside certain cells indicated that youth had been in confinement just before Plaintiffs' expert team arrived.[1] Given the severe limitations that Defendants have imposed during facility inspections, the requested in-cell confinement video footage is the only method by which Plaintiffs and their experts, and the factfinder, can observe and evaluate first-hand the actual conditions in solitary confinement at facilities around the state. *See Rhodes v. Chapman*, 452 U.S. 337, 352 ("The question before us is . . . whether the *actual conditions* of confinement at [the prison] are cruel and unusual.") (emphasis added); *see also id.* at 362 (Brennan, J., concurring) ("The first aspect of judicial decisionmaking in this area is scrutiny of the actual

---

[1] Defendants held one child in confinement during the fifth facility inspection of the Orange Regional Juvenile Detention Center on October 12, 2021, but, under the Court's Order, Plaintiffs' expert team could not speak with this youth or inspect the conditions in his cell.

conditions under challenge.").

This evidence is important in other respects. For example, it may show whether children experience distress, are at risk of harm, or experience any harm while in confinement. It may also show whether there is a penological justification for Defendants to continue confinement for hours or days even when it is documented that a child is resting, sleeping, sitting quietly, or eating in their cell. The conditions in confinement cells and the continued existence of an immediate threat to safety or security to justify confinement go to the core of Plaintiffs' claims.

Under Rule 37 of the Federal Rules of Civil Procedure, Plaintiffs respectfully request that the Court grant this motion to compel and require Defendants to produce the retained video footage within five (5) days, to produce any similar video footage of children isolated in solitary confinement cells that Plaintiffs request going forward, and award reasonable attorney's fees and costs because Defendants' untimely discovery objections and shifting positions concerning the production of this highly relevant discovery are not substantially justified.

## FACTUAL BACKGROUND

### A.    Summary of Claims

Plaintiffs, and a putative class of over 3,000 children, challenge Department

of Juvenile Justice's (DJJ) Acting Secretary, Josefina Tamayo, and DJJ's (collectively "Defendants") statewide policy and practice of using solitary confinement in 21 state-operated DJJ secure detention centers. ECF No. 22 at 2-3. Defendants' statewide policy and practice is to isolate children in solitary confinement – often the same child repeatedly – for hours or days at a time, in locked cells alone, and deprive them of meaningful social interaction, environmental stimulation, outdoor recreation, educational instruction, access to personal property, or adequate sanitation. ECF 22 at 2-3.

Through this policy and practice, Defendants subject Plaintiffs and the putative class, who are still developing socially, psychologically, and physiologically, to a substantial risk of serious harm to their health and safety by depriving them of basic human needs and deplorable conditions in violation of the Eighth and Fourteenth Amendments. *Id.* Plaintiffs also allege that Defendants discriminate against children with disabilities based on the same policies and practices by failing to have a system to provide reasonable accommodations for those subject to confinement in violation of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* (ADA) and Section 504 of the Rehabilitation Act (RA), 29 U.S.C. § 794, *et seq.* ECF No. 2, ¶¶ 96-99.

### B.     In-Cell Confinement Video Footage

To prove their claims, Plaintiffs requested the production of video footage

(including any audio) from inside cells Defendants specifically designate for solitary confinement. These are not the cells in secure detention where youth regularly live or sleep.

This request stems from Plaintiffs' Request for Production (RFP) No. 159 to former Defendant Marstiller (now Acting DJJ Secretary Josefina Tamayo), which seeks: "[a]ll video and audio preserved by agreement between the parties in this action." Specifically, the video footage at issue here is "[v]ideo, photos, and audio footage taken of the inside of any cells or rooms used for confinement" which was preserved by the parties' agreement based on RFP No. 159 to Defendant Marstiller.

Defendant's original response to this RFP was: "The parties have not yet reached an agreement; any documents responsive to this request will be produced at a later date if an agreement regarding preservation is reached by parties." The parties reached such an agreement as to the video footage at issue. Defendants never made objections to the production of the confinement video footage in their initial or supplemental responses for this discovery.

Pursuant to the parties' agreement, the confinement video footage at issue was preserved for incidents of solitary confinement in September, October, November, and December 2020, and February 2021, as follows:

a.      "Video footage" includes both video and audio footage;

b.      Video footage is from any camera in a designated confinement

room at each secure detention center that has such rooms, as listed in the updated chart of "Confinement Rooms/Cameras - Department of Juvenile Justice" which Defendants provided on March 24, 2020;

c.      Every two months, Plaintiffs will request video footage from inside the designated confinement room(s) when in use for confinement, plus 5 minutes before and after confinement, and the hallway or public area outside the confinement room for a 72-hour period for three detention centers. The detention centers will be limited to the six facilities that use designated confinement rooms; Plaintiffs will not request footage from sleeping cells.

d.      Plaintiffs will notify Defendants of their request within seven (7) days after the week for which Plaintiffs seek video footage has concluded. Defendants have agreed to preserve, but not produce, the in-cell footage pending resolution of this motion.

e.      The parties can revisit the agreement.

After the parties agreed to begin production of the two types of confinement video footage (i.e., in-cell and adjacent to the confinement cells), Defendants' counsel sent an email raising concerns, for the first time, about "videotaping the children in their sleeping quarters without the consent of their guardian. This is where they change clothes, go to the bathroom, etc." Defendants' counsel wanted to "research videotaping children in their rooms, or confinement rooms, where they sleep and go to the bathroom." Defendants never raised these issues during the preceding months of discussions about the confinement video footage, nor had they objected on these grounds in their response to this RFP.

After Defendants made these untimely objections and refused to produce the

video footage, the parties exchanged legal authority in support of their positions to try to resolve this dispute. In this correspondence, Plaintiffs noted there was a comprehensive Confidentiality Order in place to protect this evidence and even offered to amend it, if necessary, so that video footage could only be reviewed by Plaintiffs' counsel, their office staff, and Plaintiffs' experts. Plaintiffs also offered to blur any views of a child in a confinement cell if they were undressed or using the toilet. Defendants declined these offers and refused to produce the video footage from inside the confinement cells under any terms. Defendants agreed to retain the in-cell confinement video footage requested by Plaintiffs until the matter could be resolved by the Court and have done so.

While conducting facility inspections, Plaintiffs' team and Defendants' counsel viewed live video footage in secure detention center master control rooms. *See* ECF No. 80 at 5-6. The live video feed contained a black shape that blocked the toilet area from the camera in cells used for confinement. When asked about this during facility inspections, Defendants' counsel stated that this video redaction relates to requirements under the Prison Rape Elimination Act. This information makes Defendants' argument about youth captured on video going to the bathroom in a confinement cell incorrect.

From September 2020 to January 2021, Plaintiffs made requests for preservation of certain in-cell footage and production of confinement hallway

video footage. Defendants confirmed that they preserved the requested in-cell confinement video footage. Plaintiffs intend to make limited future requests for this video footage because it is relevant to show the conditions for youth in confinement before and after Defendants revised their confinement policy and practice in September 2019 and October 2020.

## MEMORANDUM

Defendants cannot establish any legal basis to withhold the relevant video footage showing what occurs when a child is in solitary confinement. Defendants have made untimely and meritless objections about detainees' privacy and Fourth Amendment rights that are waived. Defendants cannot overcome that the Confidentiality Order in this action adequately protects this information. The Court should reject their arguments and compel the production of this important discovery.

### I. Defendants' Untimely Objections to Producing the Confinement Cell Video Footage Are Waived

The law is clear that untimely discovery objections are waived. *See* Fed. R. Civ. P. 34(b)(2)(A); *see also Pitts v. Francis*, 5:07cv169/RS/EMT, 2008 WL 2229524, at *2 (N.D. Fla. May 28, 2008) ("[W]hen a party fails to timely object to interrogatories, production requests, or other discovery efforts, the objections are deemed waived."); *Harvard v. Inch*, CASE NO.: 4:19cv212-MW/CAS, 2020 WL 701990, at *3 (N.D. Fla. Feb. 7, 2020) (finding untimely objections waived). This

is the case even if a party had a proper objection to a production request, but it was not timely made. *See U.S. v. Wilkins*, 2017 WL 4182342, at *2 (M.D. Fla. Sept. 21, 2017).

Defendants waived any objections to producing the confinement cell video footage when they failed to serve timely objections, agreed to retain and produce the video, and waited months after the parties negotiated the scope of this evidence to object for the first time. The Court should and can overrule Defendants' objections and grant this motion on this basis alone.

## II. The Confidentiality Order Sufficiently Protects the Confinement Cell Video Footage

Plaintiffs do not dispute that the in-cell confinement video footage should be designated confidential under the Confidentiality Order in this case. The Confidentiality Order provides ample protection for this type of discovery and safeguards this information through a limited disclosure to Plaintiffs' counsel, experts, and staff to the extent necessary to prosecute this action. ECF No. 36 at ¶¶ 9(a)-(g). Confidential discovery must be filed under seal if either party relies on it. *Id*. at ¶¶ (e)-(g). Defendants cannot explain why they have produced similar sensitive information about children in their custody as part of this litigation by designating it confidential, but will not do so here under identical protections. This is precisely the type of discovery that the parties meant to protect under the Confidentiality Order.

If the Court finds an additional layer of protection is needed for this evidence, Plaintiffs remain willing to take additional steps to protect the interests of Plaintiffs and the putative class. For example, the in-cell confinement video footage could be subject to even more limited confidentiality to only be seen by Plaintiffs' counsel and experts. Defendants refused this reasonable offer.

### III.    Defendants' Privacy and Fourth Amendment Objections Lack Merit

Defendants assert that the confinement cell video footage cannot be disclosed because detainees have a general expectation of privacy in their living cells, maintain their Fourth Amendment rights, and the only exception for the disclosure of this video footage would be for valid security reasons. The Court should reject each assertion as explained below.

Defendants cannot establish that the production of the confinement cell video footage, which DJJ took for a legitimate penological purpose (e.g., institutional safety and security), would constitute a violation of privacy or cruel and unusual punishment under the Eighth Amendment. To prove such violations, Defendants would have to establish that disclosure of the video footage constitutes a circumstance where corrections staff force a detainee to be exposed <u>and</u> engage in some additional offensive conduct that has no legitimate penological purpose. *See*, *e.g.*, *Fortner v. Thomas*, 983 F.2d 1024, 1027 (11th Cir. 1993) (stating violation of privacy where male prisoners claimed that female officers solicited

them to "masturbate and otherwise exhibit their genitals for the female officers' viewing."); *Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006) (privacy violated where male prisoner alleged that a female officer solicited him to masturbate for her viewing.); *Nesbitt v. Fla.*, No. 5:05CV98/LAC/EMT, 2006 WL 1653602 (N.D. Fla. June 9, 2006) (a general lack of privacy in a shower and female guards inviting female inmates to view male inmates in the nude fails to violate bodily privacy). Defendants cannot make such a showing here.

Defendants' untimely objections about youths' privacy also misrepresents the facts. Counsels' observations of the live video feed from inside youth's cells during inspections had a blacked-out image over the toilet area in a cell. Defendants' other stated concern that youth will be viewed changing clothes or in a state of undress are exaggerated and untrue. For example, Plaintiffs are not requesting video footage from the children's assigned cells where they live. Youth leave their confinement cell to take a shower and change clothes while in a shower area; they do not do this in a confinement cell. Also, if, as Defendants assert, they use confinement only briefly to address immediate safety threats, then this video footage should not show a youth in a state of undress. *See* ECF No. 122 at 5-6, 8-9.

Defendants' objection based on the application of Fourth Amendment rights in this instance is entirely misplaced. This is not a search or a seizure of one's person or property by a government actor that implicates Fourth Amendment

rights. *See*, *e.g.*, *Bell v. Wolfish*, 441 U.S. 520, 556–57 (1979) (holding the Fourth

Amendment rights of detainees are not violated through body cavity searches

following visitation). It is well established that detainees have no reasonable

expectation of privacy in their cells that entitles them to Fourth Amendment

protection against unreasonable searches while in custody. *See Florence v. Board*

*of Chosen Freeholders of County of Burlington*, 132 S.Ct. 1510, 1514 (2012)

(holding that intake strip searches of jail arrestees going into the general population

did not require reasonable suspicion); *Hudson v. Palmer*, 468 U.S. 517, 527-28,

530 (1984) (finding a "right of privacy in traditional Fourth Amendment terms is

fundamentally incompatible with the close and continual surveillance of inmates

and their cells required to ensure institutional security and internal order.");

*Johnson v. Warden*, 492 F. App'x. 60, 62 (11th Cir. 2012) (finding no Fourth

Amendment violation for cell search because there is no reasonable expectation of

privacy in one's prison cell). The Fourth Amendment does not apply here, nor does

it preclude production of the confinement video footage under the Confidentiality

Order.

Defendants do not dispute the relevance of this discovery, nor can they

prove a violation of putative class members' Fourth Amendment or limited privacy

rights if it is disclosed under the Confidentiality Order. It is patently unfair to allow

Defendants to assert that children face no risk of harm in confinement without

allowing Plaintiffs, and the factfinder, access to evidence that can directly rebut Defendants' assertion. The confinement cell video footage is highly relevant to the conditions of confinement challenged by Plaintiffs and the putative class members in this case. *See*, *e.g*., *Johnston v. Boyd*, CIVIL ACTION NO. 1:16-CV-3305-LMM-JSA, 2018 WL 11251653, at *3 (N.D. Ga. June 19, 2018) (compelling defendants to produce any audio and/or video from cell related to allegation of use of force at jail in that location); *Harvard v. Inch*, Case No.: 4:19cv212-MW/CAS, 2020 WL 5649635, at *2 (denying motion for protective order to prevent disclosure of requested video depicting conditions in solitary confinement in Florida's prisons). The Court should compel Defendants to produce it.

When the parties conferred about this issue, Defendants cited the following cases in support of their position: *U.S. v Cohen*, 796 F. 2d 20 (2d Cir. 1986), *Cotterman v. Creel*, 2015 WL 7003425 (N.D. Fla. Oct. 19, 2015) and *McCoy v State*, 639 So. 2d 163 (Fla. 1st DCA 1994). For the reasons explained above, these cases are inapposite because they implicate Fourth Amendment search and seizure rights not at issue here and, in doing so, address specific facts where cell searches were done without a legitimate penological purpose. No such cell searches or seizures of detainees' property are being performed here.

## IV. Sanctions Are Appropriate Because Defendant's Positions Are Not Substantially Justified

Under Federal Rule of Civil Procedure 37(a)(5)(A) and (B), the court

"must" order the party that loses a discovery motion or the party's attorney or both to pay the opposing party's reasonable expenses, including attorney's fees, with three exceptions. First, a moving party cannot recover expenses if the party filed the motion before attempting in good faith to obtain the discovery without court action. Second, an award is improper if the losing party's position was "substantially justified." Third, an award is improper if "other circumstances make an award of expenses unjust." Unless one of these conditions is met, an award of expenses is "mandatory." *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1162 (11th Cir. 1993) (citing *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1019 (5th Cir. Unit A June 1981)).[2] A position is "substantially justified" if it results from a "genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citations, quotation marks, and brackets omitted); *Devaney*, 989 F.2d at 1163.

Defendants' position concerning the confinement cell video footage discovery was not substantially justified. Defendants made untimely objections after agreeing to produce this information. Defendants' unnecessary and improper obstruction of the discovery process in this instance was not a "genuine dispute."

---

[2] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

Defendants' belated objections have, once again, caused unnecessary delay in this action. The Court should award costs, including attorney's fees, associated with the parties' conferrals about this dispute and this motion.

## Certificate of Attorney Conference

Pursuant to N.D. Fla. Local Rule 7.1(B) and (C), Plaintiffs' counsel has conferred with counsel for Defendants by phone and correspondence about this matter. Defendants oppose this motion.

## Certificate of Word Limit

Pursuant to N.D. Local Rule 7.1(F), the undersigned counsel hereby certify that this motion contains 3,214 words.

Dated: October 15, 2021                    Respectfully submitted,

By: _____s/ Andrea Costello_____
Andrea Costello
Fla. Bar No. 0532991
Christopher M. Jones
Fla. Bar No. 994642
Rachel Ortiz
Fla. Bar No. 0083842
Florida Legal Services
122 E. Colonial Drive, Suite 100
Orlando, FL 32801
Telephone: (407) 801-0332 (direct)
andrea@floridalegal.org
christopher@floridalegal.org
rachel.ortiz@floridalegal.org

Kelly Knapp
Fla. Bar No. 1011018
Leonard J. Laurenceau

Fla. Bar No. 106987
Southern Poverty Law Center
4770 Biscayne Blvd., Suite 760
Miami, FL 33137
Telephone: (786) 347-2056
kelly.knapp@splcenter.org
leo.laurenceau@splcenter.org

Dante P. Trevisani
Fla. Bar No. 72912
Laura A. Ferro
Fla. Bar No. 1015841
Sam Thypin-Bermeo
Fla. Bar No. 1019777
Marcel A. Lilavois, Jr.
Fla. Bar No. 1016175
Kara Wallis (pro hac vice)
Florida Justice Institute, Inc.
PO Box 370747
Miami, FL 33137
Telephone: (305) 358-2081
dtrevisani@floridajusticeinstitute.org
lferro@floridajusticeinstitute.org
sthypin-bermeo@floridajusticeinstitute.org
Mlilavois@floridajusticeinstitute.org
kwallis@floridajusticeinstitute.org

**Attorneys for Plaintiffs**