# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

G.H. et al,

    Plaintiffs,

v.                                                 CASE NO. 4:19cv431-RH-MJF

JOSEFINA TAMAYO et al.,

    Defendants.

_____/

## ORDER CERTIFYING A CLASS AND SUBCLASS

This case presents a challenge to the Florida Department of Juvenile Justice's implementation of its policies governing solitary confinement of juvenile offenders. The two named plaintiffs are children who were committed to the Department's custody and repeatedly placed in solitary confinement. They have moved to represent a class of children who are or will be placed in solitary confinement and to represent a subclass of such children who have disabilities as defined in the Americans with Disabilities Act. This order certifies the class and subclass.

## I. The Parties

The plaintiff GH is a boy, age 15, who has been diagnosed with attention deficit hyperactivity disorder, mood disorder, and post-traumatic stress disorder. The defendant RL is a girl, age 15, who has been diagnosed with bipolar disorder, post-traumatic stress disorder, major depressive disorder, conduct disorder, and intermittent explosive and shizoaffective disorder. Both plaintiffs have been placed in detention centers and, while there, repeatedly placed in solitary confinement. The plaintiffs assert staff and mental-health professionals were inattentive during their periods of solitary confinement and that they attempted self-destructive behaviors. RL says there was "old feces" on the wall during one of her periods of solitary confinement.

The defendants are the Department and its acting secretary in her official capacity. For convenience, when discussing the litigation or the defense positions, this order often refers to the Department, without also referring to the acting secretary.

## II. The Merits and the Motion

On the merits, the plaintiffs assert the Department places children in solitary confinement unnecessarily, including for minor transgressions that could best be handled in other ways, and that the conditions of solitary confinement are unconstitutionally harsh. The plaintiffs say that in placing children with disabilities

in confinement, the Department fails to take account of—and thus fails to reasonably accommodate—their disabilities.

The Department mischaracterizes the plaintiffs' position as an attack on all solitary confinement—an attack that, if advanced at all, is not a fair description of the plaintiffs' overall position.

In any event, the issue now before the court is not whether the plaintiffs will prevail on the merits but whether a class and subclass should be certified. On the certification issue, the Department meets itself going and coming, first asserting that its solitary-confinement policy complies with prevailing professional standards and is constitutional across the board, but then asserting, in effect, that it has no across-the-board policy and that instead any placement of a child in solitary confinement is an ad hoc decision based on the child's individual circumstances.

The Department argues with considerable force that solitary confinement is not per se unconstitutional. Surely sometimes, for some period, under some conditions, a child who presents a risk to others can be held in isolation. Just as surely, though, solitary confinement is not per se constitutional in all circumstances and under all conditions. Used without a sufficient basis, or under unjustifiably harsh conditions, solitary confinement can be unconstitutional. Thus, for example, the Department has offered no explanation for placing a child in solitary confinement with old feces on the wall.

Occasional, unconstitutional departures from constitutionally acceptable policies do not a class action make. One hopes that feces on the wall is an example. But a defendant's pattern of unconstitutional actions is not immune from class treatment just because the defendant ostensibly has in place a policy that, if followed, would pass constitutional muster. Were it otherwise, the defendants, not the plaintiffs, would have prevailed in the school cases and other class actions challenging racial discrimination in the 1960s and 1970s—cases that brought about the desegregation of the South and were perhaps this circuit's jurisdictional predecessor's finest hour.

The Department's effort to recharacterize the plaintiffs' position on the merits falls short and, in any event, has only limited significance for class certification. Indeed, if this case in fact presented only a per se attack on all solitary confinement, the plaintiffs would easily prevail on class certification—only to lose on the merits.

### III. Class Certification

Before certifying a class, a court must conduct a "rigorous analysis" under Federal Rule of Civil Procedure 23. *See, e.g.*, *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (quoting *Gen.*

*Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). But the rule "grants court no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). The factual record, as opposed to "sheer speculation," must demonstrate that each Rule 23 requirement has been met. *Vega*, 564 F.3d at 1267. The class must satisfy all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b*). See, e.g., Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997).

The plaintiffs, as the parties seeking to certify a class, have the burden to show the Rule 23 prerequisites. *Vega*, 564 F.3d at 1265. This means the plaintiffs must establish all four Rule 23(a) elements, commonly referred to as "numerosity, commonality, typicality, and adequacy of representation." *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1190 (11th Cir. 2009) (*quoting Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187-88 (11th Cir. 2003)).

The plaintiffs also must establish at least one of the 23(b) elements. Here the plaintiffs invoke the 23(b)(2) element: "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

The Department apparently asserts the plaintiffs must also show that a class action is necessary—that, as a practical matter, the same result could not be achieved by a named plaintiff's individual action.

This order addresses each of these matters in turn.

**A. Rule 23(a)**

**1. Numerosity**

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[W]hile there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). "[A] plaintiff need not show the precise number of members in the class." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983).

The Department's own data show that it placed between 2,720 and 3,853 children in solitary confinement each year from 2014 to 2020. This is easily enough. Joinder of this many individuals is impracticable even for a static class—a class whose members are fixed and unchanging. Joinder is all the more impracticable when, as here, the class is fluid, when "the juveniles may by law be incarcerated for varying lengths of time, the [detention] population is constantly in flux, and the proposed class includes future members whose identities are

unknown." *Hughes v. Judd*, No. 8:12-CV-568-T-23MAP, 2013WL 1821077, at *22 (M.D. Fla. Mar. 27, 2013).

To be sure, the plaintiffs have not proven that all—or even any—of these individuals were *unconstitutionally* placed in solitary confinement. But parties seeking class certification need not establish at the outset that they will ultimately prevail on the merits. It is enough that the plaintiffs have a substantial claim that the Department's custom, if not its ostensible policy, is to place children in isolation unnecessarily and to subject them to unconstitutional conditions. If the plaintiffs' view of constitutional law ultimately wins out—it might or might not—the Department's method for deciding whether to place a child in solitary confinement will change for all these thousands of children, as will the conditions of their confinement.

The same is true for the many children with disabilities who are placed in solitary confinement. The plaintiffs of course have not shown the precise number of children in Department facilities who have disabilities as defined in the Americans with Disabilities Act. But the Department itself has said that "[o]ver 65% of the youth in the Department's care have a mental illness or substance abuse issue." ECF No. 114 at 21 n.20. The Department would not have said it that way if all or even a substantial majority of those children had only a substance-abuse issue. And while some children who are in Department facilities and have mental

illnesses may not meet the ADA's disability definition, most surely do. There is no realistic possibility—none—that of the thousands of children placed in solitary confinement each year, fewer than 40 have disabilities.

The plaintiffs' discovery requests addressing this issue apparently remain outstanding. If it turns out, when the Department provides the relevant information, that the inference reasonably drawn from the current record is incorrect—that the number of children with disabilities placed in solitary confinement is insufficient to support class treatment—the subclass can be decertified. That is unlikely.

### 2. Commonality

Commonality means "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The action "must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). A common issue must be "capable of classwide resolution" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "What matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (emphasis in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

The plaintiffs challenge practices that are consistently applied to children in Department facilities across the state. It is undoubtedly true, as the Department asserts, that children are placed in solitary confinement for different reasons and, if properly placed there at all, can properly be kept there for different periods. But the plaintiffs challenge the Department's standard for placing children in solitary, not just the standard's application to each individual. The plaintiffs say the standard itself is flawed. This is a contention that raises common issues and can be answered one way or the other for the class as a whole.

The plaintiffs also challenge the conditions of solitary confinement—conditions that are quite consistent statewide. The plaintiffs describe the challenged conditions this way:

> a lack of environmental stimulation; lack of normal human contact; no access to recreation and exercise; inadequate sanitation; leaving children in locked cells for hours or days with nothing to do; only briefly allowing children out of solitary confinement for a few minutes each day to shower; requiring children to eat all their meals alone in their cells next to a toilet; removal of personal property; no school instruction; and only requiring mental health services after 42-hours in isolation.

ECF No. 114 at 25. The question whether requiring a child to eat next to a toilet is unconstitutional is a common question that can be answered one way or the other for the entire class—the very paradigm of a common question. The same is true for some of the other questions.

The Department does not deny that most of these conditions are the same for all the proposed class members. But the Department says the challenged conditions are not unconstitutional—in effect, that a class should not be certified because the plaintiffs will lose on the merits. For the assertion that the challenged conditions are not unconstitutional, the Department relies primarily on cases involving adult facilities, including some that were properly litigated as class actions.

One of the plaintiffs' primary contentions is that children are different, in part because their brains are still developing and thus more susceptible to the adverse effects of isolation. This is again a common issue appropriate for class treatment.

The disability subclass also involves common questions of law and fact. Among other things, the plaintiffs challenge the Department's failure to have in place a system for accommodating disabilities of children placed in solitary confinement. The Department has not separately addressed commonality for the subclass.

In sum, the case presents common questions of law and fact—questions susceptible to common answers in a properly managed class action.

### 3. Typicality

The typicality element requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.

Civ. P. 23(a)(3). The plaintiffs must "possess the same interest and suffer the same injury as the class members." *Dukes*, 564 U.S. at 348-49 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

The plaintiffs have met this requirement. They were placed repeatedly in solitary confinement, and they have disabilities. Their claims and those of the class and subclass members arise from the same practices and seek the same remedies. The defendants say the plaintiffs' claims are not typical because they were placed in solitary confinement for legitimate reasons and for short periods. But this again misunderstands the plaintiffs' claim. The plaintiffs challenge the process for placing individuals in solitary confinement and the conditions of confinement once there. The challenged process and conditions were the same for the plaintiffs as for the class members.

### 4. Adequacy of representation

The final Rule 23(a) requirement is that the named plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This encompasses two separate inquiries: whether any substantial conflict of interest exists between the named plaintiffs and the class, and whether the named plaintiffs will adequately prosecute the action. *See, e.g.*, *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

The plaintiffs have again met this requirement. No conflict is evident between the named plaintiffs and the class members; they all have the same interest in a constitutionally acceptable process for determining whether to place a child in solitary confinement and in avoiding unconstitutional conditions when there. The Department says other children in Department facilities have an interest in placing dangerous children in solitary, but nobody has an interest in placing the wrong children in solitary or in imposing unconstitutional conditions on those who are there. And the possibility that class members' interests may conflict with the interests of individuals who are not class members is not part of the adequacy analysis.

The plaintiffs are represented by attorneys with substantial experience in civil rights and prisoner litigation and in complex class actions. The plaintiffs and their attorneys will adequately represent the class.

**B. Rule 23(b)**

Rule 23(b)(2) allows a class action when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Here the plaintiffs seek only injunctive and corresponding declaratory relief. This is the very paradigm of a proper 23(b)(2) class.

### C. Necessity

The Department says a class action can go forward only if necessary—only if an individual action could not, as a practical matter, produce the requested relief. The assertion fails on both the law and the facts.

Rule 23 does not refer to necessity. Even so, class treatment adds a layer of complexity to any litigation. This order assumes that when class treatment would serve no purpose, a court can properly choose not to certify a class. *See, e.g.*, *United Farmworkers of Fla. Hous. Project, Inc. v. City of Delray Beach*, 493 F.2d 799, 812 (5th Cir. 1974). This does not mean, though, that a class can be certified only if necessary.

Under Rule 23(b)(3), which is not involved in this case, a class can be certified only when a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." If necessity were a class-action prerequisite, this provision would be superfluous, because a class could be certified only if there was no other available method for fairly and efficiently adjudicating the controversy. This counsels against imposing necessity as a non-rule prerequisite to certification. *See, e.g.*, Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174-79 (2012) (discussing the surplusage canon).

More importantly, the Department's position on necessity, if adopted, would render Rule 23(b)(2) a dead letter. This is so because in every case otherwise appropriate for class certification under Rule 23(b)(2), the defendant could announce its willingness to abide any injunction that might later be entered, thus purportedly rendering class treatment unnecessary. The assertion would be as persuasive in any such case as in the case at bar—making class certification, in the Department's view, improper. That is simply not the law.

In any event, even if necessity was a prerequisite to class certification, it would make no difference here. An individual action could not, as a practical matter, produce the result the plaintiffs hope to obtain for themselves and the class. In actions challenging state action as unconstitutional, Florida officials have asserted more than once that an injunction entered by a district court in favor of the individual plaintiffs runs in favor only of the individual plaintiffs—that the officials remain free, in dealing with others, to continue the conduct held unconstitutional. With this history, it is by no means certain that the Department would promptly recognize and follow, in its treatment of others, any order entered in favor of the individual plaintiffs in this action.

In sum, a district court might have discretion to deny certification when class treatment is unnecessary. Here, though, class treatment is not unnecessary, and in any event, the better exercise of any such discretion is to certify a class.

## IV. Conclusion

For these reasons,

IT IS ORDERED:

1. The motion to certify a class and subclass, ECF Nos. 111 and 114, is granted.

2. A class is certified consisting of children who are or will be in solitary confinement in a Florida Department of Juvenile Justice detention facility.

3. A subclass is certified consisting of children who are or will be in solitary confinement in a Florida Department of Juvenile Justice detention facility who have disabilities as defined in the Americans with Disabilities Act.

4. The named plaintiffs GH and RL are class representatives.

5. The plaintiffs' current attorneys of record are class counsel.

SO ORDERED on October 22, 2021.

s/Robert L. Hinkle
United States District Judge
