IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

G.H. and R.L.,

    Plaintiffs,

v.                                            CASE NO. 4:19cv431-RH-MJF

DEPARTMENT OF JUVENILE
JUSTICE and SECRETARY OF
THE DEPARTMENT OF
JUVENILE JUSTICE,

    Defendants.

_____/

## ORDER DENYING SUMMARY JUDGMENT AND DECERTIFYING THE CLASS AND SUBCLASS

    This case presents a challenge to the Florida Department of Juvenile Justice's placement of juvenile offenders in solitary confinement. The two named plaintiffs are children who were committed to Department secure detention facilities and repeatedly placed in solitary confinement. They represent a class of children who are or will be placed in solitary confinement and a subclass of such children who have disabilities as defined in the Americans with Disabilities Act. The defendants are the Department and its Secretary.

The defendants have moved for summary judgment. On the motion, disputes in the evidence must be resolved, and all reasonable inferences from the evidence must be drawn, in favor of the plaintiffs. To prevail, the defendants must show that, when the facts are so viewed, they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A summary-judgment motion cannot be used to resolve in the moving party's favor a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

The treatment at issue is isolation of a child from the general population, typically in a separate room, where the child's only interaction is with staff or medical personnel. The Department refers to this as "behavioral confinement" or simply "confinement," but all children in secure detention facilities are, to that extent, confined, and they are there because of their prior behavior. On its face, "behavioral confinement" could be used to refer to all children in secure facilities. It is of course understandable that the Department would use "behavioral confinement" in its operations and even in its filings; "solitary confinement" has a pejorative connotation because of the term's historical association with unacceptable, even unconstitutional treatment of adults as well as children. Still, "solitary confinement" is a more accurate description of the kind of placement at issue in this case. This order uses that term.

The defendants are correct that placement of a child in solitary confinement is not always unconstitutional. *See Sheley v. Dugger*, 833 F.2d 1420, 1428-29 (11th Cir. 1987); *see also Gates v. Collier*, 501 F.2d 1291, 1304 (5th Cir. 1974). And although the plaintiffs disagree, the record establishes that the Department has adopted policies that, when conscientiously followed, pass constitutional muster. The policies limit the reasons for which a child may be placed in solitary confinement, the treatment and monitoring of children while there, and the duration of any single placement.

Thus, for example, the policies allow placement of a child in solitary only when the child's "behavior imminently and substantially threatens the physical safety of others or compromises security." *See* Facility Operating Procedure 3.03, ECF No. 240-1 at 16. There must be frequent checks on the child, including every five minutes during the first hour, and a supervisor must conduct a review within the first two hours and every three hours thereafter. *Id.* A child must be removed from solitary as soon as the child is no longer a threat to the safety of others or security. *Id.* at 17. The placement can continue past 24 hours only if the child has met with the superintendent and a mental-health counselor and only if the regional director (or the director's designee) agrees that the child remains a safety or security threat. *Id.* at 17-18. The placement can never exceed 48 hours. *Id.* at 18.

The Eighth and Fourteenth Amendments apply to placements of inmates or detainees in solitary confinement. *See, e.g.*, *Sheley*, 833 F.2d at 1428-30; *Bass v. Perrin*, 170 F.3d 1312, 1316 (11th Cir. 1999). Compliance with the Department's policies does not necessarily establish that any given placement is constitutional. *See, e.g.*, *Sheley*, 833 F.2d at 1428-30 (explaining that the use of solitary confinement is not unconstitutional but remanding and requiring the district court to examine the conditions an individual prisoner was subjected to, including the length of time he was in solitary confinement); *Quintanilla v. Bryson*, 730 F. App'x 738 (11th Cir. .2018) (same). But even if, as the plaintiffs assert, fewer or shorter placements or placements under different conditions would be better, that does not mean the current policies are constitutionally deficient. They are not.

In asserting the contrary, the plaintiffs complain that the policies do not include adequate procedures addressing multiple placements of the same child and do not include a hard stop on the cumulative time a child may be kept in solitary confinement over multiple placements. Keeping a child in solitary too long, either in a single placement or over multiple placements, may indeed be unconstitutional, but a state has no constitutional obligation to adopt additional procedures of the kind the plaintiffs advocate, or to adopt a one-size-fits-all hard stop.

That the Department's policies are not unconstitutional does not mean the defendants are entitled to summary judgment. *See Sheley*, 833 F.2d at 1428-30.

The record includes substantial evidence that the policies are not always followed. Thus, for example, a practice at one facility is to declare a child's placement in solitary confinement ended at 24 hours but to immediately put the child back into solitary confinement and restart the clock, circumventing the limits on an extended placement. *See* Antozzi Dep., ECF No. 215-1 at 103-109; *see also* Fosler Dep., ECF No. 218-1 at 144. The record also includes substantial evidence of substandard conditions, including, for example, testimony that some children were put in dirty cells, some with feces on the wall. *See* G.H. Dep. 46; R.L. Decl., ECF No. 116-1 at 3 ¶ 6; D.M. Dep. 11; & I.Y. Dep. 38-39; *see also* ECF No. 240-18 at 6. The evidence is disputed, and there is no evidence the worst of these conditions were common, but it is evidence that would support a finding that some children have been subjected to unconstitutional conditions.

    The analysis for the subclass of children with disabilities is the same. The subclass asserts a claim under the Americans with Disabilities Act and Rehabilitation Act. Briefly placing a child with a disability in solitary confinement when the child poses a safety or security risk is not always a violation of the statutes. This is so even if the child's disability relates to mental health. And while the Department must comply with the statutes, the record does not support the plaintiffs' claim that the Department must establish a separate, ADA-specific procedure for addressing placements in advance. If the Department has violated the

statutes, it is because of its failure to accommodate an individual child's disability based on the child's individual circumstances—a failure despite, not because of, the Department's policies.

The bottom line: on this record, when genuine factual disputes are resolved in the plaintiffs' favor, it cannot be said that the named plaintiffs or some class members have not been subjected to unconstitutional placements in solitary confinement, or even placements in violation of the ADA and Rehabilitation Act. This order thus denies the summary-judgment motion.

Even so, the question whether the named plaintiffs or class members have been subjected to unconstitutional placements or statutory violations turns on far more individualized circumstances than the claims originally advanced by the plaintiffs. It is clear enough that a challenge to the constitutionality of solitary confinement across the board is susceptible to class treatment. The same is true for a challenge to the Department's policies or their failure to have a hard stop for cumulative time in solitary. Now, though, the question is whether individuals were held too long based on their individual circumstances, or whether the conditions in which they were held were constitutionally deficient.

The record includes many examples of the differing treatment of class members in solitary confinement. The amount of time kept in solitary varied substantially. *Compare* G.H. Dep. 51 (six days in confinement) *with* R.L. Decl.,

ECF No. 116-1 at 3 ¶ 5 (confinements were five to eight hours). Some children were checked on; some were not. *Compare* A.S. Dep. 26 & 34 (stating A.S. was not checked on) *with* D.M. Dep. 33-34 (officers and mental health checked on D.M.) & Duval facility video set, ECF No. 240-15 (cell and hall videos showing child consistently checked on by staff). Some were confined in dirty rooms; some were not. *Compare* G.H. Decl., ECF No. 116-2 at 5 ¶ 9 (stating the room was dirty) *with* S.G. Dep. 14-18 (discussing the condition of the room and not mentioning dirtiness) & E.T. Dep. 12-18 (same). Some had to stay in the solitary-confinement room, but at least one was allowed to go to a game room while the other residents were away. *See* I.Y. Dep. 22-23. Some children were provided educational materials while in solitary confinement; some were not. *Compare* I.Y. Dep. 22 (received some educational materials) & S.G. Dep. 14-15 (stating she was able to keep books while in confinement) *with* G.H. Decl., ECF No. 116-2.

At the end of the hearing on the summary-judgment motion, the plaintiffs were given an opportunity to brief the issue of class decertification. They have done so. They have made the case as persuasively as it could be made. But their arguments fall short.

One of the prerequisites to class treatment is commonality—that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The action "must involve issues that are susceptible to class-wide proof." *Murray v.*

*Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). A common issue must be "capable of classwide resolution" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "What matters to class certification is not the raising of common questions—even in droves—but rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (cleaned up; emphasis in original); *see also Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1238 (11th Cir. 2016).

As this case has now evolved, the plaintiffs cannot establish the commonality required for a class action. Determining whether any individual child has been kept in solitary confinement too long, or in unconstitutional conditions, or that a disability has not been accommodated, will require an individual analysis of each child's treatment. This order decertifies the class and subclass.

For these reasons,

IT IS ORDERED:

1. The summary-judgment motion, ECF No. 229, is denied.

2. The class and subclass are decertified.

SO ORDERED on September 1, 2022.

s/Robert L. Hinkle<br>United States District Judge